

**AO 241**
(Rev. 12/04)

# Filed

SEP 1 4 2007

Page 2

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

| United States District Court | District: Northern |
|---|---|

| Name (under which you were convicted):<br><br>Barth Dennis Capela | C07 04734 SBA<br>*Docket or Case No.* |
|---|---|

| Place of Confinement :<br>California State Prison-Solano | Prisoner No.:<br><br>V-58262 |
|---|---|

| Petitioner (include the name under which you were convicted)<br><br>Barth Dennis Capela | v. | Respondent (authorized person having custody of petitioner)<br><br>Bob Horel, Warden |
|---|---|---|

| The Attorney General of the State of | | |
|---|---|---|

### PETITION

1.  (a) Name and location of court that entered the judgment of conviction you are challenging:

    Santa Clara County Superior Court
    San Martin, California

    (b) Criminal docket or case number (if you know):  FF302986

2.  (a) Date of the judgment of conviction (if you know):  4/7/2004

    (b) Date of sentencing:  11/10/2004

3.  Length of sentence:  19 years

4.  In this case, were you convicted on more than one count or of more than one crime?  ☐ Yes  ☑ No

5.  Identify all crimes of which you were convicted and sentenced in this case:
    Attempted robbery

6.  (a) What was your plea? (Check one)

    ☑ (1)  Not guilty       ☐ (3)  Nolo contendere (no contest)

    ☐ (2)  Guilty           ☐ (4)  Insanity plea

AO 241
(Rev. 12/04)

(b) If you entered a guilty plea to one count or charge and a not guilty plea to another count or charge, what did you plead guilty to and what did you plead not guilty to?

(c) If you went to trial, what kind of trial did you have? (Check one)

☑ Jury    ☐ Judge only

7.    Did you testify at a pretrial hearing, trial, or a post-trial hearing?

☐ Yes    ☑ No

8.    Did you appeal from the judgment of conviction?

☑ Yes    ☐ No

9.    If you did appeal, answer the following:

(a) Name of court:    Sixth District Court of Appeal

(b) Docket or case number (if you know):    H028273

(c) Result:    Affirmed, but sentence reduced to 17 years

(d) Date of result (if you know):    4/4/2006

(e) Citation to the case (if you know):    N/A

(f) Grounds raised:
See attachment A

(g) Did you seek further review by a higher state court?    ☑ Yes    ☐ No

If yes, answer the following:

(1) Name of court:    California Supreme Court

(2) Docket or case number (if you know):    S143236

(3) Result:
Affirmed

(4) Date of result (if you know):    7/19/2006

AO 241
(Rev. 12/04)

Page 4

(5) Citation to the case (if you know):        N/A

(6) Grounds raised:
    See Attachment A

(h) Did you file a petition for certiorari in the United States Supreme Court?        ☑ Yes    ☐ No

    If yes, answer the following:

    (1) Docket or case number (if you know):        No. 06-6723

    (2) Result:
        Affirmed

    (3) Date of result (if you know):        11/27/2006

    (4) Citation to the case (if you know):        N/A

10.    Other than the direct appeals listed above, have you previously filed any other petitions, applications, or motions

concerning this judgment of conviction in any state court?        ☑ Yes        ☐ No

11.    If your answer to Question 10 was "Yes," give the following information:

(a)    (1) Name of court:    SANTA CLARA SUPERIOR

    (2) Docket or case number (if you know): FF302986

    (3) Date of filing (if you know):

    (4) Nature of the proceeding: Habeas Corpus

    (5) Grounds raised: PROSECUTORIAL Misconduct,theprosecutor improperly
        put Documents on the jurist seats for them to obtain upon
        returning from a 15 minute break during trial.Those papers
        or Documents were not scrutinized by the Court or the defense.
    (2)    The Charge of Attempted robbery was improperly filed after
        the hearsay prelimination examination.

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐ Yes    ☑ No

(7) Result: affirmed

(8) Date of result (if you know):
        see attached Denials

AO 241
(Rev. 12/04)

(b) If you filed any second petition, application, or motion, give the same information:

(1) Name of court:  Sixth Appellate District

(2) Docket or case number (if you know):  HO30701

(3) Date of filing (if you know):  April 4,2006

(4) Nature of the proceeding:  Habeas Corpus

(5) Grounds raised:  Same grounds as in Santa Clara Superior.

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐  Yes   ☒  No

(7) Result:

(8) Date of result (if you know):

(c) If you filed any third petition, application, or motion, give the same information:

(1) Name of court:  CALIFORNIA SUPREME COURT

(2) Docket or case number (if you know):  S151537

(3) Date of filing (if you know):  Aug.15,2007

(4) Nature of the proceeding:  Habeas Corpus

(5) Grounds raised:  The same two grounds as in previous stated Courts.

✎AO 241
(Rev. 12/04)

(6) Did you receive a hearing where evidence was given on your petition, application, or motion?

☐   Yes   ☒   No

(7) Result:

(8) Date of result (if you know):

(d) Did you appeal to the highest state court having jurisdiction over the action taken on your petition, application, or motion?

(1)  First petition:    ☒   Yes    ☐   No

(2)  Second petition:   ☐   Yes    ☐   No

(3)  Third petition:    ☐   Yes    ☐   No

(e) If you did not appeal to the highest state court having jurisdiction, explain why you did not:

12.    For this petition, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

CAUTION: To proceed in the federal court, you must ordinarily first exhaust (use up) your available state-court remedies on each ground on which you request action by the federal court. Also, if you fail to set forth all the grounds in this petition, you may be barred from presenting additional grounds at a later date.

**GROUND ONE:**
Denial of due process under federal Constitution due to admission of irrelevant evidence that defendant had a knife.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

See Attachment B, pages 19-25

(b) If you did not exhaust your state remedies on Ground One, explain why:

AO 241
(Rev. 12/04)

(c)   **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☑ Yes    ☐ No

(2) If you did not raise this issue in your direct appeal, explain why:
My State appointed Attorney did not feel these two issues
had any merit.(Appellate Attorney)

**(d) Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐   Yes    ☑ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

| | | | | |
|---|---|---|---|---|
| (3) Did you receive a hearing on your motion or petition? | ☐ | Yes | ☑ | No |
| (4) Did you appeal from the denial of your motion or petition? | ☐ | Yes | ☐ | No |
| (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? | ☐ | Yes | ☐ | No |

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

AO 241
(Rev. 12/04)

(e) **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you have

used to exhaust your state remedies on Ground One:

**GROUND TWO:**
Denial of due process under the federal Constitution due to the exclusion of evidence that defendant lacked the motive to steal.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

(b) If you did not exhaust your state remedies on Ground Two, explain why:

(c)     **Direct Appeal of Ground Two:**

        (1) If you appealed from the judgment of conviction, did you raise this issue?         ☑ Yes     ☐ No

        (2) If you did <u>not</u> raise this issue in your direct appeal, explain why:

(d)     **Post-Conviction Proceedings:**

        (1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

              ☐ Yes     ☑ No

        (2) If your answer to Question (d)(1) is "Yes," state:

        Type of motion or petition:

        Name and location of the court where the motion or petition was filed:

        Docket or case number (if you know):

        Date of the court's decision:

AO 241
(Rev. 12/04)

Result (attach a copy of the court's opinion or order, if available):

| | | | | | |
|---|---|---|---|---|---|
| (3) Did you receive a hearing on your motion or petition? | | ❐ | Yes | ❐ | No |
| (4) Did you appeal from the denial of your motion or petition? | | ❐ | Yes | ❐ | No |
| (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? | ❐ | Yes | ❐ | No |

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you :
have used to exhaust your state remedies on Ground Two

**GROUND THREE:**
Denial of due process under the federal Constitution due to omission to give CALJIC No. 2.02

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
See Attachment B, pages 29-34

AO 241
(Rev. 12/04)

(b) If you did not exhaust your state remedies on Ground Three, explain why?

(c)  **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction, did you raise this issue?  ☑ Yes  ☐ No

(2) If you did not raise this issue in your direct appeal, explain why:

(d)  **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐ Yes  ☑ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion or petition?  ☐ Yes  ☐ No

(4) Did you appeal from the denial of your motion or petition?  ☐ Yes  ☐ No

(5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal?  ☐ Yes  ☐ No

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Three:

**GROUND FOUR:**
Cumulative prejudice under the due process clause of the federal Constitution

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
See Attachment B, pages 34-35

(b) If you did not exhaust your state remedies on Ground Four, explain why:

(c)    **Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?    ☑ Yes    ☐ No

(2) If you did not raise this issue in your direct appeal, explain why:

(d)    **Post-Conviction Proceedings:**

(1) Did you raise this issue through a post-conviction motion or petition for habeas corpus in a state trial court?

☐ Yes    ☑ No

(2) If your answer to Question (d)(1) is "Yes," state:

Type of motion or petition:

AO 241
(Rev. 12/04)

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

| | | |
|---|---|---|
| (3) Did you receive a hearing on your motion or petition? | ☐ Yes | ☐ No |
| (4) Did you appeal from the denial of your motion or petition? | ☐ Yes | ☐ No |
| (5) If your answer to Question (d)(4) is "Yes," did you raise this issue in the appeal? | ☐ Yes | ☐ No |

(6) If your answer to Question (d)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (d)(4) or Question (d)(5) is "No," explain why you did not raise this issue:

(e)    **Other Remedies:** Describe any other procedures (such as habeas corpus, administrative remedies, etc.) that you

have used to exhaust your state remedies on Ground Four:

AO 241
(Rev. 12/04)

13.    Please answer these additional questions about the petition you are filing:

(a)    Have all grounds for relief that you have raised in this petition been presented to the highest state court having jurisdiction?    ☑ Yes    ☐ No

If your answer is "No," state which grounds have not been so presented and give your reason(s) for not presenting them:

(b)    Is there any ground in this petition that has not been presented in some state or federal court? If so, ground or grounds have not been presented, and state your reasons for not presenting them:

14.    Have you previously filed any type of petition, application, or motion in a federal court regarding the conviction that you challenge in this petition?    ☑ Yes    ☐ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, the issues raised, the date of the court's decision, and the result for each petition, application, or motion filed. Attach a copy of any court opinion or order, if available.

United States Supreme Court, No. 06-6723, petition for writ of certiorari, denial of access to law library or advisory counsel, November 27, 2006, denied.

15.    Do you have any petition or appeal now pending (filed and not decided yet) in any court, either state or federal, for the judgment you are challenging?    ☐ Yes    ☑ No

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the raised.

AO 241
(Rev. 12/04)

Page 14

16. Give the name and address, if you know, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing:
Kipp Davis
120 W. Mission Street, San Jose, CA 95110

(b) At arraignment and plea:
Same as above

(c) At trial:
Pro per at trial

(d) At sentencing:
Maureen Baldwin
586 N. First Street, Suite 102, San Jose, CA 95112

(e) On appeal:
Dallas Sacher
100 N. Winchester Blvd., Suite 310, Santa Clara, CA 95050

(f) In any post-conviction proceeding:

(g) On appeal from any ruling against you in a post-conviction proceeding:

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?         ☐ Yes    ☑ No

(a) If so, give name and location of court that imposed the other sentence you will serve in the future:

(b) Give the date the other sentence was imposed:

(c) Give the length of the other sentence:

(d) Have you filed, or do you plan to file, any petition that challenges the judgment or sentence to be served in the future?         ☐ Yes    ☐ No

18. TIMELINESS OF PETITION: If your judgment of conviction became final over one year ago, you must explain the one-year statute of limitations as contained in 28 U.S.C. § 2244(d) does not bar your petition.*

AO 241
(Rev. 12/04)

---

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C.   § 2244(d) provides in part that:

    (1)    A one-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody  pursuant to the judgment of a State court.  The limitation period shall run from the latest of -

        (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

        (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such state action;

        (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

        (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

AO 241
(Rev. 12/04)

Page 16

(2)     The time during which a properly filed application for State post-conviction or other collateral review
         with respect to the pertinent judgment or claim is pending shall not be counted toward any period of
         limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief:

or any other relief to which petitioner may be entitled.

_____

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for

Writ of Habeas Corpus was placed in the prison mailing system on   *9-11-07*   (month, date, year).

Executed (signed) on   *August 21*   (date). *2007*

_____
Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.

## IN FORMA PAUPERIS DECLARATION

_____

[insert appropriate court]

* * * * *

## Attachment A

1.  Denial of due process under the federal Constitution due to admission of irrelevant evidence that defendant had a knife in his possession.

2.  Denial of due process under the federal Constitution due to exclusion of evidence that defendant lacked the motive to steal.

3.  Denial of due process under the federal Constitution due to omission to give CALJIC No. 2.02.

4.  Denial of due process under the federal Constitution due to cumulative prejudice.

    Issues 5 and 6 brought after direct Appeal will be attached after (1) (2) (3) and(4)

5.  Prosecutorial Misconduct,the prosecutor improperly put Documents on the Jurist seats for them to obtain upon returning from a 15 minute break during Trial.Those Documents were not scrutinized by the Court or the Defense.

6.  The charge of attempted robbery was improperly filed after the hearsay prelimination examination.

Attachment B

IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, ] | NO._____ |
| ] | |
| Plaintiff and Respondent, ] | (COURT OF APPEAL |
| ] | NO. H028273) |
| vs. ] | |
| ] | (SANTA CLARA CO. |
| BARTH DENNIS CAPELA, ] | SUPERIOR COURT |
| ] | NO. FF302986) |
| Defendant and Appellant. ] | |

## APPELLANT'S PETITION FOR REVIEW

ON APPEAL FROM A JUDGMENT OF THE SUPERIOR COURT
OF THE STATE OF CALIFORNIA, COUNTY OF SANTA CLARA
HONORABLE KENNETH L. SHAPERO, JUDGE PRESIDING

### SIXTH DISTRICT APPELLATE PROGRAM

DALLAS SACHER
Assistant Director
State Bar #100175
100 N. Winchester Blvd., Suite 310
Santa Clara, CA 95050
(408) 241-6171
DALLAS@SDAP.ORG

Attorneys for Appellant,
BARTH DENNIS CAPELA

# TABLE OF CONTENTS

ISSUES PRESENTED FOR REVIEW  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

REASONS FOR GRANTING REVIEW  . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STATEMENT OF FACTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

DEFENSE TESTIMONY  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

I.      APPELLANT WAS DENIED DUE PROCESS UNDER THE
        FIFTH AND FOURTEENTH AMENDMENTS TO THE
        FEDERAL CONSTITUTION INSOFAR AS HE WAS
        DENIED ACCESS TO A LAW LIBRARY AND ADVISORY
        COUNSEL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

II.     THIS COURT SHOULD GRANT REVIEW IN ORDER TO
        CONSIDER THE QUESTION OF WHETHER THE USE OF
        TWO  WEAPONS  DURING  A  SINGLE  INCIDENT
        AGAINST A SINGLE VICTIM CONSTITUTES MULTIPLE
        ASSAULTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

III.    THE ATTEMPTED ROBBERY CONVICTION MUST BE
        REVERSED UNDER THE DUE PROCESS CLAUSE OF
        THE FEDERAL CONSTITUTION SINCE APPELLANT
        WAS  UNDULY  PREJUDICED  WHEN  THE  COURT
        ALLOWED THE JURY TO HEAR THE IRRELEVANT
        EVIDENCE THAT HE HAD A KNIFE IN HIS CAR.  . . . . . . . . 19

IV.     APPELLANT WAS DENIED DUE PROCESS UNDER THE
        FEDERAL CONSTITUTION WHEN THE TRIAL COURT
        EXCLUDED RELEVANT EVIDENCE THAT APPELLANT
        LACKED THE MOTIVE TO STEAL. . . . . . . . . . . . . . . . . . . . . 25

## TABLE OF CONTENTS (CONTINUED)

V.     THE ATTEMPTED ROBBERY CONVICTION MUST BE
       REVERSED SINCE THE TRIAL COURT COMMITTED
       REVERSIBLE ERROR BY FAILING TO GIVE CALJIC NO.
       2.02 *SUA SPONTE.* ................................... 29

VI.    THIS COURT SHOULD GRANT REVIEW IN ORDER TO
       HOLD THAT FEDERAL CONSTITUTIONAL ERROR
       OCCURS WHEN THE COURT FAILS TO GIVE CALJIC
       NO. 2.02 IN A PROPER CASE.  EVEN IF THE *WATSON*
       STANDARD IS APPLICABLE, APPELLANT IS ENTITLED
       TO A REVERSAL.  ................................... 32

VII.   THE CONVICTION FOR ATTEMPTED ROBBERY MUST
       BE REVERSED DUE TO THE CUMULATIVE PREJUDICE
       FLOWING FROM THE SEVERAL ERRORS.  .............. 34

CONCLUSION  ............................................. 35

# TABLE OF AUTHORITIES

## CASES

*Arizona v. Fulminante* (1991)
 499 U.S. 279 ................................................................ 14

*Chambers v. Mississippi* (1973)
 410 U.S. 284 ............................................................. 34,35

*Chapman v. California* (1967)
 386 U.S. 18 ................................................................. 22

*Crane v. Kentucky* (1986)
 476 U.S. 683 ................................................................ 28

*Kane v. Espitia* (2005)
 546 U.S. ___ [163 L.E.2d 10] ........................................ 12

*McKinney v. Rees* (9th Cir. 1993)
 993 F.2d 1378 ............................................................. 22

*Milton v. Morris* (9th Cir. 1985)
 767 F.2d 1443 ...................................................... 12,14,15

*People v. Archer* (2000)
 82 Cal. App. 4th 1380 .................................................. 21

*People v. Bloyd* (1987)
 43 Cal. 3d 333 ........................................................... 3,32

*People v. Cardenas* (1982)
 31 Cal. 3d 897 ............................................................ 25

*People v. Cole* (2004)
 33 Cal. 4th 1158 ..................................................... 2,31,32

*People v. Cox* (2003)
 30 Cal. 4th 916 ........................................................... 19

## TABLE OF AUTHORITIES (CONTINUED)

*People v. Epps* (1981)
   122 Cal. App. 3d 691 ........................................................ 25

*People v. Harrison* (1989)
   48 Cal. 3d 321 ................................................................... 17

*People v. Hatchett* (1944)
   63 Cal. App. 2d 144 .......................................................... 32

*People v. Henderson* (1976)
   58 Cal. App. 3d 349 ...................................... 20,21,22,24

*People v. Hill* (1998)
   17 Cal. 4th 800 .......................................................... 34,35

*People v. Jefferson* (1954)
   123 Cal. App. 2d 219 ...................................... 3,17,18,19

*People v. Jenkins* (2000)
   22 Cal. 4th 900 ................................................................ 12

*People v. Jones* (1993)
   5 Cal. 4th 1142 ................................................................... 6

*People v. Koontz* (2002)
   27 Cal. 4th 1041 ............................................................... 27

*People v. Packard* (1982)
   131 Cal. App. 3d 622 ....................................................... 16

*People v. Pearch* (1991)
   229 Cal. App. 3d 1282 ..................................................... 25

*People v. Superior Court (Romero)* (1996)
   13 Cal. 4th 497 .................................................................. 5

*People v. Thomas* (1994)
   26 Cal. App. 4th 1328 ...................................................... 16

## TABLE OF AUTHORITIES (CONTINUED)

*People v. Watson* (1956)
    46 Cal. 2d 818 ............................................................. 32,33

*People v. Yrigoyen* (1955)
    45 Cal. 2d 46 .............................................................. 30,33

*Pitchess v. Superior Court* (1974)
    11 Cal. 3d 531 ................................................................. 11

*Sullivan v. Louisiana* (1993)
    508 U.S. 275 ................................................................... 33

### CONSTITUTIONS

United States Constitution
    Fifth Amendment ........................................................... 1,9
    Fourteenth Amendment ................................................. 1,9

### STATUTES

Evidence Code
    Section 210 ..................................................................... 27

Penal Code
    Section 211 ..................................................................... 13
    Section 245 ..................................................................... 4
    Section 654 ..................................................................... 6
    Section 667, subdivision (a) ........................................... 4,6
    Section 667, subdivision (b) ........................................... 4,6
    Section 1170.12 .............................................................. 4

### MISCELLANEOUS

CALJIC No. 2.01 ..................................................... 30,31,32
CALJIC No. 2.02 ............................................................ 32

1 Witkin and Epstein, California Criminal Law (3d ed. 2000) Elements,
section 4, pp. 203 ............................................................. 27

IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA, ]<br><br>Plaintiff and Respondent,<br><br>vs.<br><br>BARTH DENNIS CAPELA,<br><br>Defendant and Appellant. | NO._____<br><br>(COURT OF APPEAL<br>NO. H028273)<br><br>(SANTA CLARA CO.<br>SUPERIOR COURT<br>NO. FF302986) |

TO THE HONORABLE RONALD GEORGE, CHIEF JUSTICE OF THE STATE OF CALIFORNIA AND TO THE HONORABLE ASSOCIATE JUSTICES OF THE SUPREME COURT:

## ISSUES PRESENTED FOR REVIEW

I.    Is A Criminal Defendant Who Has Exercised His Right To Self Representation Deprived Of Due Process Under The Fifth And Fourteenth Amendments To The Federal Constitution When He Is Denied Access To A Law Library And Advisory Counsel?

II.   When A Defendant Assaults A Person With Two Weapons During A Single Incident, May More Than One Assault Conviction Be Found?

III.  Was Appellant Deprived Of Due Process Under The Fifth And Fourteenth Amendments To the Federal Constitution When The Trial Court Allowed The Jury To Hear The Irrelevant Evidence That He Had A Knife In His Car Which Was Not Used In The Offense?

IV.   Was Appellant Deprived Of Due Process Under The Fifth And Fourteenth Amendments To The Federal Constitution When The Trial Court Excluded Relevant Evidence That He Lacked The Motive To

Steal When The Specific Intent To Steal Was An Element Of The Charged Offense Of Attempted Robbery?

V.    Did The Trial Court Err In Failing To Give CALJIC No. 2.02?

VI.   If The Trial Court Erred In Failing To Give CALJIC No. 2.02, Should This Court Grant Review In Order To Answer The Question Left Open In *People v. Cole* (2004) 33 Cal.4th 1158 As To Whether The Error Implicates The Federal Constitution?

VII.  Was Appellant Deprived Of Due Process Under The Federal Constitution Due To The Cumulative Prejudice Sustained As The Result Of The Various Errors Committed At His Trial?

## REASONS FOR GRANTING REVIEW

This case presents an important and fundamental issue. Appellant exercised his constitutional right to represent himself. However, insofar as he was unable to post bail due to his indigency, appellant was denied the ability to conduct adequate legal research

Santa Clara County does not make a law library available to inmates. Instead, inmates are required to make research requests to a service which then provides materials within ten days to two weeks. Prior to trial, appellant repeatedly protested that this state of affairs was intolerable since it is impossible to engage in coherent legal research under this system. As a remedy, appellant requested the services of advisory counsel who could assist him with legal research. The request was denied.

It is painfully apparent that appellant was deprived of due process. In

-2-

preparing a case for trial, a lawyer has full and immediate access to relevant legal materials. It would be absurd to contend that a criminal defendant has had constitutionally effective counsel if his lawyer reported to the court that he was unable to conduct legal research since he had to wait two weeks for a third party to provide materials which were unresponsive to his request.

The constitutional right to self representation was rendered an empty shell in this case. This court should grant review in order to ensure that jailed pro per defendants in California will be afforded a fair opportunity to prepare for trial.

This case presents a second important and unsettled issue. Appellant suffered two convictions for misdemeanor assault based on his use of a slingshot and an air gun. Under the authority of *People v. Jefferson* (1954) 123 Cal.App.2d 219, only one assault conviction should be allowed. However, the Court of Appeal declined to follow *Jefferson* and held that two separate convictions may be returned when two separate weapons are used. Since this is an issue which is likely to frequently arise, review should be granted.

A third issue of importance is raised in this case. To date, the rule in California is that the omission to give CALJIC No. 2.02 is state law error which does not implicate the federal Constitution. (*People v. Bloyd* (1987) 43

- 3 -

Cal.3d 333, 351-352.)  In appellant's view, the failure to give No. 2.02 in a proper case constitutes federal constitutional error.  This court should grant review in order to so declare.

Finally, this case presents additional issues involving evidentiary error. Appellant makes no claim that these issues satisfy the criteria for a grant of review.  However, insofar as the issues are meritorious, this court should grant plenary review on all of appellant's claims.  In this way, a fundamental miscarriage of justice will be averted.

## STATEMENT OF THE CASE

On November 19, 2003, appellant was charged in a first amended information filed in the Superior Court for Santa Clara County.  (CT 58-63.) Count 1 alleged a second degree attempted robbery.  (CT 59.)  Count 2 alleged an assault with a deadly weapon by use of a slingshot (Penal Code section 245).  (CT 59.)  Count 3 alleged an assault with a deadly weapon by use of a baseball bat (Penal Code section 245).  (CT 59.)  Count 4 alleged assault with a deadly weapon by use of an air gun (Penal Code section 245). (CT 60.)  It was also alleged that appellant had three strike priors (Penal Code section 1170.12), three serious felony priors (Penal Code section 667, subd. (a)) and two prison priors (Penal Code section 667.5, subd. (b)).  (CT 60-62.)

On November 19, 2003, the court granted appellant's motion to

- 4 -

represent himself. (CT 87.) On March 29, 2004, appellant waived his right to a jury trial regarding the prior conviction enhancements. (CT 159.)

On April 2, 2004, a jury trial commenced. (CT 164.) On April 7, 2004, appellant was convicted of attempted robbery. (CT 234.) Appellant was acquitted on the three felony assault charges and was convicted on counts 2 and 4 of the lesser offenses of misdemeanor assault. (CT 235-237.)

On April 12, 2004, a court trial was held on appellant's prior conviction enhancements. (CT 243.) All of the enhancements were found true. (CT 243.)

On May 17, 2004, attorney Maureen Baldwin appeared as counsel of record for appellant. (CT 281.) On August 6, 2004, appellant filed a motion for new trial. (CT 292-304.) On August 12, 2004, the People filed an opposition to the motion. (CT 306-313.) On August 27, 2004, the motion was denied. (CT 350.)

On September 23, 2004, appellant filed a motion to dismiss his strike priors pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497. (CT 351-365.) On October 8, 2004, the People filed an opposition to the motion. (CT 373-381.)

On November 10, 2004, a sentencing hearing was held. (CT 390-391.) The court granted the *Romero* motion and dismissed all of appellant's strike

- 5 -

priors. (CT 390-391.) Appellant was sentenced to 19 years in prison. (CT 389.) Appellant received 2 years for his attempted robbery conviction, 15 years for his three Penal Code section 667 enhancements and 2 years for his prison priors. (CT 389.) Appellant received 30 day sentences for his two misdemeanor convictions with the sentences deemed to have been served. (CT 389.)

On April 4, 2006, the Court of Appeal issued its opinion. The court directed the trial court to: (1) dismiss two of appellant's Penal Code section 667.5, subdivision (b) enhancements pursuant to *People v. Jones* (1993) 5 Cal.4th 1142; and (2) impose Penal Code section 654 stays as to the two misdemeanor assault convictions. (Exhibit A, pp. 21-22; 39.) In all other respects, the judgment was affirmed. Appellant did not file a petition for rehearing.

## STATEMENT OF FACTS

At approximately 7:30 a.m. on August 19, 2003, Rafael Gonzales was walking at the corner of Garfield and Madison in Gilroy. (RT 60.) As Mr. Gonzales was using his cell phone, appellant called out "Harvey" at him. (RT 60.) Appellant then got out of a car and fired a slingshot at Mr. Gonzales. (RT 61.) Mr. Gonzales was struck in the left thigh. (RT 63.)

Appellant approached Mr. Gonzales and said that he owed him money.

- 6 -

(RT 64.)  When Mr. Gonzales attempted to show the identification papers in his wallet to establish that he was not "Harvey," appellant punched him in the face.  (RT 64, 76-77.)  Mr. Gonzales sustained a bloody lip and fell to the ground.  (RT 64-65.)

As he lay on the ground, Mr. Gonzales covered his head.  (RT 64.) Although he did not see the blow delivered, Mr. Gonzales was either kicked or punched in the head as he lay on the ground.  (RT 65.)

When Mr. Gonzales got to his feet, he saw appellant go to his car.  (RT 66.)  Although he was uncertain in his recollection, Mr. Gonzales thought that appellant might have retrieved a bat. (RT 66-67.)  At that point, appellant said "something like" he should get in the car because he was going to get his money one way or the other.  (RT 68).  However, Mr. Gonzales walked away and appellant made no attempt to restrain him.  (RT 68, 77.)

Michael DeLeonardo was an eyewitness to the encounter.  As he was driving by, Mr. DeLeonardo saw appellant shoot Mr. Gonzales with a slingshot. (RT 118-119.) He made this observation through his side window. (RT 130.)

Mr. DeLeonardo parked his car about 15 to 20 feet from the action. (RT 119-120.)  Mr. DeLeonardo watched as Mr. Gonzales was struck and knocked to the ground.  (RT 121.)  As Mr. Gonzales lay on the ground,

appellant stood 2 to 3 feet away and pointed an air gun at him. (RT 121, 133.) Mr. DeLeonardo called 911. (RT 120.)

When appellant got in his car and drove off, Mr. DeLeonardo followed him. (RT 122.) Appellant drove into a parking lot and circled the Chevy's restaurant which was there. (RT 122-123.) Appellant then drove up to Mr. DeLeonardo and told him to mind his "own fuckin' business." (RT 123-124.)

Soon thereafter, appellant was arrested at a Chevron station. (RT 80-81.) Appellant had $168 on his person. (RT 158.)

Officer Hugo Del Moral searched appellant's vehicle. (RT 82.) Officer Del Moral seized a baseball bat, a slingshot and marbles, a folding knife and an air gun. (RT 85-89.) The air gun had no trigger. (RT 151.)

Officer Steve Morrow found Mr. Gonzales on Murray just past Madison. (RT 145.) Mr. Gonzales had a bloody mouth and swollen lip. (RT 145.) He also had some bumps on his head. (RT 145.) Mr. Gonzales reported that appellant had told him to "[g]et in the car. I'm going to get my money out of you one way or another." (RT 145.)

## DEFENSE TESTIMONY

Wiley Capela is appellant's brother. Mr. Capela testified that appellant is an excellent marksman with a slingshot and can hit a can from a distance of 30 yards. (RT 154.)

I.

APPELLANT WAS DENIED DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE FEDERAL CONSTITUTION INSOFAR AS HE WAS DENIED ACCESS TO A LAW LIBRARY AND ADVISORY COUNSEL.

On November 19, 2003, the trial court granted appellant's motion to serve as his own attorney. (RT November 19, 2003, p. 40.) As a result, the court advised appellant that he would "be granted the pro per privileges at the jail." (RT November 19, 2003, p. 41.)

On January 8, 2004, appellant made a motion for advisory counsel. (RT January 8, 2004, pp. 7-9.) The basis for the motion was that appellant was unable to conduct legal research since the county jail did not have a law library. (RT January 8, 2004, p. 9.) In lieu of a library, appellant was required to request legal materials from an independent contractor who would take "anywhere between 10 and 14 days" to deliver the information. (*Ibid*.)

Given this ineffective method for performing legal research, appellant requested the appointment of advisory counsel because "a lawyer's going to have most of the information probably at the top of his head instead of waiting ten days or two weeks for information." (RT January 8, 2004, p. 10.) Summing up his position, appellant requested advisory counsel since he needed help reviewing the law because he had "a hard time trying to get any

- 9 -

information there at the jail." (RT January 8, 2004, p. 11.)

The court denied the request for advisory counsel. In so doing, the

court stated its view that appellant had been given sufficient access to legal

materials.

> "The other major reason he gave was the fact that there
> was a potential delay, between ten and 14 days, between the
> time he requests legal materials and they're made available to
> him under the relatively new system that the county began to
> use after the effectiveness and cost of maintaining a separate
> law library for the pro pers became unreasonable, partly because
> there was much damage and missing materials, and partly
> because it was expensive for the county to do that.
>
> "The new system is not only cost effective, but I think
> it's more effective in getting the most recent materials into
> unblemished format to them. The big negative, as the defendant
> pointed out, is the delay that is as a result of requesting
> materials.
>
> "But I don't think appointing counsel will do anything
> more than higher [sic] the counsel's library and turn the attorney
> into a runner when it comes to that. I don't think that's a good
> reason to appoint advisory counsel, to speed up the processing
> of information that would come to him inevitably. (RT January
> 8, 2004, p. 12.)

On March 4, 2004, appellant complained to the court that he was being

systematically denied the right to conduct adequate legal research.

> "The Defendant:    My problem is like with research.
> We don't have a law library. You have to put in a slip and say
> what you want. A lot of times you don't know what you want
> if you don't have access to books. You know what I mean?
> And that's basically my problem. If it comes to a point where
> you're in trial and you need to look something up it takes five
> days to ten days to get an answer from these people, okay,
> because it's a relay system type And that's where the problem

is." (RT March 4, 2004, p. 18.)

On March 29, 2004, the case went to trial. At an in limine hearing, the court denied appellant's *Pitchess*[1] motion since it had not been properly served. (RT morning March 29, 2004, pp. 12-13.) In response, appellant once again complained that he had been denied adequate access to legal materials.

> "Mr. Capela: I don't have the proper program as far as who I was suppose to serve this with. The law library - - we don't have a library, it is basically a word processor that doesn't work part of the time - - and we if we need information sometimes it takes six to eight weeks, [sic] ten days to get an answer. And I am trying to get paper work on that. And had a law librarian write [sic][2] and then I was transferred to the main jail. So like I am having - - I am not an attorney.
> "The Court: I know you are not.
> "Mr. Capela: I am having a problem trying to find out all the information I need to find out with process servers and things like that." (RT March 29, 2004, p. 14.)

As the foregoing record reveals, appellant registered a protest that he was unable to properly perform legal research in the absence of a law library. As a remedy, appellant requested advisory counsel who would effectively serve as a substitute legal researcher. By denying access to both a law library and advisory counsel, the trial court deprived appellant of his right to a fair

---

1.    *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

2.    Appellant presumes that the word "write" is a typo. The word actually spoken was "right."

- 11 -

trial.

At the moment, the federal appellate courts are split on the question of whether a jailed pro se criminal defendant has the right to use a law library. (See cases cited in *Kane v. Espitia* (2005) 546 U.S. ___ [163 L.E.2d 10, 13].) Thus, it is certainly appropriate for this court to grant review on such a vital issue. This is especially true since there can be no doubt that the right to access to legal materials must necessarily be part and parcel of the right to due process.

As the Ninth Circuit has indicated, an "incarcerated defendant may not meaningfully represent himself without access to law books, witnesses, or other tools to prepare a defense." (*Milton v. Morris* (9th Cir. 1985) 767 F.2d 1443, 1446.) As an alternative to providing access to a law library, the court may appoint advisory counsel in order to protect the defendant's rights. (*People v. Jenkins* (2000) 22 Cal.4th 900, 1001.) In this case, the trial court failed to provide appellant with the necessary tools to defend himself.

In concluding that appellant had sufficient resources to conduct legal research, the trial court ruled that appellant had been given adequate access to legal materials since he could make research requests which the county would fulfil within ten to fourteen days. (RT January 8, 2004, p. 12.) With all due respect for the court, the system employed in this case was plainly inadequate.

- 12 -

The realities of the practice of law prove this conclusion.

When an attorney (or a judge) conducts legal research, she surrounds herself with a wealth of books (or an internet research library).  If the researcher is unfamiliar with an area of law, she will first read the statutory scheme.  Then, the researcher will consult a general text such as *Witkin* on Criminal Law.  Once armed with a few case citations, the researcher will read numerous cases which will in turn lead to other cases, statutes, and texts.

By contrast, appellant was completely deprived of this methodology. For example, since he was charged with attempted robbery, appellant would have started his research by requesting the text of Penal Code section 211. Having received and read the statute 10 to 14 days later, appellant would have then requested a general text regarding possible defenses to the elements of the offense.  After another delay of up to two weeks, appellant *might* have been in a position to ask for case law.  Obviously, this piecemeal approach to legal research would never be tolerated by a practicing lawyer.  No practicing lawyer could effectively perform research under these conditions.

In short, it simply cannot be said that appellant was given adequate access to the law books which he needed in order to defend himself. Similarly, by denying advisory counsel, the trial court denied a reasonable alternative to the lack of a law library.  Under these circumstances, a due

- 13 -

process violation must be found. (*Milton v. Morris,* supra, 767 F.2d 1443, 1446-1447 [judgment reversed where a defendant in pro per was given no access to a law library].)

In holding to the contrary, the Court of Appeal posited two reasons: (1) appellant forfeited his claim since he did not demonstrate "that he was denied access to any particular legal materials;" and (2) in any event, appellant has not shown any specific prejudice to his cause. (Exhibit A, pp. 37-38.) In reaching these conclusions, the Court of Appeal erred.

The constitutional violation in this case is akin to the absolute denial of the right to counsel. When a defendant has been denied access to a lawyer, per se reversal is required since the right to counsel is part of the structure of our criminal justice system. (*Arizona v. Fulminante* (1991) 499 U.S. 279, 308.) Here, the denial of access to legal materials is virtually the same type of error.

Absent the same access to law books as is enjoyed by a lawyer, a defendant is incapable of adequately preparing for trial. Moreover, contrary to the analysis of the Court of Appeal, appellant cannot be faulted since he did not point out any *specific* prejudice in his complaints to the trial court. Having been denied adequate access to research materials, appellant was quite simply in no position to know what he did not know. Indeed, appellant made this

- 14 -

very point to the trial court: "A lot of times you don't know what you want if you don't have access to books. You know what I mean?" (RT March 4, 2004, p. 18.)

Finally, it is worth noting that the conclusion reached by the Court of Appeal is inconsistent with at least one case. In *Milton v. Morris*, supra, 767 F.2d 1443, the pro per defendant was substantially denied access to a law library, use of the telephone and other ancillary services. Without discussing the facts of the case, the Court of Appeals found reversible error since the defendant "had no means to prepare a defense." (*Id.* at p. 1447.) The same is true here.

Prior to trial, appellant repeatedly protested that he needed either access to a law library or the assistance of advisory counsel. (RT January 8, 2004, pp. 7-14; RT March 4, 2004, p. 18; RT morning March 29, 2004, p. 14.) Appellant's pleas went unheard. On this record, reversal is required. (*Milton*, supra, 767 F.2d at p. 1447.)

Appellant will not belabor the obvious. In our troubled economic times, it is likely that counties will seek to save money in the same manner as has Santa Clara County. Insofar as it is likely that the issue presented in this case will arise on a frequent basis, this court should grant review in order to provide appropriate guidance to our lower courts.

- 15 -

II.

THIS COURT SHOULD GRANT REVIEW IN ORDER TO
CONSIDER THE QUESTION OF WHETHER THE USE OF
TWO WEAPONS DURING A SINGLE INCIDENT
AGAINST A SINGLE VICTIM CONSTITUTES MULTIPLE
ASSAULTS.

It is a general principle of California law that a single course of conduct

which violates a criminal statute cannot be fragmented into separate violations

of the statute. For example, two convictions for kidnapping for the purpose

of robbery cannot be obtained merely because the asportation of the victim is

stopped for a period of time. (*People v. Thomas* (1994) 26 Cal.App.4th 1328,

1334-1335.) Similarly, multiple theft convictions cannot be upheld merely

because separate acts of taking are committed over a period of time. (*People

v. Packard* (1982) 131 Cal.App.3d 622, 626-627.) In this case, a single

assault was improperly fragmented into multiple assault convictions.

The record establishes that appellant hit Mr. Gonzales with a slingshot.

Immediately thereafter, appellant menaced Mr. Gonzales with an air gun. On

these facts, the jury returned separate convictions for misdemeanor assault.

One of the two counts must be reversed.

The record establishes that appellant engaged in a single continuous

assault on Mr. Gonzales. While he employed two weapons, the degree of

harm to Mr. Gonzales was not thereby increased. On these facts, the single

- 16 -

act of assault should not be fragmented into multiple offenses.

The Court of Appeal rejected appellant's contention. In so doing, the court relied on sexual assault cases where it was held that multiple violations may be found when multiple acts of the same crime are committed. (*People v. Harrison* (1989) 48 Cal.3d 321, 329.) While this rule may make some sense in the context of sexual assaults where each act constitutes a separate outrage against the victim, it is not at all clear that the same is true in the case of non-sexual assault.

For example, if a defendant assaults a victim and punches him ten times in five seconds, is the outrage to the victim ten times greater than if he is punched only once? The answer is no. Indeed, it is inconceivable that any prosecutor would charge ten counts of battery in this situation.

In the instant case, appellant assaulted Mr. Gonzales during a single continuous episode which lasted for only a short time. Since the harm to Mr. Gonzales was no greater merely because appellant used two weapons, reason dictates that only a single assault conviction should be permitted.

*People v. Jefferson,* supra, 123 Cal.App.2d 219 requires this result. There, the defendant was confronted by the police outside her home. The defendant slashed at an officer with a butcher knife and cut his sleeve. Soon thereafter, the police induced the defendant to enter her home and put down

- 17 -

the butcher knife. At that point, the defendant removed a pocket knife from her purse and again slashed at the police. On these facts, the defendant argued on appeal that the trial court had erred by failing to require the prosecutor to elect which of the two knife assaults constituted the charged offense of assault with a deadly weapon. In rejecting the claim, the Court of Appeal reasoned:

> "This whole episode consumed from 10 to 15 minutes, most of which time was taken up in talking outside the house in an effort by the officers to disarm the appellant to give up the knife. They were a part of the same incident, and they could not reasonably be held to constitute two separate offenses, each complete in itself, and each of which would require a separate charge and a separate trial." (*Jefferson*, supra, 123 Cal.App.2d at p. 221.)

The case at bar is governed by *Jefferson*. Here, appellant assaulted Mr. Gonzales for only a few minutes. As in *Jefferson*, the use of two separate weapons cannot be deemed the commission of two separate crimes. Thus, one of the two assault convictions must be reversed.

The Court of Appeal purported to distinguish *Jefferson* on the grounds that the issue there was not whether improper fragmentation of a single offense had occurred, but whether the prosecutor had a duty to elect one of the two assaults as a basis for a single conviction. (Exhibit A, pp. 25-26.) While this recitation of the *Jefferson* holding is correct, the conclusion drawn by the court is not.

The *ratio decidendi* of *Jefferson* is that the prosecutor did not have to

- 18 -

make an election since only one assault had occurred. This is exactly the principle on which appellant relies. If there was only one cognizable assault in *Jefferson*, the same is true here.

In the modern day, it is not unusual for a defendant to strike a victim more than once or to use more than one weapon on a single occasion. This court should grant review in order to determine whether a prosecutor may seek multiple convictions in this situation.

III.

THE ATTEMPTED ROBBERY CONVICTION MUST BE REVERSED UNDER THE DUE PROCESS CLAUSE OF THE FEDERAL CONSTITUTION SINCE APPELLANT WAS UNDULY PREJUDICED WHEN THE COURT ALLOWED THE JURY TO HEAR THE IRRELEVANT EVIDENCE THAT HE HAD A KNIFE IN HIS CAR.

As a general rule, the prosecution may not adduce evidence that the defendant was in possession of a weapon which was *not* used in the crime. (*People v. Cox* (2003) 30 Cal.4th 916, 956.) In this case, the rule was not followed. As a result, review should be granted.

During the motions in limine, appellant registered an objection to admission of the knife which was found in his car. (RT 49.) Appellant asserted that "it shows prejudice against me that there's a knife there, because it is considered a deadly weapon whereas the other ones are debatable." (RT 49.)

- 19 -

In response, the prosecutor argued for admission of the knife. (RT 50.) The prosecutor contended that the knife was "relevant just to show what he had, sort of an arsenal in his car, a baseball bat, a knife, a slingshot, an air gun and binoculars, though there is no allegation that he used a knife against the victim in this case." (RT 50.)

The court indicated that it was unsure of the "ultimate relevance" of the knife other than the fact that it was found "in a certain area." (RT 50.) However, the court declined to rule on the admissibility of the knife. (RT 50-51.)

Subsequently, Officer Del Moral testified that he seized a folding knife from the front right passenger seat in appellant's car. (RT 86-87.) When the prosecutor moved the knife into evidence, appellant renewed his objection. (RT 104.) The court overruled the objection. (RT 104.)

Without doubt, the trial court erred in its conclusion that the knife constituted relevant evidence. Insofar as there was no evidence whatsoever that appellant had used the knife in the course of the alleged crimes, the knife was plainly inadmissible.

*People v. Henderson* (1976) 58 Cal.App.3d 349 establishes this conclusion. There, the defendant fired two shots at police officers who were executing a search warrant at his house. At trial, the prosecutor adduced the

evidence that a loaded .22 caliber gun was found in appellant's trousers in his bedroom. The gun was not the one which appellant had used against the police. In an opinion authored by the late Justice Bernard Jefferson, the court found that admission of the gun constituted reversible error since evidence of "possession of a weapon not used in the crime" was irrelevant. (*Id.* at p. 360.)

In *People v. Archer* (2000) 82 Cal.App.4th 1380, the court followed the reasoning in *Henderson.* There, the trial court allowed the admission of numerous knives which were found in the defendant's bedroom, workshop and storage locker. Insofar as only two of the knives had arguably been used in the offense charged, the court held that it was error to allow admission of the knives which had no relevance to the case. (*Id.* at pp. 1392-1393.)

The case at bar is controlled by *Henderson* and *Archer.* As the prosecutor readily admitted during the motion in limine, there was "no allegation that [appellant] used a knife against the victim in this case." (RT 50.) Given this concession, the court erred by failing to exclude the knife from the jury's consideration. (*People v. Archer, supra,* 82 Cal.App.4th 1380, 1392-1393; *People v. Henderson, supra,* 58 Cal.App.3d 349, 360.)

The Court of Appeal declined to follow *Henderson* and *Archer* on the theory that they were distinguishable from the case at bar. According to the court, the existence of the knife was relevant in this case since it was probative

- 21 -

of appellant's intent to steal and the fact that he had the means to facilitate his purpose by the use of force or fear. (Exhibit A, p. 10.) Simply stated, this analysis is refuted by the record.

During the course of his assault on Mr. Gonzales, appellant briefly returned to his car and did not retrieve the knife. (RT 66-67.) Thus, as a matter of fact, appellant could have used the knife but chose not to do so. Given these circumstances, the instant case is squarely governed by *Henderson*. There, as here, the defendant employed one weapon in the commission of the alleged offense and possessed a second weapon nearby. Since the second weapon was not employed, the court held that its admission was error. (*Id*. at p. 360.)

The remaining question is whether admission of the knife prejudiced appellant's right to a fair trial regarding the charge of attempted robbery. Insofar as the knife was entirely irrelevant, the burden falls upon the People to establish that the error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24.) The *Chapman* standard is applicable since the admission of irrelevant evidence constitutes a violation of the due process clause of the federal Constitution. (*McKinney v. Rees* (9th Cir. 1993) 993 F.2d 1378, 1384-1386 [judgment reversed where the prosecutor dwelled on the defendant's affinity for knives].)

At the outset, it is essential to note that the People's evidence concerning appellant's intent to steal was less than overwhelming. By Mr. Gonzales' own account, appellant made no attempt to take his wallet or his cell phone nor did he demand that he turn over any property or money. (RT 76-77.) Insofar as Mr. Gonzales was essentially helpless on the ground at one point, it is apparent that appellant could have stolen from him had he wished to do so.

Concededly, there was some evidence of appellant's intent to steal since he supposedly told Mr. Gonzales to get in his car since he was going to get his "money out of [him] one way or another." (RT 145.) However, this statement is subject to conflicting interpretations.

As the phrase "one way or another" implies, appellant's motive may well have been to simply assault Mr. Gonzales (or actually "Harvey") in lieu of payment for the outstanding debt. In other words, appellant's motive was simply to assault the victim since the debt had not been repaid. In his colorful way, appellant argued this very theory to the jury.

> "The victim told you I never asked him to give me any money. I never tried to take anything from him when I had the opportunity. It wasn't about that. It was about whipping his butt and that's basically it, and I was wrong for doing that. I went about it all wrong. But it had nothing to do with robbery whatsoever." (RT 192.)

In short, the People's case for attempted robbery was plausible, but not

- 23 -

overwhelming. At the same time, the prejudice flowing from admission of the knife was quite powerful.

As the verdicts reveal, the jury was unpersuaded that either the slingshot or the air gun (which lacked a trigger) was a deadly weapon. This reality is evidenced by the convictions for simple assault instead of the charged felony assaults by deadly weapon. However, as appellant told the court during the in limine hearing, the knife was a different story since it is indisputably a deadly weapon. (RT 49.) Insofar as appellant had the knife nearby in his car, the jury may well have felt compelled to convict him of some felony in light of the possibility that he might use the knife on another occasion.

It is this very possibility that renders admission of the knife prejudicial. In *Henderson*, Justice Jefferson neatly summarized this conclusion:

> "The claimed relevance of the loaded Derringer gun on the issue of defendant's intent is without substance. The inference sought by the prosecution is purely one of *sheer speculation* - the antithesis of relevancy. The admission into evidence of this irrelevant evidence - highly prejudicial in nature - also constitutes reversible error." (*Henderson,* supra, 58 Cal.App.3d at p. 360, emphasis in original.)

Finally, it is important to note that the jury deliberated for almost two days and twice requested a rereading of Mr. Gonzales' testimony. (CT 170-171, 229-230, 238-239.) These are objective indications that the case was a

- 24 -

close one. (*People v. Cardenas* (1982) 31 Cal.3d 897, 907 [jury deliberations of "almost six hours are an indication that the issue of guilt is not 'open and shut' and strongly suggest that errors in the admission of evidence are prejudicial. [Citation.];" *People v. Pearch* (1991) 229 Cal.App.3d 1282, 1295 [the request to have testimony reread is an indication that the "deliberations were close. [Citations.]."].)

In addition, it cannot be overlooked that the jury acquitted appellant on three felony counts of assault with a deadly weapon. This circumstance is yet another objective indication that reversal is required. (*People v. Epps* (1981) 122 Cal.App.3d 691, 698.)

The People's case for attempted robbery was weak and the prejudice from admission of the knife was strong. The conviction for attempted robbery must be reversed.

## IV.

### APPELLANT WAS DENIED DUE PROCESS UNDER THE FEDERAL CONSTITUTION WHEN THE TRIAL COURT EXCLUDED RELEVANT EVIDENCE THAT APPELLANT LACKED THE MOTIVE TO STEAL.

Prior to trial, appellant brought a motion in which he requested that a prison inmate, Ms. Roberts, be transferred to local custody so that she could be called as a defense witness. (CT 107.) As an offer of proof, appellant averred *inter alia* that Ms. Roberts would testify that he had owned personal

property at the time of the incident in question. (CT 107, RT December 24, 2003, p. 13.) The relevance of the proffered testimony was that it would establish that appellant lacked a motive to steal since he had sufficient resources. (CT 107, RT December 24, 2003, p. 13.) The trial court declined to order Ms. Roberts' production and held that her testimony would not be "relevant or admissible." (RT December 24, 2003, p. 14.)

On March 29, 2004, appellant indicated to the prosecutor that he still desired to call Ms. Roberts. (RT 17-18.) However, on that date, Ms. Roberts remained in prison. (RT 18.) Nonetheless, the prosecutor noted that Ms. Roberts was due to be released "that" week. (RT 18.)

On March 30, 2004, jury voir dire was held. (CT 160.) At the end of the day, the trial court issued an order that appellant was to be allowed to telephone Ms. Roberts. (RT 35-36.) However, the only phone number that appellant had for Ms. Roberts was that of her mother. (RT 37.) The phone number (209-827-3311) bore a Central Valley exchange. (RT 37.)

On April 2, 2004, the first witnesses were called. (CT 164.) The prosecutor told the court that Ms. Roberts had been released from prison "yesterday." (RT 43-44.) However, the prosecutor made no representation as to whether Ms. Roberts had been transported to Santa Clara County. Nonetheless, appellant indicated that he intended to call Ms. Roberts to testify

regarding his skill with a slingshot. (RT 44.)

Subsequently, Ms. Roberts was not called as a witness. The record does not reflect why Ms. Roberts was not called.

Given the foregoing record, it is apparent that appellant was denied the opportunity to call Ms. Roberts who would have testified that he owned property at the time of his assault on Mr. Gonzales. This evidence would have supported the defense theory that appellant lacked the intent to steal. This court should grant review in order to remedy the error.

Under California law, relevant evidence is that which has "any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (Evidence Code section 210.) Without doubt, evidence that establishes that the defendant lacked a motive to commit the crime at issue is highly relevant. (See cases cited at 1 Witkin and Epstein, California Criminal Law (3d ed. 2000) Elements, section 4, pp. 203-204.) Where, as here, the central factual question is whether the defendant had the intent to steal, the defense is entitled to show that he had sufficient resources such that he had no need to commit a theft. (See *People v. Koontz* (2002) 27 Cal.4th 1041, 1076-1077.)

In concluding that appellant was not entitled to relief, the Court of Appeal held that: (1) no error appears since the *trial* court did not exclude any

- 27 -

evidence; and (2) no offer of proof was made to the trial judge. (Exhibit A, pp. 15-17.) These conclusions are erroneous.

As the Court of Appeal's analysis ignores, appellant had no opportunity to interview Ms. Roberts prior to trial since she was in prison. While the prosecutor indicated that Ms. Roberts was released on the day before the first witness was called, the record does not establish that Ms. Roberts was brought to San Jose or that appellant had any means to contact her. Thus, it is simply absurd to suggest that the pretrial order denying appellant's right to interview Ms. Roberts was not the de facto equivalent of an order excluding evidence. Moreover, to the extent that appellant specifically told the court that Ms. Roberts was a material evidence on the extent of his property ownership (CT 107, RT December 24, 2003, p. 13.), he certainly made a sufficient offer of proof.

The remaining question is whether exclusion of the testimony was prejudicial. Insofar as the error impacted on appellant's right to produce evidence in support of his defense, it is the government's burden to establish that the error was harmless beyond a reasonable doubt. (*Crane v. Kentucky* (1986) 476 U.S. 683, 690-691.) The People are unable to shoulder their burden in this case.

As has been discussed above, the central and hotly contested issue at

trial was whether appellant had the intent to steal from "Harvey." While appellant made a statement which provided some evidence of such an intent (i.e. he was going to get his "money out of [him] one way or another"), the surrounding circumstances established that appellant never sought to seize Mr. Gonzales' wallet or cell phone. Thus, appellant presented the credible defense that he lacked the intent to steal and intended only to assault "Harvey" in retribution for an unpaid debt. (RT 192.) Since the excluded evidence would have strongly supported the defense theory of the case, reversal is required.

V.

THE ATTEMPTED ROBBERY CONVICTION MUST BE REVERSED SINCE THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO GIVE CALJIC NO. 2.02 *SUA SPONTE.*

The central issue at trial was whether appellant maintained the specific intent to steal from Mr. Gonzales. In arguing that appellant had the requisite specific intent, the People relied on appellant's statement to Mr. Gonzales that he was to "[g]et in the car [since] I'm going to get my money out of you one way or another." (RT 145.)

As was discussed above, the quoted statement is subject to two competing inferences. As the prosecutor argued to the jury, the statement might be construed as evincing appellant's intent to take Mr. Gonzales' money. (RT 180, 185, 201.) On the other hand, the statement could also be

understood as an indication that appellant was going to assault Mr. Gonzales in lieu of being repaid. The latter interpretation was the one which appellant argued to the jury. (RT 191-192.) On this record, it was incumbent upon the court to give CALJIC No. 2.02 *sua sponte*.

The seminal case of *People v. Yrigoyen* (1955) 45 Cal.2d 46 supports this conclusion. There, the defendant was charged with the specific intent offense of issuing a check with intent to defraud. In support of the charge, the People presented evidence that the defendant issued an $11,260 check when he had less than $1100 in his account. However, the evidence also showed that the defendant subsequently deposited $13,566 into his account. On this record, the Supreme Court held that the trial court had erred by failing to instruct *sua sponte* that a conviction may be returned on circumstantial evidence only when the circumstances are inconsistent with the rational conclusion that the defendant is innocent. (*Id.* at p. 49.)

The identical result is appropriate here. There were two competing inferences which could be drawn regarding appellant's mental state. Given this record, there is no doubt that No. 2.02 should have been given.

In positing this conclusion, appellant readily notes that the trial court made an attempt to cover the relevant legal principle when it instructed the jury pursuant to CALJIC No. 2.01. (RT 224-225, CT 183.) While appellant

does not doubt the court's good faith in giving No. 2.01, the fact remains that it was not the appropriate instruction in this case.

As this court has indicated, No. 2.01 is the "general instruction on sufficiency of circumstantial evidence" and may be employed in the usual case. (*People v. Cole* (2004) 33 Cal.4th 1158, 1222.) However, No. 2.02 is to be used instead of No. 2.01 when "the only element of the offense that rests substantially or entirely on circumstantial evidence is that of specific intent or mental state. [Citations.]" (*Ibid.*) This is such a case.

Appellant was charged with attempted robbery and several counts of assault with a deadly weapon. In defending against these charges, appellant essentially admitted the actus reus of all of the crimes. However, appellant disclaimed the intent to steal and asserted that he had committed only simple assaults since his weapons were not deadly in nature. Thus, the only element of the charges which depended on circumstantial evidence was the mental state element of robbery. Given this reality, the court erred by failing to give No. 2.02 instead of No. 2.01.

The Court of Appeal rejected appellant's contention on the grounds that his use of force and his flight from the scene were pieces of circumstantial evidence which bore on the force or fear element of robbery and his commission of assault. (Exhibit A, p. 20.) Little need be said regarding this

conclusion.

As was discussed above, the direct evidence overwhelmingly showed that appellant used force against Mr. Gonzales and thereby assaulted him. Since the only element which rested "substantially" on circumstantial evidence was that of the specific intent to steal (*People v. Cole,* supra, 33 Cal.4th 1158, 1222), it was error to give No. 2.01 instead of No. 2.02.

VI.

THIS COURT SHOULD GRANT REVIEW IN ORDER TO HOLD THAT FEDERAL CONSTITUTIONAL ERROR OCCURS WHEN THE COURT FAILS TO GIVE CALJIC NO. 2.02 IN A PROPER CASE. EVEN IF THE *WATSON* STANDARD IS APPLICABLE, APPELLANT IS ENTITLED TO A REVERSAL.

To date, this court has held that the test of *People v. Watson* (1956) 46 Cal.2d 818 applies to the omission to give CALJIC No. 2.02 (or No. 2.01). (*People v. Bloyd,* supra, 43 Cal.3d 333, 351-352.) This court should grant review in order to reconsider this rule. (See *People v. Cole,* supra, 33 Cal.4th 1158, 1222, fn. 20 [noting the defendant's contention that the failure to give No. 2.02 was federal constitutional error].)

The principles enunciated in No. 2.02 (and No. 2.01) flow from the reasonable doubt standard. (*People v. Hatchett* (1944) 63 Cal.App.2d 144, 155.) This is so because there is an absence of proof beyond a reasonable doubt when there is a reasonable inference supporting innocence which can

- 32 -

be drawn from the evidence. (*Ibid.*) Given the fact that No. 2.02 states a principle which is part and parcel of the reasonable doubt standard, it necessarily follows that an instructional omission regarding that principle constitutes federal constitutional error. (*Sullivan v. Louisiana* (1993) 508 U.S. 275, 278-282 [error in reasonable doubt instruction requires per se reversal under the federal Constitution].)

Regardless of the requirements of the federal Constitution, there is a reasonable probability that appellant would have been acquitted of attempted robbery had No. 2.02 been given. (*People v. Watson,* supra, 46 Cal.2d 818, 836.) This is so for two reasons.

First, the evidence was in virtual equipoise regarding whether appellant intended to steal from Mr. Gonzales. On the one hand, appellant had a motive to do so since "Harvey" owed him money. On the other hand, appellant made no attempt to take Mr. Gonzales' wallet or other property even though he had every opportunity to do so. Given this closely balanced evidence, the jurors may well have acquitted appellant had they known that they were required to give him the benefit of the doubt regarding whether he had the requisite mental state. (*People v. Yrigoyen,* supra, 45 Cal.2d 46, 50 [failure to instruct on the principles regarding circumstantial evidence constituted prejudicial error since the evidence with respect to defendant's intent to defraud was

conflicting].)

Second, the jury was greatly troubled by this case. It deliberated for almost two days and twice asked for a rereading of Mr. Gonzales' testimony. (CT 170-171, 227, 229-230, 238-239.) It also acquitted appellant on the several counts of assault with a deadly weapon. Viewed objectively, it is fair to say that a correctly instructed jury would have reached a different verdict. Reversal is required.

VII.

THE CONVICTION FOR ATTEMPTED ROBBERY MUST BE REVERSED DUE TO THE CUMULATIVE PREJUDICE FLOWING FROM THE SEVERAL ERRORS.

A defendant is entitled to a reversal when he has been denied a fair trial due to the cumulative effect of a number of errors. (*Chambers v. Mississippi* (1973) 410 U.S. 284, 302-303; *People v. Hill* (1998) 17 Cal.4th 800, 844-845.) This is such a case.

At trial, the only contested issue with respect to the attempted robbery charge was whether appellant maintained the specific intent to steal. The evidence on this question was closely balanced such that a reasonable trier of fact could have concluded that appellant intended only to assault Mr. Gonzales (or "Harvey") and not to take his money.

However, the errors committed at trial cumulatively served to harm

appellant's cause. Throughout the trial, appellant was prejudiced by his lack of access to legal materials. The failure to give CALJIC No. 2.02 served to diminish the degree of scrutiny which the jury gave to the issue of appellant's mental state. Similarly, the exclusion of Ms. Roberts' testimony deprived appellant of persuasive evidence which tended to show a lack of a motive to steal. Finally, admission of the prejudicial knife evidence allowed the jury to convict appellant because he appeared to be dangerous rather than because he had the intent to steal.

This was a close case as evidenced by the lengthy jury deliberations, the requests for the rereading of testimony and the acquittals on several counts. Given these objective indications that the jury was troubled, reversal is compelled under the due process clause of the federal Constitution (*Chambers v. Mississippi*, supra, 410 U.S. 284, 302-303 [cumulative effect of two errors warranted reversal under due process clause]; *People v. Hill,* supra, 17 Cal.4th 800, 844-845.)

## CONCLUSION

For the reasons expressed above, review should be granted.

Dated: May  8  , 2006                Respectfully submitted,

DALLAS SACHER
Attorney for Appellant,
Bath Dennis Capela

## **CERTIFICATE OF COUNSEL**

I certify that this brief contains 8198 words.

Dated: May  8  , 2006

DALLAS SACHER
Attorney for Appellant
Barth Dennis Capela

- 36 -

## PROOF OF SERVICE

I declare that I am over the age of 18, not a party to this action and my business address is 100 N. Winchester Blvd., Suite 310, Santa Clara, California 95050.  On the date shown below, I served the within *APPELLANT'S PETITION FOR REVIEW* to the following parties hereinafter named by:

__X__    Placing a true copy thereof, enclosed in a sealed envelope with postage thereon fully prepaid, in the United States mail at Santa Clara, California, addressed as follows:

Morris Lenk, Esq.
Office of the Attorney General
455 Golden Gate Avenue
Suite 11,000
San Francisco, CA 94102-7004
[counsel for Respondent]

Office of the District Attorney
70 W. Hedding Street
San Jose, CA 95110

Clerk of the Superior Court
191 N First Street
San Jose, CA 95113

Sixth District Court of Appeal
333 W. Santa Clara Street
Suite 1060, 10th Floor
San Jose, CA 95113

Barth Capela
V-58262
CSP Solano
P.O. Box 4000
Vacaville, CA 95696-4000

I declare under penalty of perjury the foregoing is true and correct.
Executed this 8th day of May, 2006, at Santa Clara, California.

Priscilla A. O'Harra

- 37 -

# Exhibit A

CIRCULATE
MAR
EDS _____ LAO _____
VIF _____ WCR _____
JG _____ FO _____

**COPY**

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b). This opinion has not been certified for publication or ordered published for purposes of rule 977.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

Court of Appeal - Sixth App. Dist.

**FILED**

SIXTH APPELLATE DISTRICT

APR 4 - 2006

MICHAEL J. YERLY, Clerk

By_____

DEPUTY

| | |
|---|---|
| THE PEOPLE, | H028273 |
| Plaintiff and Respondent, | (Santa Clara County Super.Ct.No. FF302986) |
| v. | |
| BARTH DENNIS CAPELA, | |
| Defendant and Appellant. | |

After a jury trial, defendant Barth Dennis Capela was convicted of one count of attempted robbery in the second degree (Pen. Code, §§ 664/211-212.5, subd. (c))[1] and other offenses relating to an early-morning attack on a man in Gilroy. Defendant was sentenced to a total term of 19 years in prison; in addition, the trial court imposed two 30-day sentences for two misdemeanor assault convictions and granted credit for time served.

On appeal, defendant asserts various claims of error, including the following: (1) the admission into evidence of a knife found in defendant's car immediately after his arrest was prejudicial error; (2) the court erred in excluding evidence that defendant sought to introduce through testimony from a prison

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

RECEIVED

APR - 4 2006

inmate; (3) there was instructional error; (4) there was sentencing error; and (5) defendant was denied due process because the court allegedly denied him access to a law library and refused to appoint advisory counsel. We conclude that the court committed sentencing error by imposing two consecutive one-year enhancements under section 667.5, subdivision (b), and by imposing two 30-day sentences for the two assault convictions in violation of section 654. We otherwise conclude that there was no error and will affirm the judgment as modified to correct the sentencing error.

In a petition for writ of habeas corpus (H029557), which this court previously ordered to be considered with this appeal, defendant argues that the charge of attempted robbery in the information was "illegally filed," because there was no new evidence presented at the hearing on the preliminary examination that supported the addition of that charge. We have disposed of the habeas petition by separate order filed this day. (See Cal. Rules of Court, rule 24(b)(4).)

FACTS

I.    *Prosecution Witnesses*

A.    *Rafael Gonzales*

Rafael Gonzales was on his way to work at about 7:15 a.m. on August 19, 2003. He was walking on Murray Avenue in Gilroy and was talking on his cell phone when he heard someone call out the name "Harvey" to him. Gonzales responded that his name wasn't "Harvey" and kept walking. The man who called out to Gonzales then got out of his car with a slingshot. Gonzales turned away so that he wouldn't get hit in the face and felt something strike his thigh.

After Gonzales was struck in the leg, the man approached him and "yell[ed] at" him, saying that Gonzales owed him some money. Gonzales again told him that he was not "Harvey" and tried to show him some identification. The man did not want to look at the identification and instead punched Gonzales in the mouth.

2

Gonzales fell to the ground and covered up his head. As he was on the ground, he was punched or kicked in the head. He became somewhat groggy from the assault. Gonzales received a bloody split lip from the punch and a bump on the head from being struck while he was on the ground.

As Gonzales got to his feet, he saw the man return to his car and retrieve a stick or a bat. As Gonzales attempted to walk away, the man said "[s]omething to [the] effect" of "I'm going to get my money from you one way or the other." Gonzales kept walking away from the man. As he did so, Gonzales saw a woman who had come out of her house; he told her to go back inside because he was afraid for her. The man made a U-turn and drove away.

Shortly thereafter, Officer Morrow arrived and took Gonzales to a Chevron station. The officer asked Gonzales to identify the person who assaulted him; Gonzales identified defendant and also said that the vehicle appeared to be the one that defendant had been driving at the time of the assault.

B.     *Michael Deleonardo*

Michael Deleonardo was driving his truck northbound on Murray in Gilroy on August 19, 2003, at around 7:30 a.m. He observed a conflict between a Caucasian man (whom he identified at trial as defendant) and a Hispanic man. Deleonardo saw defendant pull back on a slingshot and strike the Hispanic man on the leg with a shiny object. He backed his truck up and told them to "knock it off."[2] Deleonardo then observed defendant pointing a gun at the Hispanic male about two or three feet away from him; defendant was "mouthing words to" the

---

[2] Although the time sequence is unclear from the record, at some point, Deleonardo saw defendant punch the Hispanic male.

3

Hispanic male. At the time, the Hispanic male was on the ground covering his head. Deleonardo used his cell phone to call 911.[3]

Defendant returned to his car, made a U-turn, and left the scene. Deleonardo followed defendant, who turned into a parking lot for a Chevy's restaurant. Deleonardo passed the entrance to the parking lot, turned around, and waited for defendant at another driveway. As defendant passed Deleonardo, he said, "[M]ind your own fuckin' business." After the police arrived moments later, Deleonardo drove back to the scene to locate the victim. He found the victim and observed that "he was bleeding from the mouth pretty bad."

C.    *Officer Hugo Del Moral*

Officer Hugo Del Moral arrived at a Chevron station that morning in response to a call. Other officers were already there and "were conducting a high risk car stop" (i.e., "taking the person out of the vehicle at gun point"). Defendant was ordered out of the car; he complied and was arrested. Officer Del Moral searched defendant's automobile—a blue Toyota. Its contents included a wrist rocket slingshot, a bag of marbles, binoculars, and a folding knife, all located on the front passenger seat. He also found a baseball bat in the vehicle as well as a Crossman air gun that was hidden between the folded-down backrest and rear passenger seat. The air gun did not have a trigger.

D.    *Officer Steve Morrow*

Shortly after 7:00 a.m. on August 19, 2003, Officer Steve Morrow was dispatched to "a fight in progress . . . possibly involving weapons." Upon his arrival at a gas station, Officer Morrow observed other officers already on the scene conducting a stop of defendant in his vehicle. Once matters were secure,

---

[3] The tape from Deleonardo's somewhat extended 911 call was played to the jury without objection.

4

Officer Morrow drove a few blocks and met with Gonzales and Deleonardo. Gonzales was bleeding from the mouth, and the officer felt bumps on Gonzales's head. Gonzales told Officer Morrow that defendant had said during the assault: "Get in the car. I'm going to get my money out of you one way or another." The officer took Gonzales back to the gas station, where he identified defendant as his assailant.

II.     *Defense Witness*

A.     *Wiley Capela*

Wiley Capela is defendant's brother. He and defendant had shot slingshots for "[a]s long as [the witness could] remember." Defendant was a very good marksman with a slingshot; the witness estimated that if one were to line up 10 cans and have defendant shoot at them from thirty yards, he would miss no more than one of them. The witness would have had no problem loaning defendant $200 to $300 if he needed the money.

B.     *Stipulation*

The prosecution and defense stipulated that at the time of defendant's arrest and booking, he had $168.00 in cash in his possession.

PROCEDURAL BACKGROUND

Defendant was charged by first amended information filed November 19, 2003, with the following four counts, all arising out of an alleged attack upon Rafael Gonzales on August 19, 2003: attempted robbery in the second degree (§§ 664/211-212.5, subd. (c), count 1); assault with a deadly weapon or by means of force likely to produce great bodily injury, i.e., aggravated assault (§ 245, subd. (a)(1), count 2), by use of a wrist rocket and slingshot; aggravated assault (§ 245, subd. (a)(1), count 3), by use of a baseball bat; and aggravated assault (§ 245, subd. (a)(1), count 4), by use of an air gun. The information also alleged that

5

defendant had three prior strike convictions  (§§ 667, subd. (b)–(i)/1170.12), three prior serious felony convictions (§ 667, subd. (a)(1)), and two prior convictions that resulted in imposition of prison terms (§ 667.5, subd. (b)).

After a jury trial, defendant was found guilty on April 7, 2004, of the charge of attempted robbery in the second degree (count 1).  The jury found defendant not guilty on the second and fourth counts of aggravated assault, but found him guilty of the lesser-included offense of misdemeanor assault (§ 240) as to each of those counts.  The jury acquitted defendant of the third count of aggravated assault by use of a baseball bat.  Thereafter, the court found true each of the enhancement allegations, i.e., that defendant had three prior conviction strikes (§§ 667, subd. (b)–(i)/1170.12), three prior serious felony convictions (§ 667, subd. (a)), and two prior convictions that resulted in imposition of prison terms (§ 667.5, subd. (b)).[4]

Defendant filed a motion for new trial which was denied on October 8, 2004.  Defendant's motion to dismiss the three prior strikes pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, was granted.  The court imposed a sentence of two years in prison for the attempted robbery conviction, 15 years for the three enhancements under section 667, subdivision (a), and two years for the enhancements related to the prior prison terms under section 667.5, subdivision (b), for a total prison term of 19 years.  It also imposed two 30-day sentences for the two misdemeanor assault convictions, with the sentences having been deemed served.  Defendant filed a timely notice of appeal.

### DISCUSSION

Defendant asserts eight claims of error as follows:

---

[4] Defendant waived a trial by jury on the issue of the enhancements.

1.     The court erred in admitting evidence that a knife (not used in the attack on the victim) was found in defendant's vehicle upon his arrest.

2.     The court erroneously excluded evidence from a prison inmate (Roberts) on the issue of defendant's lack of motive to steal.

3.     The court erred in failing to give a jury instruction sua sponte concerning the sufficiency of circumstantial evidence to prove a defendant's specific intent (CALJIC No. 2.02).

4.     The judgment of conviction should be reversed due to the cumulative prejudice that resulted from the various trial court errors.

5.     The imposition of prison terms for enhancements under section 667.5 was sentencing error.

6.     Defendant could not be convicted of two separate assault charges; "a single assault was improperly fragmented into multiple assault convictions."

7.     The punishment for the separate assault convictions should have been stayed under section 654.

8.     The court improperly denied defendant access to a law library and denied defendant's request for appointment of advisory counsel.[5]

We address each of these appellate claims below.

I.     *Knife Evidence*

    A.     *Background and Contentions*

In pretrial proceedings, defendant raised an objection to any potential reference to a knife found during the search of his vehicle immediately after his

---

[5] After filing his opening brief, defendant sought leave of court to file a supplemental brief in order to argue that he was denied due process of law because of the absence of advisory counsel and the alleged denial of access to a law library. We granted defendant's motion; defendant thereafter filed a supplemental brief to address this additional issue.

7

arrest. He argued that the knife was "part of the police report but it shows prejudice against [defendant] that there's a knife there, because it is considered a deadly weapon whereas the other ones are debatable." The prosecution argued that, although knife-use against the victim was not alleged, possession of the knife was "relevant just to show what [defendant] had, sort of an arsenal in his car." Although defendant did not clearly articulate an objection to the knife evidence under Evidence Code section 352,[6] the prosecution asked the court to consider defendant's evidentiary objection to be both a relevance objection and an objection under Evidence Code section 352. The court deferred any ruling on the matter.

At trial, Officer Del Moral testified that during the search of defendant's vehicle, he recovered a folding knife (exhibit 11) from the right front passenger's seat. It was in the same location as the wrist rocket slingshot and marbles. After the witness was excused, defendant objected to introduction of the knife as an exhibit. The court overruled the objection, concluding that "there [was] some relevance that would override any prejudice and [the exhibit] will be admitted having considered [Evid. Code, §] 352 objections also."

Defendant argues that because the knife was not used in the attack on Gonzalez, it was plainly irrelevant and inadmissible. He argues further that the error was prejudicial—citing the *Chapman* standard (*Chapman v. California* (1967) 386 U.S. 18)—because it cannot be established that the error was harmless beyond a reasonable doubt.

---

[6] "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.)

The Attorney General responds that the knife evidence "had probative value since it was found among [defendant's] weapons when he was arrested." "There was [the Attorney General argues] a direct connection in place and time between the folding knife and the charged crimes." He also points to the fact that possession of the knife was relevant to his flight from the scene and was thus circumstantial evidence to establish his consciousness of guilt. Finally, the Attorney General contends that, assuming any error, it is not reasonably probable that defendant would have achieved a more favorable result in the absence of the error.

### B.   *Discussion of Claim of Error*

In reviewing defendant's claim that the trial court erred because evidence of defendant's possession of the knife was irrelevant and inadmissible, "[w]e apply the deferential abuse of discretion standard." (*People v. Kipp* (2001) 26 Cal.4th 1100, 1123.) "Evidence is relevant if it has *any* tendency in reason to prove or disprove a disputed fact at issue." (*People v. Mayfield* (1997) 14 Cal.4th 668, 749; see also Evid. Code, § 210.) Similarly, we apply an abuse of discretion standard to the trial court's exercise of discretion under Evidence Code section 352; the court's decision will not be reversed absent a showing that such discretion was exercised in an " 'arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]' [Citation.]" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125.)

Applying these standards, we find no abuse of discretion by the trial court in admitting the knife evidence. Evidence that defendant possessed a folding knife in his vehicle was relevant. The knife was in close proximity to the site of the attempted robbery. Defendant used his vehicle to transport the items (i.e., slingshot, baseball bat, and air gun) used to attack Gonzales. Indeed, it is apparent

9

that, after his initial attack with a slingshot, defendant returned to his car to procure one or more of the other weapons to continue with the assault.

And, perhaps most significantly, defendant ordered Gonzales to get into his vehicle, saying, "I'm going to get my money out of you one way or another." This was probative evidence that defendant had the criminal intent to commit an armed robbery. Defendant admitted the assault on Gonzales but denied that he had the intent to rob him; indeed, nearly his entire closing argument was devoted to this theme. Thus, the fact that defendant carried a knife in his vehicle—the location to which defendant ordered the victim—was probative (1) on the issue of whether defendant intended to commit a robbery; and (2) on the question of whether defendant was attempting to take property from Gonzales "by means of force or fear" (§ 211), with the knife being one of the weapons available to accomplish the crime had defendant been successful in getting Gonzales into his vehicle. And while defendant claims on appeal that his statement ("I'm going to get my money out of you one way or another") was ambiguous and subject to alternative interpretations (i.e., either he intended to steal, or he was going to assault the victim in lieu of payment), the fact that defendant had a knife in his vehicle supported the conclusion more damaging to defendant, i.e., that he intended to rob Gonzales and the knife was one of the weapons at defendant's disposal to accomplish that objective. We therefore reject defendant's claim that the knife evidence had no conceivable relevance.

Neither *People v. Henderson* (1976) 58 Cal.App.3d 349 (*Henderson*), nor *People v. Archer* (2000) 82 Cal.App.4th 1380 (*Archer*), cited by defendant, compels a contrary conclusion. In *Henderson*, the defendant was charged with two counts of assault with a deadly weapon against two peace officers. (*Henderson, supra,* at p. 351.) He claimed on appeal, inter alia, that the trial court erroneously permitted the prosecution to cross-examine the defendant concerning

10

a loaded Derringer located in his home when that weapon was not used in the assaults. (*Id.* at pp. 359-360.) The court concluded that this other-weapon evidence was inadmissible because it had no bearing on whether the defendant harbored the necessary intent to commit the crime of assault with a deadly weapon, and was only used for the impermissible purpose of attempting to show that the "defendant is the kind of person who surrounds himself with deadly weapons." (*Id.* at p. 360.)

Here, unlike *Henderson*—which involved the general intent crime of assault with a deadly weapon (see *People v. Valdez* (2002) 27 Cal.4th 778, 787)— robbery requires a finding of specific intent to rob the victim. (*People v. Ford* (1964) 60 Cal.2d 772, 793, overruled on other grounds in *People v. Satchell* (1971) 6 Cal.3d 28, 36-40.) As discussed, the knife evidence was relevant for the proper purpose of establishing the specific intent element of the crime of robbery and as evidence that defendant had the wherewithal to "accomplish[] [the robbery] by means of force or fear." (§ 211.)[7]

*Archer, supra*, 82 Cal.App.4th 1380, likewise does not support defendant's position. In *Archer*, the police found a number of knives at the defendant's home during searches conducted more than a year after the charged murder had occurred. (*Id.* at p. 1384.) The defendant objected to introduction of the knives, and the prosecution argued successfully at trial that the evidence was relevant to

---

[7] Although we conclude that *Henderson* is distinguishable, we note that the primary focus in that case was on issues other than the admissibility of the unrelated weapon. (See *Henderson, supra*, 58 Cal.App.3d at pp. 353-359.) In fact, the court's discussion of the other-weapon evidence was almost an afterthought; before considering that issue, the court concluded that the failure of the trial court to submit to the jury the factual issue of whether the police officers were lawfully engaged in the performance of their duties at the time of the alleged assaults was prejudicial error requiring reversal. (*Id.* at p. 359.)

establish the defendant's planning and access to weapons. (*Id.* at p. 1392.) The appellate court concluded that admission of the knives (save two that had some proved relationship to the charged crime) was improper. (*Id.* at pp. 1392-1393.)

Here, the knife was found *immediately after* the assault on Gonzales. And unlike the circumstances in *Archer*, the weapon bore a relationship to the crime because of (1) the vehicle's close proximity to defendant, and (2) defendant's use of the vehicle in furtherance of his criminal activity. Thus, neither *Henderson* nor *Archer* compelled the exclusion of the knife evidence in this instance.

It remains for us to decide whether, notwithstanding the evidence's relevance, the trial court should have excluded it because "its probative value [was] substantially outweighed by the probability that its admission [would have] (a) necessitate[d] undue consumption of time or (b) create[d] substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) While the degree of the probative value of the knife evidence may not have been extremely great, we cannot conclude that the court abused its discretion by admitting the evidence after conducting an Evidence Code section 352 analysis. As the Supreme Court has explained: "The exercise of discretion [under Evidence Code section 352] is not grounds for reversal unless ' "the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." ' [Citations.]" (*People v. Ochoa* (2001) 26 Cal.4th 398, 437-438.) Under that standard, the court did not abuse its discretion.

II.    *Exclusion Of Evidence (Testimony Of Witness Roberts)*

A.    *Background and Contentions*

Approximately four months before the trial ultimately commenced, defendant filed a motion to have an inmate, Selina Roberts, transferred from Chowchilla Prison to a local facility "so that the defendant can interview the witness." The matter was heard on December 11, 2003, before the Honorable

12

Edward Lee, who was not the judge who ultimately presided over the trial. Judge
Lee initially indicated that he was inclined to deny the motion because "there
[was] simply no reason given why [Roberts] should be transferred from state
prison to a local facility." Defendant responded that "[s]he's a direct witness in
this case, Your Honor. She was present during the events that took place. I need
her for testimony." He later clarified that Roberts was not present at the time of
the incident, but that her proposed testimony concerned "[defendant's] use of the
slingshot and a couple of events that took place afterwards." Judge Lee denied
defendant's motion without prejudice, indicating that defendant was required to
establish good cause that he needed access to the witness before the court would
order her to be transferred.

Defendant renewed the motion later in December 2003. He asserted in his
written motion that it was essential that Roberts be ordered transferred to a local
facility because she was a witness "[1] to [defendant's] ability using a slingshot . .
. [2 who could describe] the reason [defendant] would have been upset at . . .
Harvey [and 3 who had] . . . secured [defendant's] personal properts [*sic*] putting
his things in storage when he was arrested[] and [could] testify [defendant] was
not in any need to comit [*sic*] the crime of robbery especially for a mere $100.00."
The matter was heard by Judge Lee, who again denied the motion, concluding that
there was no good cause for transferring Roberts.

Roberts's name appeared in defendant's witness list filed on March 29,
2004, shortly before the commencement of trial. The prosecution—
acknowledging that defendant had advised of his intention to call Roberts as a
witness at trial concerning defendant's prowess in the use of a slingshot—noted
that Roberts was scheduled for release from prison sometime during the week that
the trial would proceed.

During trial, the prosecution advised the court outside of the jury's presence that Roberts had been released from prison on April 1, 2004, and that it intended to impeach the witness with two prior felony convictions. Defendant opposed the introduction of the prior felony convictions, arguing that they were not relevant to the subject matter of Roberts's testimony. Defendant stated that Roberts "would be the last witness that [he] would call to testify," and that her anticipated testimony would be "very brief" on the issue of "whether she's seen [defendant] use a slingshot and that's . . . basically about it." The court ruled that the fact that Roberts had suffered two prior felony convictions would be admissible by the prosecution to impeach the witness if she testified.

Defendant did not call Roberts to testify at trial and called only one witness, his brother, in his defense.[8] There is nothing in the record indicating that defendant took any steps to secure Roberts's testimony, and defendant did not request the court's assistance in requiring her appearance.[9]

Defendant contends that the trial court erred when it denied defendant's pretrial request to transfer Roberts to a local facility. He argues that Roberts's anticipated testimony was relevant and probative on the issue of whether defendant had a motive to steal. Defendant argues that this error constituted a denial of due process and that the error was not harmless beyond a reasonable doubt.

---

[8] Defendant announced the calling of a second witness, Silverio Perez, who was apparently defendant's former landlord and may have had information as to whether defendant needed money at the time of the attack on Gonzales. After learning that Perez had not appeared, defendant decided to rest his case.

[9] After the jury was empanelled, defendant requested and obtained approval from the court to make four telephone calls to potential witnesses; one of those witnesses was Roberts's mother.

14

The Attorney General responds that defendant's challenge to the court's pretrial order denying the request to transfer Roberts to a local facility was rendered moot by the witness's subsequent release from prison. He responds further that defendant failed to make a specific offer of proof regarding Roberts's anticipated testimony that was required to assess on appeal the claimed error in the exclusion of evidence. Third, the Attorney General argues that any error was harmless.

B.    *Discussion of Claim of Error*

The threshold question is whether the court below, in fact, excluded any evidence. It is plain from the record—as recited above—that the court did not exclude Roberts's testimony. In proceedings well before trial, Judge Lee—*not* the trial judge—denied defendant's two motions to transfer Roberts from Chowchilla prison to a local facility. Had the trial proceeded shortly after these rulings before Judge Lee, defendant's claim that the court excluded evidence—putting aside the issue of the propriety of such ruling—might have merit.

Here, however, the trial did not commence until more than three months after Judge Lee's denial of defendant's second motion to transfer Roberts. There is nothing in the record to suggest that the trial judge, Judge Kenneth Shapero, ordered the exclusion of any proffered testimony from Roberts. The trial court did nothing more than rule that if defendant called Roberts as a witness, the prosecution would be permitted to offer her two prior felony convictions as impeachment. Rather than the court being responsible for Roberts's exclusion, the record suggests that defendant made the tactical decision not to call her as a trial witness. We therefore reject defendant's claim of error founded upon the alleged erroneous exclusion of evidence, because there was no such exclusionary order in this instance. (See *People v. Espinoza* (2002) 95 Cal.App.4th 1287, 1299-1304 [alleged error in excluding testimony of uncle of sex-crimes victim that victim had

15

made false molestation charge against him rejected, where record neither disclosed that defense counsel proffered uncle's testimony nor that trial court excluded it]; *People v. Honig* (1996) 48 Cal.App.4th 289, 342-346 [theory of admissibility of testimony of private donors to nonprofit organization founded by defendant and his spouse not advanced at trial and defendant did not attempt to call donors to testify; therefore, defendant could not argue reversible error based on alleged exclusion of evidence].)

The absence of an order excluding evidence notwithstanding, defendant's contention also lacks merit because of the absence of a specific offer of proof concerning Roberts's proposed testimony. "[A] judgment may not be reversed for the erroneous exclusion of evidence unless 'the substance, purpose, and relevance of the excluded evidence was made known to the court by the questions asked, an offer of proof, or by any other means.' [Citations.]" (*People v. Anderson* (2001) 25 Cal.4th 543, 580, quoting Evid. Code, § 354, subd. (a); see also *People v. Valdez* (2004) 32 Cal.4th 73, 108.) "This rule is necessary because, among other things, the reviewing court must know the substance of the excluded evidence in order to assess prejudice. [Citations.]" (*People v. Anderson, supra*, at p. 580.)

Here, defendant advised the trial court that Roberts's anticipated testimony would be "very brief" on the issue of "whether she's seen [defendant] use a slingshot and that's . . . basically about it." This did not constitute a specific offer of proof. Defendant argues on appeal that he made an offer of proof that Roberts had knowledge regarding defendant's property at the time of his arrest. This so-called offer of proof, however, was not made to the trial judge. But even if we were to consider defendant's motion before Judge Lee some three months before trial to have been an offer of proof, it likewise lacked any specificity to permit a reviewing court to assess the significance of the evidence. (*People v. Anderson, supra*, 25 Cal.4th at p. 580.)

16

III.    *Failure To Give Jury Instruction (CALJIC No. 2.02)*

A.    *Background and Contentions*

The court instructed the jury as to the definition of circumstantial evidence (as stated in CALJIC No. 2.00).[10] It further cautioned the jury (as provided in CALJIC No. 2.01)[11] that "a finding of guilt as to any crime may not be based on circumstantial evidence unless the proved circumstances are not only [(1)] consistent with the theory that the defendant is guilty of the crime[,] but [(2)] cannot be reconciled with any other rational conclusion." In advance of

---

[10] "Evidence is either direct or circumstantial. [¶] . . . [¶] Circumstantial evidence is evidence that, if found to be true, proves a fact from which an inference of the existence of another fact may be drawn. [¶] . . . [¶] It is not necessary that facts be proved by direct evidence. They also may be proved by circumstantial evidence or by a combination of direct and circumstantial evidence. Both direct and circumstantial evidence are acceptable as a means of proof. Neither is entitled to any greater weight than the other." (CALJIC No. 2.00 (Oct. 2005 ed.).)

[11] The entire instruction reads as follows: "However, a finding of guilt as to any crime may not be based on circumstantial evidence unless the proved circumstances are not only (1) consistent with the theory that the defendant is guilty of the crime, but (2) cannot be reconciled with any other rational conclusion. [¶] Further, each fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt must be proved beyond a reasonable doubt. In other words, before an inference essential to establish guilt may be found to have been proved beyond a reasonable doubt, each fact or circumstance on which the inference necessarily rests must be proved beyond a reasonable doubt. [¶] Also, if the circumstantial evidence as to any particular count permits two reasonable interpretations, one of which points to the defendant's guilt and the other to his innocence, you must adopt that interpretation that points to the defendant's innocence, and reject the interpretation that points to his guilt. [¶] If, on the other hand, one interpretation of this evidence appears to you to be reasonable and the other interpretation to be unreasonable, you must accept the reasonable interpretation and reject the unreasonable." (CALJIC No. 2.01 (Oct. 2005 ed.).)

instructing the jury (and outside of the presence of the jury), the court explained to the prosecution and defendant that CALJIC No. "2.01 discusses the sufficiency of circumstantial evidence which is relevant on the acts in this case and the intent required on the robbery case charge."

Defendant contends that the court erred by giving CALJIC No. 2.01. He argues that the court instead should have given CALJIC No. 2.02 sua sponte. Defendant urges that CALJIC No. 2.02[12] was the appropriate jury instruction because the circumstantial evidence in the case was relevant only to the specific-intent-to-steal element of the robbery count. (See Use Note to CALJIC No. 2.02 (Oct. 2005 ed.): "If the only circumstantial evidence relates to specific intent or mental state, CALJIC [No.] 2.02 [rather than CALJIC No. 2.01] should be given.") He argues that he "essentially admitted the actus reus of all of the crimes" and that his sole contentions at trial were that he did not intend to steal from Gonzales and the weapons used were not deadly weapons. Defendant asserts that because the statement relied on by the prosecution in support of the argument that he had the requisite specific intent ("Get in the car[—]I'm going to get my money out of you one way or another") was susceptible to more than one

---

[12] "The [specific intent] [or] [and] [mental state] with which an act is done may be shown by the circumstances surrounding the commission of the act. However, you may not [find the defendant guilty of the crime charged] . . . unless the proved circumstances are not only (1) consistent with the theory that the defendant had the required [specific intent] [or] [and] [mental state] but (2) cannot be reconciled with any other rational conclusion. [¶] Also, if the evidence as to [any] [specific intent] [or] [mental state] permits two reasonable interpretations, one of which points to the existence of the [specific intent] [or] [mental state] and the other to its absence, you must adopt that interpretation which points to its absence. If, on the other hand, one interpretation of the evidence as to the [specific intent] [or] [mental state] appears to you to be reasonable and the other interpretation to be unreasonable, you must accept the reasonable interpretation and reject the unreasonable." (CALJIC No. 2.02 (Oct. 2005 ed.).)

interpretation, it was incumbent upon the trial court to give CALJIC No. 2.02. Defendant claims that this error was prejudicial under either a federal constitutional error standard or under a *Watson*[13] "reasonable probability" standard.

The Attorney General responds that the court did not err by giving the broader circumstantial evidence instruction, CALJIC No. 2.01, rather than CALJIC No. 2.02. He contends that the statement cited by defendant was an admission and therefore not evidence for which the court may properly give CALJIC No. 2.02. The Attorney General responds further that any error was harmless.

>    B.    *Discussion of Claimed Error*

As between CALJIC No. 2.01 (the instruction given here) and CALJIC No. 2.02, CALJIC No. 2.01 is "the more inclusive instruction." (*People v. Rodrigues, supra,* 8 Cal.4th at p. 1142.) CALJIC No. 2.01 is the proper instruction in all instances, "unless the only element of the offense that rests substantially or entirely on circumstantial evidence is that of specific intent or mental state." (*People v. Marshall* (1996) 13 Cal.4th 799, 849; see also *People v. Hughes* (2002) 27 Cal.4th 287, 347.) Thus, where the defendant's "mental state or specific intent [is] not the only element of the case resting upon circumstantial evidence, the trial court [does] not commit error by providing only the more inclusive instructions." (*People v. Hughes, supra,* at p. 347.) Indeed, CALJIC's use notes indicate that the two instructions should not be given together. (Use Note to CALJIC No. 2.01(Oct. 2005 ed.); Use Note to CALJIC No. 2.02 (Oct. 2005 ed.))

---

[13] *People v. Watson* (1956) 46 Cal.2d 818, 836.

We agree that there was circumstantial evidence presented for the jury to consider, including defendant's statement to the victim and defendant's alleged flight.[14] Contrary to defendant's position, however, this circumstantial evidence was not relevant solely on the issue of specific intent. For example, defendant's display and use of weapons upon the victim were facts from which the jury could have inferred not only an intention to permanently deprive Gonzales of his property, but also an attempted taking by force or fear, another element of robbery.[15] Similarly, the jury could have inferred from defendant's flight a consciousness of guilt with respect to the specific intent crime of attempted robbery, the other charged (general intent) crimes of aggravated assault, or both. Therefore, since this was not a case in which "the only element of the offense that rest[ed] substantially or entirely on circumstantial evidence [was] that of specific intent or mental state" (*People v. Cole* (2004) 33 Cal.4th 1158, 1222), the trial court properly gave the more inclusive circumstantial evidence instruction, CALJIC No. 2.01. (*People v. Hughes, supra,* 27 Cal.4th at p. 347.)[16]

---

[14] The court gave CALJIC No. 2.52, under which the jury was apprised that it could consider defendant's flight from the crime scene with other evidence in deciding whether defendant is guilty or not guilty but that flight alone was insufficient to establish guilt.

[15] "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.)

[16] "Extrajudicial admissions, although hearsay, are not the type of indirect evidence as to which the instructions on circumstantial evidence are applicable." (*People v. Wiley* (1976) 18 Cal.3d 162, 174, citing *People v. Gould* (1960) 54 Cal.2d 621, 629.) The Attorney General argues that under *Wiley,* defendant's statement here was an admission for which it would have been inappropriate to give CALJIC No. 2.02. While defendant's statement was significant evidence of defendant's intent to deprive the victim of his property, it was also arguably an admission. Admissions of a defendant may occur before, during or after the commission of a crime. (*People v. Carpenter* (1997) 15 Cal.4th 312, 393

(continued)

20

IV.    *Claimed Cumulative Prejudice*

Citing *People v. Hill* (1998) 17 Cal.4th 800, 844-845, defendant claims that the cumulative effect of the erroneous admission of the knife evidence, erroneous exclusion of the Roberts testimony, and the failure to give CALJIC No. 2.02 was prejudicial. Because we reject defendant's claims of error as stated above, defendant's contention is without merit.

V.    *Imposition Of Prison Enhancements (Penal Code Section 667.5)*

The trial court imposed three consecutive five-year prison terms under section 667, subdivision (a)(1),[17] based upon three prior serious felony convictions suffered by defendant. The court also imposed two consecutive one-year terms under section 667.5, subdivision (b),[18] based upon two prior felony convictions for

---

[statement to victim, "I'm going to rape you," was admission and part of crime itself].) But *Wiley* concerned an admission by the defendant that she intended to kill her husband made the day prior to his beating death. It did not involve the type of statement present here that was in essence part of the criminal act. Because the circumstantial evidence here was not limited to this issue of specific intent, we need not resolve the question of whether defendant's statement was an admission of the kind for which the circumstantial evidence instruction (CALJIC No. 2.02), of necessity, should not be given.

[17] "[A]ny person convicted of a serious felony who previously has been convicted of a serious felony in this state or of any offense committed in another jurisdiction which includes all of the elements of any serious felony, shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately. The terms of the present offense and each enhancement shall run consecutively." (§ 667, subd. (a)(1).)

[18] "[W]here the new offense is any felony for which a prison sentence is imposed, in addition and consecutive to any other prison terms therefor, the court shall impose a one-year term for each prior separate prison term served for any felony; provided that no additional term shall be imposed under this subdivision for any prison term served prior to a period of five years in which the defendant remained free of both prison custody and the commission of an offense which results in a felony conviction." (§ 667.5, subd. (b).)

21

which defendant served terms in prison.  Defendant contends that the court erred in imposing the punishment under section 667.5, subdivision (b), because the same prior convictions were used to punish defendant under section 667, subdivision (a)(1).  The Attorney General concedes the error.

Under the authority of *People v. Jones* (1993) 5 Cal.4th 1142, 1152-1153, a defendant's sentence may not include an enhancement under section 667.5, subdivision (b), while at the same time it includes an enhancement under section 667, subdivision (a)(1), based upon the same prior felony conviction.  The section 667.5 enhancements here were based upon the identical felony convictions that were used to impose two of the enhancements under section 667, subdivision (a)(1).  Since the sentence here was unauthorized by law, defendant may challenge it for the first time on appeal.  (*People v. Scott* (1994) 9 Cal.4th 331, 354.)  The two one-year terms imposed under section 667.5, subdivision (b), must therefore be stricken.

VI.    *Convictions On Multiple Assault Charges*

Defendant contends that one of the two assault convictions must be reversed because there was "a single assault improperly fragmented into multiple assault convictions."  Citing *People v. Jefferson* (1954) 123 Cal.App.2d 219, he claims that because he assaulted Gonzales for a few short minutes, he cannot be subjected to multiple assault convictions.  This contention has no merit.

Defendant here confuses the sustainability of multiple *convictions* based upon the same act or series of acts, as permitted under section 954,[19] with the

---

[19] "An accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated.  The prosecution is not required to elect between the different offenses or counts set

(continued)

propriety of multiple sentences for such convictions under section 654.

(Defendant's claim of sentencing error under section 654 is addressed in section

VII, *post*.) As our high court has explained: "In *People v. Pearson* (1986) 42

Cal.3d 351, 359, we recognized the tension between these statutes, observing:

'This court has long struggled with the problem of permitting multiple convictions

while protecting the defendant from multiple punishment.' The solution we have

adopted is, in general, to permit multiple convictions on counts that arise from a

single act or course of conduct—but to avoid multiple punishment, by staying

execution of sentence on all but one of those convictions. [Citation.]" (*People v.

Ortega* (1998) 19 Cal.4th 686, 692, citing *People v. Pearson, supra*, at p. 360.)

　　As the Supreme Court has recently reiterated in rejecting a challenge that

the defendant could not be convicted of multiple sex crimes arising from the same

conduct (i.e., conviction of lewd and lascivious conduct in addition to convictions

for rape and sodomy): "Unless one offense is necessarily included in the other

[citation], multiple convictions can be based upon a single criminal act or an

indivisible course of criminal conduct (§ 954). Lewd conduct with a child is not a

necessarily included offense of either rape or sodomy, which require only general

intent. [Citation.] Lewd conduct with a child is a distinct crime that requires an

act upon or with the body of a child under the age of 14, with the specific intent to

arouse, appeal to, or gratify the lust or passions or sexual desire of either the

perpetrator or the child (§ 288), and can be proven by circumstantial evidence

including the nature of the act itself. [Citation.] Rape and sodomy are inherently

---

forth in the accusatory pleading, but the defendant may be convicted of any
number of the offenses charged, and each offense of which the defendant is
convicted must be stated in the verdict or the finding of the court . . . . An
acquittal of one or more counts shall not be deemed an acquittal of any other
count." (§ 954.)

sexual acts . . . . Under such circumstances, a conviction for lewd conduct with a child can be obtained at trial and upheld on appeal by the same evidence used to show the defendant raped and sodomized the child." (*People v. Benavides* (2005) 35 Cal.4th 69, 97.)

We believe that *People v. Ortega, supra,* 19 Cal.4th 686, and *People v. Benavides, supra,* 35 Cal.4th 69—as well as *People v. Harrison* (1989) 48 Cal.3d 321 (*Harrison*)—are controlling. In *Harrison,* the defendant argued "that multiple digital penetrations, committed during a brief 'continuous' assault upon a struggling victim, constitute only a single violation of section 289[,] . . . [suggesting] that, under such circumstances, the statutory offense extend[ed] from the initial penetration through final withdrawal, even though multiple penetrations . . . occurred in the interim." (*Id.* at p. 327.) The court rejected the defendant's argument. Including in its reasoning an extended discussion of section 289 and related sex crimes statutes, the court concluded that "a *new and separate* violation of section 289 is 'completed' each time a *new and separate* 'penetration, however slight' occurs." (*Harrison, supra,* at p. 329.)

Here, defendant was convicted of two separate and distinct misdemeanor assaults upon Gonzales—one assault was accomplished with a wrist rocket and slingshot, and the second assault was the result of defendant's use of an air gun. That the two assaults were separated by only moments in time, involved the same victim, and were part of the same course of conduct are circumstances that do not preclude multiple convictions under section 954. Indeed, this case—consisting of separate assaultive conduct—presents a stronger instance justifying multiple convictions than those that existed in *People v. Benavides, supra,* 35 Cal.4th 69, where the court upheld separate sex-offense convictions based upon the same conduct. (See also *People v. Trotter* (1992) 7 Cal.App.4th 363, 368-369, fn. 4

24

[dictum approving separate punishments where a defendant assaulted single victim multiple times during same course of conduct].)

Defendant's reliance on *People v. Jefferson, supra*, 123 Cal.App.2d 219, is misplaced. There, the defendant assaulted police officers outside of her residence with a knife, and after going inside her home, committed a second assault with a different knife. (*Id.* at pp. 219-220.) The defendant claimed on appeal that because she was charged with only one count of assault with a deadly weapon where the evidence supported a charge of two such offenses, the prosecution, on the defendant's demand, was required to elect which of the offenses was being relied upon in support of the conviction. (*Id.* at p. 220.) After noting that the record did not clearly show that the defendant had even made a demand for such an election, the appellate court rejected the defendant's challenge, concluding that "the rule relied on by the [defendant] 'has no application where a series of acts form part of one and the same transaction, and as a whole constitute but one and the same offense,' as stated in *People v. Simon* [(1913)] 21 Cal.App. 88." (*Id.* at p. 221.) While it is true that there is language quoted by defendant here that, taken outside of the context of that case, arguably supports defendant's position,[20]

---

[20] In concluding that the case was governed by the principles in *People v. Simon, supra*, 21 Cal.App. 88 (*Simon*), the *Jefferson* court stated: "Both of the matters relied on as being separate and distinct offenses, occurred in the course of a continuous effort on the part of the officers to disarm the [defendant]. They were a part of the same incident, and they could not reasonably be held to constitute two separate offenses, each complete in itself, and each of which would require a separate charge and a separate trial." (*People v. Jefferson, supra*, 123 Cal.App.2d at p. 221.) *Simon* did not involve a challenge to multiple convictions for offenses committed at or about the same time involving the same victim. Rather, in *Simon* (like in *Jefferson*), the defendant argued unsuccessfully that the prosecution was required to make an election under an indictment that charged a single offense where the evidence supported the conclusion that several offenses may have been committed. (*People v. Simon, supra*, at p. 90.) The appellate court rejected that challenge, concluding that the several acts of the defendant occurring
(continued)

*People v. Jefferson* does not stand for the proposition that a defendant cannot be charged with and convicted of multiple counts of assault simply because the assaultive conduct occurred over a short period of time. To the contrary, defendant here was properly convicted of multiple counts of misdemeanor assault under section 954.

We therefore reject defendant's contention that one of his assault convictions must be stricken.

VII.    *Stay Of Punishment For Assault Convictions (Penal Code Section 654)*

Defendant contends that the trial court erred with respect to sentencing. Specifically, he argues that because the acts that resulted in the multiple convictions were committed with the single criminal objective (i.e., the robbery of Gonzales), the court was precluded from imposing the two 30-day sentences for the two assault convictions; under section 654[21] (defendant argues), those sentences should have been ordered stayed.

We first address the issue of forfeiture. The record does not disclose that defendant—who was represented by counsel at the time of sentencing—objected to the imposition of separate 30-day sentences for the two misdemeanor assault convictions. But the general rule is that a party does not forfeit a challenge to an

---

over several weeks (procurement of a miscarriage of a pregnant woman) were part of a single transaction "under one agreement to procure a miscarriage." (*Id.* at pp. 90-91.)

[21] "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).)

26

unlawful sentence under section 654: "[T]he waiver[22] doctrine does not apply to questions involving the applicability of section 654. Errors in the applicability of section 654 are corrected on appeal regardless of whether the point was raised by objection in the trial court or assigned as error on appeal." (*People v. Perez* (1979) 23 Cal.3d 545, 549-550, fn. 3.) "This exception is not required by the language of section 654, but rather by case law holding that a court acts in excess of its jurisdiction and imposes an unauthorized sentence when it fails to stay execution of a sentence under section 654. [Citation.]" (*People v. Hester* (2000) 22 Cal.4th 290, 295.) We therefore will address defendant's claim of error on its merits.

While section 654, read literally, prohibits multiple punishment only where the same "act or omission is punishable in different ways by different provisions of law" (see fn. 21, *ante*), it applies "not only where there was but one act in the ordinary sense, but also where there was a course of conduct which violated more than one statute but nevertheless constituted an indivisible transaction. [Citation.] Whether a course of conduct is indivisible depends upon the intent and objective of the actor. [Citation.] If all the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one. [Citation.]" (*People v. Perez, supra,* 23 Cal.3d at p. 551; see also *Neal v. State of California* (1960) 55 Cal.2d 11, 19-20.) "It is defendant's intent and objective, not

---

[22] The term "waiver" has been applied both to the intentional relinquishment of a known right and the forfeiture of a claim by failing to timely assert it. (*People v. Saunders* (1993) 5 Cal.4th 580, 590, fn. 6.) " 'The purpose of the general doctrine of waiver is to encourage a defendant to bring errors to the attention of the trial court, so that they may be corrected or avoided and a fair trial had.' " (*People v. Walker* (1991) 54 Cal.3d 1013, 1023.)

the temporal proximity of his offenses, which determine whether the transaction is indivisible. [Citations.]" (*Harrison, supra,* 48 Cal.3d at p. 335.)

Thus, it has long been recognized that where a defendant is convicted of the crime of robbery and other crimes incidental to the robbery (e.g., kidnapping or assault), section 654 precludes the imposition of punishment for both crimes. (See *People v. Miller* (1977) 18 Cal.3d 873, 885 [theft of contents of jewelry store was single criminal objective; acts constituting burglary, robbery, and assault were incidental to that primary objective]; *People v. Beamon* (1973) 8 Cal.3d 625, 639-640 [because kidnapping of truck driver was committed for purpose of robbing victim of truck or its contents, it could not be separately punished]; *People v. Logan* (1953) 41 Cal.2d 279, 290-291; *People v. Brown* (1989) 212 Cal.App.3d 1409, 1427, disapproved on another ground in *People v. Hayes* (1990) 52 Cal.3d 577, 628, fn. 10 [assault was not subject to separate sentence where it was committed in course of robbery]; *People v. Medina* (1972) 26 Cal.App.3d 809, 824 [same].)[23] These authorities are directly applicable here.

Defendant's assaultive conduct toward Gonzales—i.e., the attack with the wrist rocket/slingshot and air gun—was plainly incidental to the primary objective of robbery. Indeed, the prosecution's theory of the case as explained at the outset

---

[23] We contrast these cases holding that incidental crimes committed in the course of the commission of a robbery cannot be separately punished under section 654 with other cases—not controlling here—where the crime was committed after the robbery was accomplished or was otherwise not part of an indivisible transaction. (See, e.g., *People v. Coleman* (1989) 48 Cal.3d 112, 162-163 [stabbing of victim after robbery accomplished was subject to separate punishment]; *People v. Cleveland* (2001) 87 Cal.App.4th 263, 271-272 [repeated beating of nonresisting, elderly victim was separately punishable because violence was gratuitous and far more than necessary to accomplish the robbery]; *People v. Jenkins* (1987) 196 Cal.App.3d 394, 405-406, disapproved on another ground in *People v. Brown* (1993) 6 Cal.4th 322, 336, fn. 12 [shot fired after robbery was accomplished was gratuitous and subject to separate punishment].)

of closing argument makes this point clear: "The defendant used force and fear to try and take money from the victim in this case. That's all that matters. And that's all that has been shown. He used force in the manner of a wrist rocket, baseball bat and an air gun to intimidate the victim into giving him money."[24]

In a case on point, the appellate court agreed that the defendant's assault with a deadly weapon on a store owner, accomplished during a foiled robbery, could not be punished separately from the attempted robbery conviction. (*People v. Gilbert* (1963) 214 Cal.App.2d 566, 568.) Section 654 prohibits punishment for the two assault convictions in addition to punishment for the attempted robbery conviction because the assaults and the attempted robbery were all part of an indivisible transaction. (*People v. Perez, supra*, 23 Cal.3d at p. 551.) We therefore find that the court erred by imposing two 30-day sentences in connection with the misdemeanor assault convictions.

VIII.    *Denial Of Access To Legal Materials And Denial Of Advisory Counsel*

---

[24] Other statements made during closing argument also make clear that the prosecution's theory was that the assaults were committed to facilitate a robbery: (1) "What matters is [defendant] got out, picked up that slingshot, loaded it with a marble . . . and he shot [Gonzales] with it. . . . And why? Because he wanted his money." (2) "And again the air gun, force likely [to produce great bodily injury] . . . . But the point is again that he used fear to scare [Gonzales]. It doesn't matter if it's loaded. It doesn't matter because he was using it to strike fear and get what he wanted, which was money from Mr. Gonzales." (3) "So basically [defendant] took steps to directly rob the victim but he was ineffective; he didn't complete it. . . . He shot him with the slingshot. He punched him at least twice . . . . [D]efendant held the baseball bat and told the victim to get into the car, [and that] he would get his money one way or another. Did he [*sic*] the same thing with the gun." (4) "[D]efendant went well beyond [mere robbery preparation]. . . . He punched [the victim]. He shot him with a slingshot. He said you owe me money and threatened him with the air gun and baseball bat."

A.    *Background*

At the time of the originally scheduled trial in November 2003, defendant asked to dismiss his court-appointed counsel and to represent himself. The court conducted a *Faretta*[25] hearing; after defendant was voir dired and had signed a petition to proceed in propria persona, the court granted defendant's request to represent himself and continued the trial date.

On January 8, 2004, the court vacated the trial date in order (among other reasons) to provide sufficient time to hear a motion to dismiss under section 995 brought by defendant.[26] At that time, defendant requested that an attorney be appointed to provide "some assistance." Defendant reiterated, however, that he wished to continue to represent himself. He explained that his need for attorney assistance was due to the county jail not having a law library, which resulted in some delay (10 to 14 days) in the receipt of requested legal materials. Defendant asked for an advisory attorney who could "come maybe one, two days out of the week, have 30, 40-minute conference[s] with [defendant] .... Maybe sit in during the trial . . . just to go over and review the law because" defendant had difficulty getting information in the jail.

The court denied defendant's request, concluding that there was no good cause for such an appointment. The court reasoned that (1) defendant had demonstrated (through the filing of various motions) that he was competent to represent himself, (2) the issues in the case were not complex, (3) the County's new system of providing jail inmates with legal materials upon their request was

---

[25] *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*).

[26] As an additional reason for the continuance, the court noted that, although it had previously appointed an investigator to assist in the defense, the investigator had not yet contacted defendant.

effective,[27] and (4) appointment of advisory counsel would do little more than "turn the attorney into a runner" of requested legal materials. Finally, the court noted that defendant's complaint about it being more difficult to conduct legal research in jail was a risk that he voluntarily assumed when he requested leave to act as his own attorney: "[D]efendant was advised that it would be difficult for him to investigate, research and prepare his defense in this case. And after he was advised of that, along with the other admonitions that we did during his *Faretta* hearing, he decided to represent himself."[28]

At a hearing on March 4, 2004, defendant renewed his request for appointment of advisory counsel "to help assist [him] through trial as co-counsel." Defendant repeated his concern that there was a delay of five to 10 days in obtaining requested legal research. While the court again advised defendant that he had the right to appointed counsel to represent him and urged defendant to

---

[27] The court acknowledged that inherent in the County's system was the drawback of some delay in inmates' receipt of requested legal materials. But the court stated that the current system—as compared with the prior system in which a separate law library was maintained for inmates but materials were often damaged or missing— appeared to be more effective in providing to inmates "the most recent [legal] materials [in an] unblemished format."

[28] The form petition that defendant signed when he sought to proceed in propria persona contained a number of admonitions, labeled "**DISADVANTAGES OF SELF-REPRESENTATION**" (original bold), including the following three admonitions, each of which defendant separately initialed: "1. I understand that if I am permitted to represent myself, it will be necessary for me WITHOUT THE ASSISTANCE OF COUNSEL, to follow all of the many technical rules of criminal procedure, law, and evidence. [¶] . . . [¶] 4. I understand that if I am in jail custody, my ability to investigate, research, and prepare my defense, . . . will be severely limited. I understand that if I had an attorney, the attorney would not have those limitations. [¶] 5. I understand that if I am permitted to represent myself, it will be necessary for me, WITHOUT THE ASSISTANCE OF COUNSEL, to conduct my own pretrial motions . . . ."

consider that option,[29] it rejected defendant's request for appointment of advisory counsel.

On March 29, 2004—which was the scheduled trial date (after continuances)—the court heard various pretrial matters, including defendant's renewed *Pitchess* motion.[30] The prosecution opposed the motion on the basis that it was not served on the City of Gilroy. In that context, defendant raised a concern that he was having difficulty obtaining information needed for trial while he was in custody.[31] The court denied the *Pitchess* motion.[32] Defendant did not seek a continuance or other relief concerning any claim that he was having difficulty obtaining legal materials to prepare his defense.

Also on the morning of March 29, 2004, the court entertained discussion as to whether defendant would retain private counsel and whether defendant still

---

[29] Defendant stated repeatedly during the hearing that he did not wish to have an attorney appointed to represent him in the trial.

[30] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

[31] "[Defendant]: I don't have the proper program as far as who I was suppose[d] to serve this [motion] with. The law library—we don't have a [law] library, it is basically a word processor that doesn't work part of the time—and . . . if we need information sometimes it takes six to eight weeks [*sic*], ten days to get an answer. And I am trying to get paper work on that. And had a law librarian write and then I was transferred to the main jail. So like I am having—I am not an attorney. [¶] [The Court]: I know you are not. [¶] [Defendant]: I am having a problem trying to find out all the information I need to find out with process servers and things like that."

[32] Defendant had made a previous *Pitchess* motion, which was denied without prejudice on December 11, 2003, due to the failure to serve the City of Gilroy and the failure to specify the records being sought. Defendant does not challenge on appeal the court's rulings on either motion. In any event, since the motions concerned potential discovery concerning Officer Morrow, who did little more at trial than corroborate Gonzales's testimony, it is difficult to conceive of any prejudice to defendant from the denial of his *Pitchess* motions.

32

wanted to represent himself. The court gave defendant a final opportunity to have a deputy public defender assigned as his counsel and passed the matter to the afternoon to give defendant time to consider further the representation issue. On the afternoon of March 29, 2004, defendant again declined the court's suggestion that he be represented by a deputy public defender.

Defendant asserts on appeal that he was denied due process as a result of the court's denial of his requests for appointment of advisory counsel and its purported denial of access by defendant to legal materials. He claims that the denial of advisory counsel and access to legal materials deprived him of a fair trial. We address these contentions after a review of the applicable legal principles.

    B.    *Advisory Counsel and Access to Legal Materials*

        1.    *Advisory counsel to pro se defendants*

"A criminal accused has only two constitutional rights with respect to his legal representation, and they are mutually exclusive. He may choose to be represented by professional counsel, or he may knowingly and intelligently elect to assume his own representation. [Citation.]" (*People v. Hamilton* (1989) 48 Cal.3d 1142, 1162; see also *id* at p. 1164, fn. 14.) "An accused who chooses professional representation, rather than self-representation, has no right to participate as cocounsel. [Citations.]" (*Id.* at p. 1162.) Conversely, a criminal defendant who chooses self-representation is not entitled, as a matter of right, to court-appointed advisory counsel. Thus, as a related concept, the Supreme Court has concluded that "none of the 'hybrid' forms of representation, whether labeled 'cocounsel,' 'advisory counsel,' or 'standby counsel,' is in any sense constitutionally guaranteed." (*People v. Bloom* (1989) 48 Cal.3d 1194, 1218; see also *People v. Blair* (2005) 36 Cal.4th 686, 723.)

The trial court may, in its discretion, permit a self-represented defendant to employ advisory counsel to assist in the defense. (*People v. Mattson* (1959) 51 Cal.2d 777, 797.) The defendant must make a showing of need for the appointment of advisory counsel, "and the decision to grant or deny the request rests in the sound discretion of the trial court. [Citations.]" (*People v. Crandell* (1988) 46 Cal.3d 833, 862, overruled on other grounds in *People v. Crayton* (2002) 28 Cal.4th 346, 364-365.) Appellate courts will not find an abuse of discretion in connection with a trial court's ruling concerning the appointment of advisory counsel " 'as long as there exists "a reasonable or even fairly debatable justification, under the law, for the action taken, . . . even if . . . [the reviewing court] might feel inclined to take a different view." ' " (*People v. Crandell, supra*, at p. 863.) In deciding a motion for advisory counsel, the court may consider such matters as "the defendant's demonstrated legal abilities and the reasons for seeking appointment of advisory counsel." (*Ibid.*)

Few California appellate decisions have found a trial court to have abused its discretion by denying a self-represented criminal defendant's motion for an advisory attorney. One instance in which such abuse of discretion was found occurred in a capital case where the trial court erroneously concluded that it had no discretion to appoint such counsel. (See *People v. v. Bigelow* (1984) 37 Cal.3d 731, 743.) But the Supreme Court later explained that *Bigelow* should not be construed as "establish[ing] a 'fixed rule' that advisory counsel must be appointed for every pro se defendant in a capital case." (*People v. Crandell, supra*, 46 Cal.3d at p. 863.) Indeed, some appellate districts have questioned the propriety of appointing advisory counsel to assist pro se defendants other than under extreme circumstances. (See, e.g., *People v. Garcia* (2000) 78 Cal.App.4th 1422, 1431 [defendant competent to represent himself who so elects "should do so, *by himself*; if he is not able to defend himself without the assistance

34

of advisory counsel, then he is not competent to represent himself"]; *Brookner v. Superior Court* (1998) 64 Cal.App.4th 1390, 1394: "It seems to us that a defendant either has an attorney or he is his own attorney—period. There should be no middle ground.")[33]

## 2.     *Legal materials to pro se defendants*

The right to self-representation recognized in *Faretta, supra*, 422 U.S. 806, is not a naked right. In instances in which a criminal defendant chooses self-representation, "[i]t is certainly true that a defendant . . . may not be placed in the position of presenting a defense without access to a telephone, law library, runner, investigator, advisory counsel, or any other means of developing a defense [citation], but this general proposition does not dictate the resources that must be available to defendants. Institutional and security concerns of pretrial detention facilities may be considered in determining what means will be accorded to the

---

[33] The *Brookner* court presented a particularly vehement criticism of the concept of appointing standby or advisory counsel to pro se criminal defendants, elucidating the numerous practical difficulties inherent in what it termed " 'self-representation plus.' " (*Brookner v. Superior Court, supra*, 64 Cal.App.4th at p. 1396.) For instance, the court stated that "[s]uch hybrid appointments should not be justified by the fear of the obstreperous or disruptive propria persona defendant. . . . Likewise, the fact that a self-representing defendant may change his mind does not require a 'backup' appointment. A defendant who suddenly eschews self-representation may find that he will not be relieved of his original choice. . . . [¶] Hybrid modes of representation pose particularly serious dilemmas for the appointed attorney." (*Id.* at p. 1394.) And the court concluded: "It is all too easy for a court to say that an advisory or standby counsel may be found ineffective for his role in a case, when the courts have not adequately defined what that role is. It would be simpler and far more sensible if courts adopted the approach that a defendant may have an attorney, or have the right to represent himself—but may not have both. [¶] The practice of the appointment of advisory or standby counsel should be reconsidered by the appropriate authority. If the defendant is his attorney, the defendant should be his *only* attorney. The concept of 'self-representation-plus' is logically suspect and, however well-intentioned it may be, belies the very concept of self-representation." (*Id.* at p. 1396.)

defendant to prepare his or her defense. [Citations.]" (*People v. Jenkins* (2000) 22 Cal.4th 900, 1040; see also *Lewis v. Casey* (1996) 518 U.S. 343, 351 [inmates have no "abstract, freestanding right to a law library or legal assistance, [and] an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense"].)

Thus, where a pro se defendant is "depriv[ed] . . . of 'all means of presenting a defense,' " his or her right of self-representation is violated. (*People v. Blair, supra*, 36 Cal.4th at p. 733.) But "[i]n the final analysis, the Sixth Amendment requires only that a self-represented defendant's access to the resources necessary to present a defense be reasonable under all the circumstances. [Citation.] [¶] Thus, the crucial question underlying all of defendant's constitutional claims is whether he had reasonable access to the ancillary services that were reasonably necessary for his defense." (*Id.* at pp. 733-734.)

C.    *Discussion of Claim of Error*

Applying the above legal principles, we readily conclude that the trial court did not abuse its discretion by denying defendant's motions to appoint advisory counsel. The court's rationale included its findings as to the relative lack of complexity of the case and as to defendant's demonstrated competence (through various pretrial motions) in representing himself. These were more than adequate grounds for denying the motions.[34] And—with the benefit of hindsight after a thorough review of the record, including both pretrial and trial proceedings—we concur with the trial court that defendant represented himself in a competent

---

[34] Defendant advised the court at the time that he sought leave to represent himself that he had three years of college, including some coursework in the law. The court cited this disclosure in its denial of defendant's request to appoint advisory counsel.

fashion. Thus, we find that the trial court did not abuse its discretion in its denial of defendant's motions, since there was " ' "a reasonable or even fairly debatable justification, under the law, for the action taken" ' " by the trial court. (*People v. Crandell, supra*, 46 Cal.3d at p. 863.)

We likewise reject defendant's contention that he was denied due process because of a purported deprivation of access to legal materials. First of all, defendant did not adequately preserve the claim. There is nothing in the record before us that defendant (1) demonstrated to the trial court that he was denied access to any particular legal materials (as contrasted with such access being delayed); (2) sought any particular relief from the trial court (other than appointment of advisory counsel) concerning any claimed lack of access to legal materials; or (3) showed that he was in any significant respect prejudiced by the claimed delay in receipt of legal materials. Defendant sought no particular relief concerning claimed problems in obtaining legal materials. And there was no court order denying or limiting defendant's access to such materials. Defendant therefore forfeited any challenge to any alleged deficiencies in access to legal materials by failing to address the matter to the trial court for resolution in the first instance. (See *People v. Welch* (1993) 5 Cal.4th 228, 236 [traditional principles of forfeiture of appellate challenges due to lack of objection at trial level "encourage development of the record and a proper exercise of discretion in the trial court"].)

But even were we to conclude that defendant preserved his appellate challenge concerning access to legal materials, we would find no error. As noted, the fact that a pro se defendant must not be deprived of "all means of presenting a defense" (*People v. Jenkins, supra*, 22 Cal.4th at p. 1040) does not connote that particular vehicles for marshalling such a defense—such as providing advisory counsel or unlimited access to legal materials—are constitutionally mandated. (*Ibid.*) The critical inquiry "is whether he had reasonable access to the ancillary

37

services that were reasonably necessary for his defense." (*People v. Blair, supra*, 36 Cal.4th at p. 734.) Under that standard, defendant's constitutional claim—founded on nothing more than unspecified prejudice in the delay of delivery of certain (unspecified) legal materials by as much as 14 days—must fail.

Defendant relies on *Milton v. Morris* (9th Cir. 1985) 767 F.2d 1443 (*Milton*) in support of his claim that his due process rights were violated by an alleged denial of access to legal materials. *Milton* is easily distinguishable. There, the pro se defendant had no counsel, was without access to an investigator, legal assistant or law library, and did not even have effective use of a telephone. Under those circumstances, the court concluded that the defendant's right of self-representation was abridged due to essentially a complete denial of the means to defend himself (*id.* at pp. 1445-1446), concluding that "the defendant lacked all means of preparing and presenting a defense, and was unjustifiably prevented from contacting a lawyer or others who could have assisted him." (*Id.* at p. 1446.) Here, defendant had access to an investigator and was able to obtain legal materials, albeit not directly through access to an in-facility library. The case before us does not even approach the circumstances in *Milton* where the defendant had *no access whatsoever* to sources necessary to mount a defense.[35]

---

[35] Similarly, *Bribiesca v. Galaza* (9th Cir. 2000) 215 F.3d 1015—another case relied on by defendant—does not support defendant's claim that he was denied due process because of any alleged delay in receiving legal materials. There, the Ninth Circuit affirmed the federal district court's grant of habeas relief to a state inmate who was unconstitutionally deprived of the right to self-representation in defending a murder charge. The case held in dictum that an incarcerated pro se defendant "has a constitutional right to access to 'law books . . . or other tools' to assist him in preparing a defense." (*Id.* at p. 1020.) But recently, the United States Supreme Court—although declining to decide whether a pro se defendant is guaranteed under the Sixth Amendment a right of access to a law library—concluded that "the *Bribiesca* court . . . erred in holding, based on

(continued)

Therefore, we conclude that defendant's claims of error concerning alleged delay in receipt of legal materials and the denial of appointment of advisory counsel—whether these claims are considered separately or together—are without merit.

## DISPOSITION

The judgment is ordered modified to reflect (1) that the two one-year enhancements imposed under section 667.5, subdivision (b), are stricken, resulting in an aggregate prison term, as modified, of 17 years, and (2) that the two 30-day sentences as to the two misdemeanor assault convictions (violations of § 240) are ordered stayed pursuant to section 654 as long as the judgment of conviction on count 1 remains in full force and effect. As so modified, the judgment is affirmed.[36]

---

*Faretta*, that a violation of a law library access right is a basis for federal habeas relief." (*Kane v. Garcia Espitia* (2005) ___ U.S. ___, 126 S.Ct. 407, 408.)

[36] In his separate petition for habeas corpus, defendant contends that there was error due to the adding of the attempted robbery charge in the information filed after the preliminary examination. We have considered the matters included in the appellate record in the context of the petition, and, as noted, have ruled separately on the petition by order filed this date.

_____
                                    Duffy, J.


WE CONCUR:


_____
     Mihara, Acting P.J.


_____
     McAdams, J.


People v. Capela
H028273

40

S151537

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

---

In re BARTH D. CAPELA on Habeas Corpus

---

The petition for writ of habeas corpus is denied.

SUPREME COURT
**FILED**

AUG **1 5** 2007

Frederick K. Ohlrich Clerk

_____
Deputy

**GEORGE**
_____
Chief Justice

E X H I B I T   "A"


A copy of the investigator's report Denis Montijo
dated Oct.7,2004 of the Jurist she was able to contact.
In this report the Jurist were asked if they indeed
received any paper work or documents during trial!



Denis Montijo's phone number is at the top of page 4
of the report.

Date:    October 7, 2004

Subject: Juror statements regarding element packet (revised)

(A.) Left Card at Door

1.  (B.)Does not remember getting this packet in closing or otherwise.

2.  Cannot be 100% positive.

3.  Don't remember DA giving them this packet.

4.  He received instruction from Shapiro regarding these elements.

5.  Did receive similar information during deliberations when they requested clarification regarding particular elements. However, it was in a smaller font- text book type format.

6.  Never received similar documents directly from the DA.

7.  Received paperwork on his seat when returning from breaks during trial.

    Judge would advise as to nature of paperwork received.

8.  (C.) No written instruction given during closing.

    Similar information on overhead presentation.

    During trial he received paperwork on seat during trial when return from breaks.

    Judge Shapiro would advise jurors of the nature of the documents provided.

1

We asked for clarification of elements and received written instruction during deliberations.

Never received documents directly from DA.

Did see similar information at that time during deliberations.

I had to email him the instruction because he was not home when I arrived at house. He is going to review and send back.

He is positive he did not receive anything regarding the elements of the crimes during closing.

He thinks the only time he heard that was when Shapiro advised them about elements.


D.  Angry to be contacted.

Refused to give statement.

Said he would only respond through Judge Shapiro.

Uncomfortable with contact by private Investigator.


E.  She is out of town having a baby.

Husband will give card.


F.  We only received instruction similar to this during deliberation.

We received some information during the trial on seats after break.

Judge Shapiro advised jurors of elements during closing.

During closing did not receive any paperwork.

Don't recall but can't be positive he did not get this instruction.

Thinks he saw a formal written instruction after needing clarification of the elements of crimes during deliberations.

They were very confused regarding elements.

G.  Can't Find.

H.  Can't find.

**I.**  She did not receive any documents during closing.

They heard tapes. Saw overhead presentation given by D.A.

Never received paperwork at any time during trial.


**J.**  He was an alternate and did not attend closing arguments.

He remembers seeing elements during closing on an overhead presentation by D.A.

Never received paperwork at any time during trial.


**K.**  Same as E. Out of town having baby.

**L.**  Moved to Oregon. No forward address. Could not locate by database.


**M.**  Received written instruction on seat during trial.

Discussed these elements in deliberation.

Judge Shapiro gave instruction verbally regarding elements.

Asked for instruction during deliberations and received something similar–more textbook like.

Not given anything by DA directly.

Cannot be 100% positive.

I.  She did not receive any documents during closing.

They heard tapes. Saw overhead presentation given by D.A.

Never received paperwork at any time during trial.


J.  He was an alternate and did not attend closing arguments.

He remembers seeing elements during closing on an overhead presentation by D.A.

Never received paperwork at any time during trial.


K)  Same as E. Out of town having baby.

L.  Moved to Oregon. No forward address. Could not locate by database.


M.  Received written instruction on seat during trial.

Discussed these elements in deliberation.

Judge Shapiro gave instruction verbally regarding elements.

Asked for instruction during deliberations and received something similar-more textbook like.

Not given anything by DA directly.

Cannot be 100% positive.

*13 Jurers, including 1 alternate*
*2 Cant find*
*1 out of town*
*1 moved*
*Contested 20*

E X H I B I T   B

    A copy of the 5 page Document given to the Defence
and put on the Jurist seats for them to obtain when
they returned from a 15 minute break;during trial.
But after trial while being interviewed by the private
investigator none of them recognized this document.

---

## COUNTS 1 : ATTEMPTED ROBBERY
### Violation of Penal Code §211 (Caljic 6.00 & 9.40)

# *The Defendant:*

# __Robbery__

1. Victim had property, however slight in value

2. Took the Property from the Victim's immediate presence

3. Took the Property Against the Victim's Will

4. Took the Property by Force or Fear

5. Took the Property with the Specific intent to permanently Deprive the Victim of it.

➡ Second Degree Robbery As Matter of Law


➡ <u>CLAIM OF RIGHT IS NOT A DEFENSE, CALJIC 9.44</u>

> 1. Can Reclaim Specific Property, <u>BUT</u> Cannot Attempt to "Satisfy, Settle or Otherwise collect on a debt…."

# **Attempted Robbery**

## *The Defendant*

### 1. Specifically Intended to Take Money by Force From the Victim Rafael Gonzalez

- *Believed that Victim Gonzalez was "Harvey" and owed D Money*
- *D yelled at him as Harvey and said V owed him money*

### 2. Directly and Ineffectually Acted (with Force and Fear) to commit the Robbery

- *D shot V with slingshot, punched him at least twice*
- *D held baseball bat and told V to get into the car "Would get his money one way or the other."*

### 3. Did Much More Than Mere Preparation

- *The Defendant punched and shot V with Slingshot and threatened him with a bat and airgun*
- *Abandonment Caljic 6.01 No Defense (Flight)*

## **Is Guilty**

# **Attempted Robbery**

## *The Defendant*

### 1. Specifically Intended to Take Money by Force From the Victim Rafael Gonzalez

- *Believed that Victim Gonzalez was "Harvey" and owed D Money*
- *D yelled at him as Harvey and said V owed him money*

### 2. Directly and Ineffectually Acted (with Force and Fear) to commit the Robbery

- *D shot V with slingshot, punched him at least twice*
- *D held baseball bat and told V to get into the car "Would get his money one way or the other."*

### 3. Did Much More Than Mere Preparation

- *The Defendant punched and shot V with Slingshot and threatened him with a bat and airgun*
- *Abandonment Caljic 6.01 No Defense (Flight)*

## **Is Guilty**

# Attempted Robbery

## *The Defendant*

### 1. Specifically Intended to Take Money by Force From the Victim Rafael Gonzalez

- *Believed that Victim Gonzalez was "Harvey" and owed D Money*
- *D yelled at him as Harvey and said V owed him money*

### 2. Directly and Ineffectually Acted (with Force and Fear) to commit the Robbery

- *D shot V with slingshot, punched him at least twice*
- *D held baseball bat and told V to get into the car "Would get his money one way or the other."*

### 3. Did Much More Than Mere Preparation

- *The Defendant punched and shot V with Slingshot and threatened him with a bat and airgun*
- *Abandonment Caljic 6.01 No Defense (Flight)*

## Is Guilty

---

## Counts 2-4: ASSAULT WITH A DEADLY WEAPON/FORCE LIKELY TO PRODUCE GBI
### Violation of Penal Code §245(a)(1)

---

# *The Defendant:*

## 1. Assaulted Rafael Gonzalez

- *Count 2: Wrist Rocket, Shot Victim with Marble*
- *Count 3: Baseball Bat (Conditional Threat), threatened him, doesn't need to swing it.*
- *Count 4: Airgun, threaten him (he doesn't have to see it), doesn't need to shoot it or make it work*

### ➡ SIMPLE ASSAULT (Caljic 9.00):

1. D Willfully Committed an Act which Would result in the Application of Physical Force on Victim Gonzalez (Actual Contact Not Required)
2. D aware of Facts, Which to a "Reasonable Person" would show Probable and Direct Application of Force
3. D had the "Present Ability" to Commit the Assault (i.e., he Possessed the Weapons, Caljic 9.01)

ASSAULT Does <u>NOT</u> Require Intent to Cause Injury

## ➡ **CONDITIONAL THREAT** is An Assault
(Caljic 9.00.1)

1. Threat Commands Immediate Performance of Some Act
   - "Get in the Car"
2. Threat with the Intention of Compelling Performance Through Application of Force
   - Baseball Bat
3. D Physically in Position to Inflict Physical Force
   - Standing by V at Car after previously Punching him and Assault with Slingshot
4. D went as far as necessary to carry out intention
   - Actually went to the car and got the Baseball bat

## 2. The Defendant Committed the Assault with a Deadly Weapon

- *Count 2: Wrist Rocket*
- *Count 3: Baseball Bat*
- *Count 4: Airgun*
- *Each one was a separate Assault, D took the time to pick up a new weapon at each stage*

**-OR-**

## 2. The Defendant Used Force Likely to Produce Great Bodily Injury

- *Any of the Weapons used could have caused serious injury tot he Victim*
- <u>*No Injury is Required*</u> *at all, it is the Threat of Injury that Matters*


# Is Guilty

E X H I B I T   D


A copy of the issues raised on direct Appeal

# TABLE OF CONTENTS

I.  APPELLANT WAS DENIED DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE FEDERAL CONSTITUTION INSOFAR AS HE WAS DENIED ACCESS TO A LAW LIBRARY AND ADVISORY COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  THE ATTEMPTED ROBBERY CONVICTION MUST BE REVERSED UNDER THE DUE PROCESS CLAUSE OF THE FEDERAL CONSTITUTION SINCE APPELLANT WAS UNDULY PREJUDICED WHEN THE COURT ALLOWED THE JURY TO HEAR THE IRRELEVANT EVIDENCE THAT HE HAD A KNIFE IN HIS POSSESSION.
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

III.  APPELLANT WAS DENIED DUE PROCESS UNDER THE FEDERAL CONSTITUTION WHEN THE TRIAL COURT EXCLUDED RELEVANT EVIDENCE THAT APPELLANT LACKED THE MOTIVE TO STEAL. . . . . . . . . . . . . . . . . . . . 15

IV.  THE ATTEMPTED ROBBERY CONVICTION MUST BE REVERSED SINCE THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO GIVE CALJIC NO. 2.02 *SUA SPONTE.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

V.  THE CONVICTION FOR ATTEMPTED ROBBERY MUST BE REVERSED DUE TO THE CUMULATIVE PREJUDICE FLOWING FROM THE SEVERAL ERRORS. . . . . . . . . . . . . . 26

VI.  THE PRISON PRIORS IMPOSED PURSUANT TO PENAL CODE SECTION 667.5, SUBDIVISION (b) MUST BE STRICKEN SINCE APPELLANT WAS OTHERWISE PUNISHED FOR THE PRIOR CONVICTIONS PURSUANT TO PENAL CODE SECTION 667, SUBDIVISION (a). . . . . . . . 27

VII.  SINCE THE PEOPLE IMPROPERLY FRAGMENTED APPELLANT'S CONDUCT INTO SEPARATE ASSAULTS, ONE OF THE TWO ASSAULT CONVICTIONS MUST BE REVERSED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Reversed* →



**RECEIVED**

Court of Appeal, Sixth Appellate District - No. H028273
**S143236**

JUL 2 1 2006

**S•D•A•P**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

THE PEOPLE, Plaintiff and Respondent,

v.

BARTH DENNIS CAPELA, Defendant and Appellant.

Petition for review DENIED.

SUPREME COURT
# FILED

JUL **1 9** 2006

**Frederick K. Ohlrich Clerk**

DEPUTY

_____
**GEORGE**
_____
Chief Justice

Name Barth D. Capela

Address C.S.P. Solano PO box 4000

Vacaville,Ca.95696-4000

CDC or ID Number V 58262

MC-275

## IN THE STATE OF CALIFORNIA

## THE SUPREME COURT
(Court)

BARTH D. CAPELA
Petitioner

vs.

THE CALIFORNIA SUPREME COURT
Respondent

PETITION FOR WRIT OF HABEAS CORPUS

No. _____

(To be supplied by the Clerk of the Court)

## INSTRUCTIONS—READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under rule 8.380 of the California Rules of Court [as amended effective January 1, 2007]. Subsequent amendments to rule 8.380 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Form Approved for Optional Use
Judicial Council of California
MC-275 [Rev. January 1, 2007]

**PETITION FOR WRIT OF HABEAS CORPUS**

Page 1 of 6
Penal Code, § 1473 et seq.;
Cal. Rules of Court, rule 8.380
www.courtinfo.ca.gov
American LegalNet, Inc.
www.FormsWorkflow.com

MC–275

**This petition concerns:**

[X] A conviction          [ ] Parole

[ ] A sentence           [ ] Credits

[ ] Jail or prison conditions    [ ] Prison discipline

[ ] Other *(specify):* _____

1. Your name: Barth D. Capela

2. Where are you incarcerated? C.S.P. Solano PO box 4000 Vacaville,Ca.95696-4000

3. Why are you in custody?  [XX] Criminal Conviction   [ ] Civil Commitment

   *Answer subdivisions a. through i. to the best of your ability.*

   a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

   Attempt robbery with 3 PC667 (a) priors

   b. Penal or other code sections:  PC 212  PC 667(a)

   c. Name and location of sentencing or committing court: Santa Clara (South County) Superior

   12425Monteray road San Martin Ca. 95020

   d. Case number: FF302986

   e. Date convicted or committed: April 7,2004

   f. Date sentenced: November 10,2004

   g. Length of sentence: 19 years reduced to 17 years on direct Appeal

   h. When do you expect to be released? Right now my E.P.R.D. is 2012

   i. Were you represented by counsel in the trial court? [ ] Yes. [X] No. If yes, state the attorney's name and address:

   _____

4. What was the LAST plea you entered? *(check one)*

   [xx] Not guilty  [ ] Guilty  [ ] Nolo Contendere  [ ] Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

   [X] Jury  [ ] Judge without a jury  [ ] Submitted on transcript  [ ] Awaiting trial

6. GROUNDS FOR RELIEF                                                              **MC-275**

**Ground 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

    The Jury was contaminated during trial when the Prosecutor improperly put
Documents on the Jurist seats for them to obtain upon returning from a 15 minute
break.Those papers or Documents were not **Scutinized** by the Court or the Defense.
This is a violation of Due Process and Rules of Court.Also IAC claim encluded.
This is a **PLAIN ERROR** and is required to be investigated,the jury must be pulled.

a. Supporting facts:
Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

    Because it is impossible to asses the prejudicial damage when this type of
Prosecutorial misconduct occures,Petitioner request this Court for a full evidential
hearing.For example, those papers put on the Jurist seats could have very well
contained a print out of Petitioner's previous prior for attempt Robbery which
had already been ruled by the Court to be excluded unless petitioner took the
stand.During trial of April 5,2003 the Jury was out on a break when the Prosecutor
Mr.Arriola approached the defensewith afive page document an out line ofhis final
argument befor his closing argument.Stating,this is just incase you (Defense) or the
Jury does not have a clear view of the bilboard he would be using during that argument.
Then he put a copy of that 5 page document on each of the Jurist seats befor they
returned from break.Since the Judge allowed the Prosecutor to do this I assumed it
was proper.After the conviction my family employed Attorney Maureen Baldwin to file
a retrial motion and post conviction issues.Upon learning of this event with the

b. Supporting cases, rules, or other authority (optional):                    (continue on separate page)
*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

    Ms.Baldwin failled to request a mistrial due to this event and my Appellate
Attorney Mr.Sacher failled to file an IAC claim aginst Ms. Baldwin.So both Lawyers
were ineffective on this issue! Enclosed please find a copy of a private investigator
report conducted with 9 Jury members a month after trial.Federal rules of evidence

**documents** being put on the Jurist seats,Ms Baldwin confronted the Court.She ask Judge Shapero if the 5 page document I provided was put on the Jurist seats.The Judge returned an answer stating that didn't happen in his Courtroom.I was shocked did he forget,and Ms Baldwin was then questing me if in fact this did happen.The event with the documents did happen,please see trial transcript page 68 of the April 5,2003 (RT)I then told Ms.Baldwin if you don't believe me just ask the jury. There after a licensed Investigater ms.Montijo was assigned by Ms. Baldwin to interview as meny Jurist as possible on this matter of whether they did receive papers or documents on thier seats during trial.Ms. Montijo started her interview on October 4,2004 and submitted her report on October 7,2004. Out of nine Jurist ms.Montijo was able to contact five of them remember receiving papers or documents on thier seats during trial.But none of them remember seeing the documents we provided,the ones given to me by the Prosecutor!Of which the Prosecutor claimed he was putting on the Jurist seats.**Therefor neither I nor the Court had a chance to SCRUTINIZE those Documents put on the Jurist seats during trial.**This type of conduct violates rules of Court,rules of evidence,discloser rules.**It is Jury tampering,**and it is impossible to estimate the prejudicial damage,due to the fact no one but the Prosecutor knows what was put on the Jurist seats.Ms.Baldwin was shaken by the Judge's responseand there after drop the ball on this issue. Like wise Mr. Sacher my Appellate Attorney when presented with all the evidence I provided encluding the Investigative report on this issue he simply stated, since Judge Shapero said it did not happen in his Courtroom then the issue is dead! Therefor an IAC claim must be part of this issue and preserved for further litigation.

Enclosed as Exhibit (A) is a copy of the private investigator's report,of the interview with the Jurist dated October 7,2004. A copy of what the Prosecutor said he was giving to the Jurist by putting it on thier seats is encluded marked as exhibit(B)

Federal rules of evidence rule 606(b) any unaproved contact with a Jury during a criminal trial is Jury tampering and is presumptively prejudicial. **Remmer    V    United States**

MC–275

7. **Ground 2 or Ground** ____ *(if applicable):*

The charge of attempt robbery PC212 was improperly filed after a hearsay preliminary examination.(known as a prop 115 hearing) There was no new evidence on which to base a newly filed charge.The record will reflect why petitioner may now challenge this issue,when normally this issue would be a pretial challenge.Petitioner was denied counsel.

a. **Supporting facts:**

Normally Petitioner would be barred from raising this issue after having a full trial except for the following reasons; Petitioner was Pro-Se befor and during trial in Santa Clara county where he had no access to legal books and there after was denied Advisory counsel.He had to rely on the (LRA) a legal service that required Petitioner to fill out a request form as to what he would like to research.The service would not provide any books nor would they send complete chapters from any books.They would not even send an index from any books.If you didn't already know a case by name or number would not receive anything.Put mildly the(LRA) was not an effective method for performing research.In addition it would take anywhere from 10 to 14 days for the (LRA) to respond. On at least two occasions befor trial Petitioner requested information on whether it was legal for the prosecutor to add new charges after the Preliminary when the victim was not present.It wasn't until after trial and after the third request did the (LRA) send the right material.On that material it stated the prosecutor could not file completely different charges after a prop 115 preliminary hearing.There must be new and additional evidence presented at the preliminary on which to base new charges.When the victim is not present at the preliminary the only thing that occures is a rereading of the Police report. In addition to that information sent by the (LRA) after trial was the

b. **Supporting cases, rules, or other authority:**

Due Process,The Fifth and Fourteenth Amendments of the U.S. Constitution. The California Constitution Article 1 section 14 how it applies to preliminary examinations.A Prosecutor can not avoid the preliminary process with a felony charge. Rule 12 of the Federal rules of criminal procedure,how it relates to late demurs. 1st.cir.1991 allowed a late challenge after trial because material was not available befor trial.

normal procedure of a full trial being the waiver for challenging that issue.
But since Petitioner has shown,he diligently tried to obtain the information
he needed to challenge the improperly filed charge befor trial comenced,he
should not now be held to the pretrial requirement to challenge this issue
on such a record.In U.S._v_ Lamela 942.2d 100,104 allows a late challenge after
trial because material was not available befor trial.The evidence in support
of attempt robbery was a statement petitioner supposidly said to the victim,
"Get in my car because I'm gonna get my money out of you one way or the other."
Even though the victim denied making that statement during cross examination
to the detective Morrow,non the less that statement appeared on the police
report word for word.Which means the Prosecutor had his opportunity befor the
preliminary examination began to file the charge of attempt robbery but failled
to do so.The California Constitution article 1 section 14 states in part,all
felony charges brought by way of information must go through a preliminary
examination,or the containment is illegal.

### A SIXTH AMENDMENT RIGHT TO HAVE ASSISTANCE OF COUNSEL
### ESSENTIALLY WAS DENIED

**Normally** in most cases a pro-se Defendant would be barred from claiming
ineffective assistance after trial.But when he or she is denied access to a
Law library,phone,and advisory counsel basically it amounts to no assistance
of counsel.It was coined best by Justice Sutherland in Powell_V_ Alabama,
287U.S. 45,53 S.Ct. 55,77L.ED 158(1932)"The right to be heard would be,in many
cases,of little avail if it did not comprehend the right to be heard by Counsel.
Even the intelligent and educated layman has small and sometimes no skill in
the science of Law.If charged with crime,he is incapable,generally,of determining
for himself whether the indictment is good or bad.He is unfamiliar with the
rules of evidence.Left without the aid of counsel he may be put on trial without
a proper charge,and convicted upon incompetent evidence,or evidence irrelevant
to the issue or otherwise inadmissible.He lacks both the skill and knowlege
adequately to prepare his defense,even though he have a perfect one.He requires
the guiding hand of counsel at every step in the proceedings aginst him.
Without it,though he be not guilty,he faces the danger of conviction because
he does not know how to establish his innocence.If that be true of men of

**intelligence,**how much more true is it of the ignorant and illiterate,or those
of feeble intellect.If in any case,civil or criminal,a State or Federal Court
were arbitrarily to refuse to hear a party by counsel,employed by and appearing
for him,it reasonably may not be doubted that such a refusal would be a denial
of a hearing,and,therefor,of Due process in the Constitutional sense."

During trial defendant repeatedly voiced his concerns with reseach.At one
point he made this clear when he said,if you don't **have any books on which to**
start your research a lot of the time you don't know what to ask for.He stated
that he was having problems with the law,and requested the assistance of counsel
at least during trial.Defendant explained,the (LRA) takes any where from 10 to
14 days to respond and in this case trial only lasted 5 days.Defendant explained
what if I need to look up something during trial.Plus he explained,he would
need help with objections and cross examination.His pleas went unheard,the Court
Denied his request for assistance of advisory counsel.It has long been recognized
that the right to Counsel is the right to the effective assistance of counsel.
Since the (LRA) did not provide the material defendant needed to challenge the
improperly filed charge of attempt robbery befor trial and if the appointment
of advisory counsel would not have been denied,it is almost assured,counsel
would have informed defendant to challenge that charge.

As Judge Wyzanski has written:"While a criminal trial is not a game in which
the participants are expected to enter the ring with a near match in skills,
neither is it a sacrifice of unarmed prisoners to gladiators" At the preliminary
examination petitioner was represented by Kipp Davis from the Public Defenders
office.When the new charges were filed a month later Mr. Davis was present,but
did not challenge the improperly filed charges.Nor did he inform petitioner,charges
must be based on new evidence arrising from the Preliminary examination.The hear-
say examination did not produce any new evidence only that what was in the police
report.Judge Cunningham conducted the prelim and was the Judge presiding when the
new felony charges were filed.A Judge should protect a defendant's rights even
when he is not aware of them.The proceedings leading up to the trial,nor was the
trial fair.Petitioner was kept in the dark of the improperly filed charges by the
Judge,Mr.Davis and by the (LRA)legal service.For those reasons Petitioner request
he be allowed by this court to challenge the **improperly filed charge of attempt
robbery now.**

MC-275

8. Did you appeal from the conviction, sentence, or commitment?  [X] Yes.  [ ] No.  If yes, give the following information:

a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):
Sixth Appellate District Court

b. Result  Affirmed except for two priors          c. Date of decision: April 5, 2006

d. Case number or citation of opinion, if known:  case no. FF302986      cit. no. H028273

e. Issues raised: (1)    To numerous for this section, will enclude on separate page

(2)          Marked as exhibit (D)

(3)

f. Were you represented by counsel on appeal?  [X] Yes.  [ ] No. If yes, state the attorney's name and address, if known:

The Sixth Appellate Program, Dallas Shacher 100 N. winchester Blvd. suite 310

9. Did you seek review in the California Supreme Court?  [X] Yes  [ ] No.  If yes, give the following information:

a. Result    Denied review                  b. Date of decision: July 21, 2006

c. Case number or citation of opinion, if known:    S143236

d. Issues raised: (1)    The same as in the Sixth Appellate Court and listed on separate

(2)       page.

(3)

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

My Appellate Attorney was appointed and refused to raise any issues of misconduct

agianst another county Attorney.

11. Administrative Review:

a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

b. Did you seek the highest level of administrative review available?  [ ] Yes.  [ ] No.
*Attach documents that show you have exhausted your administrative remedies.*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, **MC–275**
commitment, or **issue** in any court? ☐ Yes. If yes, continue with number 13. ☒ No. If no, skip to number 15.

13. a.   (1) Name of court: _____

    (2) Nature of proceeding (for example, "habeas corpus petition"): _____

    (3) Issues raised: (a) _____

        (b) _____

    (4) Result (Attach order or explain why unavailable): _____

    (5) Date of decision: _____

  b.   (1) Name of court: _____

    (2) Nature of proceeding: _____

    (3) Issues raised: (a) _____

        (b) _____

    (4) Result (Attach order or explain why unavailable): _____

    (5) Date of decision: _____

  c.   For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

_____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)

Since my Appwellate Attorney would not raise this issue I am now bringing it on this Habeas Petition,all lower Courts have been exhausted on this issue.

16. Are you presently represented by counsel? ☐ Yes.  ☒ No. If yes, state the attorney's name and address, if known:

_____

17. Do you have any petition, appeal, or other matter pending in any court? ☒ Yes. ☐ No. If yes, explain:

I have a petition soon to be in this Court in regards to prison custody level unrelated to my conviction issues.

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

All lower Courts have been exhausted.

_____

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: *May 6, 2007*                    ▶ *Barth Capela*
                                                        (SIGNATURE OF PETITIONER)