1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  GERALD A. ENGLER
   Senior Assistant Attorney General
4  GREGORY A. OTT
   Deputy Attorney General
5  PAMELA K. CRITCHFIELD
   Deputy Attorney General
6  State Bar No. 168024
     455 Golden Gate Avenue, Suite 11000
7    San Francisco, CA 94102-3664
     Telephone: (415) 703-5952
8    Fax: (415) 703-1234
     Email: pamela.critchfield@doj.ca.gov
9  Attorneys for Respondent

10              IN THE UNITED STATES DISTRICT COURT

11          FOR THE NORTHERN DISTRICT OF CALIFORNIA

12                     OAKLAND DIVISION

13

14  | BARTH DENNIS CAPELA, | C 07-04734 SBA (PR) |
    |---|---|
15  | Petitioner, | |
    | v. | |
16  | BOB HOREL, Warden, | |
17  | | |
18  | Respondent. | |

19

20      **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER**

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2
                                                                                    **Page**

3    STATEMENT OF THE CASE                                                              1

4    STATEMENT OF FACTS                                                                 2

5    ARGUMENT                                                                           4

6        I.    THE STATE COURT'S DETERMINATION THAT THE KNIFE
               EVIDENCE WAS PROPERLY ADMITTED WAS NOT
7              OBJECTIVELY UNREASONABLE                                                 4

8              A.    Standard Of Review                                                 4

9              B.    The State Court's Rejection Of This Claim Was Not Objectively
                     Unreasonable                                                       5
10

        II.   THE STATE COURT'S DECISION THAT THE EVIDENCE OF
11            PETITIONER'S LACK OF MOTIVE TO STEAL WAS
              PROPERLY EXCLUDED IS REASONABLE                                           8
12

        III.  THE STATE COURT REASONABLY REJECTED THE CLAIM
13            THAT INSTRUCTIONAL ERROR OCCURRED WHEN CALJIC
              NO. 2.01 WAS GIVEN AND NO. 2.02 WAS NOT                                   12
14

        IV.   THERE WAS NO CUMULATIVE PREJUDICIAL ERROR                                16
15
        V.    THE PROSECUTORIAL MISCONDUCT CLAIM IS
16            FACTUALLY MERITLESS                                                       16

17      VI.   PETITIONER'S ARGUMENTS THAT HIS DUE PROCESS
              RIGHTS WERE VIOLATED BY DENIAL OF ACCESS TO
18            LEGAL MATERIALS AND APPOINTMENT OF ADVISORY
              COUNSEL DO NOT STATE A FEDERAL CLAIM                                      17
19

     CONCLUSION                                                                        23
20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**Page**

3

**Cases**

4

5
*Boyde v. California*
494 U.S. 370 (1990)     15

6
*Brecht v. Abrahamson*
507 U.S. 619 (1993)     15

7

8
*Calderon v. Coleman*
525 U.S. 141 (1998) (per curiam)     15

9
*Cambra v. Chia*
360 F.3d 997 (9th Cir. 2004)     11

10
*Carey v. Musladin*
127 S. Ct. 649 (2006)     4

11

12
*Chambers v. Mississippi*
410 U.S. 284 (1973)     11, 16

13
*Clark v. Murphy*
331 F.3d 1062 (9th Cir. 2003)     4

14

15
*Coleman v. Thompson*
501 U.S. 722 (1991)     22

16
*DePetris v. Kuykendall*
239 F.3d 1057 (9th Cir. 2001)     11

17

18
*Donnelly v. DeChristoforo*
416 U.S. 637 (1974)     15, 16

19
*Engle v. Isaac*
456 U.S. 107 (1982)     6

20

21
*Estelle v. McGuire*
502 U.S. 62 (1991)     6, 15, 16

22
*Henderson v. Kibbe*
431 U.S. 145 (1977)     15

23

24
*James v. Borg*
24 F.3d 20 (9th Cir. 1994)     17

25
*Jammal v. Van de Kamp*
926 F.2d 918 (9th Cir. 1991)     7, 8

26

27
*Jeffries v. Blodgett*
5 F.3d 1180 (9th Cir. 1993)     15

28

## TABLE OF AUTHORITIES  (continued)

|  | Page |
|---|---|
| *Kane v. Garcia Espitia*<br>546 U.S. 9, 126 S.Ct. 407 (2005) | 22 |
| *King v. White*<br>839 F. Supp. 718 (C.D. Cal. 1993) | 21 |
| *Kyles v. Whitley*<br>514 U.S. 419 (1995) | 7 |
| *Locks v. Sumner*<br>703 F.2d 403 (9th Cir. 1083) | 21 |
| *McMillan v. Gomez*<br>19 F.3d 465 (9th Cir. 1994) | 16 |
| *Medina v. Hornung*<br>372 F.3d 1120 (9th Cir. 2004) | 4 |
| *Montana v. Egelhoff*<br>518 U.S. 37 (1996) | 11 |
| *Parle v. Runnels*<br>505 F.3d 922 (9th Cir. 2007) | 16 |
| *Patterson v. New York*<br>432 U.S. 197 (1977) | 11 |
| *Paulino v. Castro*<br>371 F.3d 1083 (9th Cir  2004) | 22 |
| *Perez v. Marshall*<br>946 F. Supp. 1521 (S.D. Cal. 1996) | 21 |
| *Perry v. Rushen*<br>713 F.2d 1447 (9th Cir. 1983) | 11 |
| *United States v. Kienenberger*<br>13 F.3d 1354 (9th Cir. 1994) | 21 |
| *Wainwright v. Sykes*<br>433 U.S. 72 (1977) | 22 |
| *Weeks v. Angelone*<br>528 U.S. 225 (2000) | 15 |
| *Williams v. Taylor*<br>529 U.S. 362 (2000) | 4 |
| *Windham v. Merkle*<br>163 F.3d 1092 (9th Cir. 1998) | 7 |

**TABLE OF AUTHORITIES**  (continued)

|  |  | Page |
|---|---|---|
| *Woodford v. Visciotti*<br>537 U.S. 19 (2002) (per curiam) | | 4, 8 |

**Constitutional Provisions**

| | | |
|---|---|---|
| United States Constitution<br>        Sixth Amendment | | 11 |

**Statutes**

| | | |
|---|---|---|
| United States Code, Title 28<br>        § 2254(a)<br>        § 2254(d)(1) | | 6<br>4 |
| Antiterrorism and Effective Death Penalty Act of 1996 | | 4 |

**Other Authorities**

| | | |
|---|---|---|
| California Jury Instructions, Criminal<br>        No. 2.01<br>        No. 2.02 | | 12, 13, 15, 16<br>12, 13, 16 |

1 | EDMUND G. BROWN JR.
Attorney General of the State of California
2 | DANE R. GILLETTE
Chief Assistant Attorney General
3 | GERALD A. ENGLER
Senior Assistant Attorney General
4 | GREGORY A. OTT
Deputy Attorney General
5 | PAMELA K. CRITCHFIELD
Deputy Attorney General
6 | State Bar No. 168024
   455 Golden Gate Avenue, Suite 11000
7 |   San Francisco, CA 94102-3664
   Telephone: (415) 703-5952
8 | Fax: (415) 703-1234
   Email: pamela.critchfield@doj.ca.gov
9 | Attorneys for Respondent

10 |                 IN THE UNITED STATES DISTRICT COURT

11 |              FOR THE NORTHERN DISTRICT OF CALIFORNIA

12 |                         OAKLAND DIVISION

13 |

| BARTH DENNIS CAPELA, | C 07-04734 SBA (PR) |
| --- | --- |
| Petitioner, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER** |
| v. | |
| BOB HOREL, Warden, | |
| Respondent. | |

19 |                        **STATEMENT OF THE CASE**

20 |        In 2004, petitioner was convicted by a jury in Santa Clara County Superior Court of one

21 | count of attempted robbery in the second degree and two counts of misdemeanor assault. Petitioner

22 | was sentenced to a term of 19 years in state prison. CT 234-239, 389-391.

23 |        Petitioner appealed and filed a petition for writ of habeas corpus in the California Court

24 | of Appeal. Exhibits ("Exhs.") 6 and 7. Petitioner's conviction was affirmed and his habeas petition

25 | was denied on April 4, 2006. Exh.10.

26 |        Petitioner filed a petition for review in the California Supreme Court which was denied

27 | on July 17, 2006. Exhs. 11 and 12. Petitioner subsequently filed a petition for writ of habeas corpus

28 | in the California Supreme Court, which was denied on August 15, 2007. Exhs. 13 and 14.

1    Petitioner timely filed the instant petition in federal court on September 14, 2007.

2    **STATEMENT OF FACTS**

3    The California Court of Appeal set forth the relevant facts underlying the conviction as

4    follows:

5    *Prosecution Witnesses*

6    A. *Rafael Gonzales*

7    Rafael Gonzales was on his way to work at about 7:15 a.m. on August 19, 2003. He
     was walking on Murray Avenue in Gilroy and was talking on his cell phone when he heard
8    someone call out the name "Harvey" to him. Gonzales responded that his name wasn't
     "Harvey" and kept walking. The man who called out to Gonzales then got out of his car
9    with a slingshot. Gonzales turned away so that he wouldn't get hit in the face and felt
     something strike his thigh.
10
     After Gonzales was struck in the leg, the man approached him and "yell[ed] at" him,
11   saying that Gonzales owed him some money. Gonzales again told him that he was not
     "Harvey" and tried to show him some identification. The man did not want to look at the
12   identification and instead punched Gonzales in the mouth. Gonzales fell to the ground and
     covered up his head. As he was on the ground, he was punched or kicked in the head. He
13   became somewhat groggy from the assault. Gonzales received a bloody split lip from the
     punch and a bump on the head from being struck while he was on the ground.
14
     As Gonzales got to his feet, he saw the man return to his car and retrieve a stick or
15   a bat. As Gonzales attempted to walk away, the man said "[s]omething to [the] effect" of
     "I'm going to get my money from you one way or the other." Gonzales kept walking away
16   from the man. As he did so, Gonzales saw a woman who had come out of her house; he
     told her to go back inside because he was afraid for her. The man made a U-turn and drove
17   away.

18   Shortly thereafter, Officer Morrow arrived and took Gonzales to a Chevron station.
     The officer asked Gonzales to identify the person who assaulted him; Gonzales identified
19   defendant and also said that the vehicle appeared to be the one that defendant had been
     driving at the time of the assault.
20
     B. *Michael Deleonardo*
21
     Michael Deleonardo was driving his truck northbound on Murray in Gilroy on
22   August 19, 2003, at around 7:30 a.m. He observed a conflict between a Caucasian man
     (whom he identified at trial as defendant) and a Hispanic man. Deleonardo saw defendant
23   pull back on a slingshot and strike the Hispanic man on the leg with a shiny object. He
     backed his truck up and told them to "knock it off."[1] Deleonardo then observed defendant
24   pointing a gun at the Hispanic male about two or three feet away from him; defendant was
     "mouthing words to" the Hispanic male. At the time, the Hispanic male was on the ground
25

26

27   _____

     1.    Although the time sequence is unclear from the record, at some point,
28         Deleonardo saw defendant punch the Hispanic male.

covering his head. Deleonardo used his cell phone to call 911.[2]

Defendant returned to his car, made a U-turn, and left the scene. Deleonardo followed defendant, who turned into a parking lot for a Chevy's restaurant. Deleonardo passed the entrance to the parking lot, turned around, and waited for defendant at another driveway. As defendant passed Deleonardo, he said, "[M]ind your own fuckin' business." After the police arrived moments later, Deleonardo drove back to the scene to locate the victim. He found the victim and observed that "he was bleeding from the mouth pretty bad."

C. *Officer Hugo Del Moral*

Officer Hugo Del Moral arrived at a Chevron station that morning in response to a call. Other officers were already there and "were conducting a high risk car stop" (i.e., "taking the person out of the vehicle at gun point"). Defendant was ordered out of the car; he complied and was arrested. Officer Del Moral searched defendant's automobile-a blue Toyota. Its contents included a wrist rocket slingshot, a bag of marbles, binoculars, and a folding knife, all located on the front passenger seat. He also found a baseball bat in the vehicle as well as a Crossman air gun that was hidden between the folded-down backrest and rear passenger seat. The air gun did not have a trigger.

D. *Officer Steve Morrow*

Shortly after 7:00 a.m. on August 19, 2003, Officer Steve Morrow was dispatched to "a fight in progress ... possibly involving weapons." Upon his arrival at a gas station, Officer Morrow observed other officers already on the scene conducting a stop of defendant in his vehicle. Once matters were secure, Officer Morrow drove a few blocks and met with Gonzales and Deleonardo. Gonzales was bleeding from the mouth, and the officer felt bumps on Gonzales's head. Gonzales told Officer Morrow that defendant had said during the assault: "Get in the car. I'm going to get my money out of you one way or another." The officer took Gonzales back to the gas station, where he identified defendant as his assailant.

II. *Defense Witness*

A. *Wiley Capela*

Wiley Capela is defendant's brother. He and defendant had shot slingshots for "[a]s long as [the witness could] remember." Defendant was a very good marksman with a slingshot; the witness estimated that if one were to line up 10 cans and have defendant shoot at them from thirty yards, he would miss no more than one of them. The witness would have had no problem loaning defendant $200 to $300 if he needed the money.

B. *Stipulation*

The prosecution and defense stipulated that at the time of defendant's arrest and booking, he had $168.00 in cash in his possession.

Exh. 10 at 2-5 (renumbered footnotes in original).

---

2.    The tape from Deleonardo's somewhat extended 911 call was played to the jury without objection.

1

# ARGUMENT

2

## I.

3

### THE STATE COURT'S DETERMINATION THAT THE KNIFE EVIDENCE WAS PROPERLY ADMITTED WAS NOT OBJECTIVELY

4

### UNREASONABLE

5      Petitioner first claims that his right to due process was violated when the trial court

6 admitted the folding knife found in his car into evidence at trial. Petitioner claims that because the

7 knife was not used in the attack on Gonzalez, it was plainly irrelevant and inadmissible and, further,

8 that it was prejudicial. Not so. The state court's rejection of this claim was not objectively

9 unreasonable.

10      **A.  Standard Of Review**

11      This Court must review the state court's ruling under a "highly deferential" standard

12 imposed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Woodford v.*

13 *Visciotti,* 537 U.S. 19, 24 (2002) (per curiam); *accord Medina v. Hornung,* 372 F.3d 1120, 1124 (9th

14 Cir. 2004) (review under AEDPA is "[e]xtraordinarily deferential to the state courts").

15      Under 28 U.S.C. § 2254(d)(1), the federal court has no authority to grant habeas relief

16 unless the state court's ruling was "contrary to, or involved an unreasonable application of," clearly

17 established United States Supreme Court precedent. A state court's decision is "contrary to" law if

18 the state court arrives at a legal conclusion opposite to that reached by the Supreme Court, or reaches

19 a different conclusion based on facts materially indistinguishable from a Supreme Court case.

20 *Williams v. Taylor,* 529 U.S. 362, 413 (2000). A state court's decision constitutes an "unreasonable

21 application" of Supreme Court precedent if the state court identifies the correct governing legal

22 principles, but the application of law to the facts is not merely erroneous, but "objectively

23 unreasonable." *Id.* at 411-413; *accord Clark v. Murphy,* 331 F.3d 1062, 1067-1069 (9th Cir. 2003).

24 Further, habeas relief must be based on "clearly established Supreme Court law." *See Carey v.*

25 *Musladin,* 127 S. Ct. 649 (2006). The petitioner bears the burden of showing that the state court's

26 decision was an unreasonable application of such law. *Woodford v. Visciotti,* 537 U.S. at 25.

27

28

1    **B.    The State Court's Rejection Of This Claim Was Not Objectively Unreasonable**

2

3         The state appellate court considered petitioner's claim that the evidence of the knife was

improperly admitted and rejected it. The court set forth the procedural background of the claim as

4

follows:

5

6         In pretrial proceedings, defendant raised an objection to any potential reference to a
knife found during the search of his vehicle immediately after his arrest. He argued that
the knife was "part of the police report but it shows prejudice against [defendant] that

7         there's a knife there, because it is considered a deadly weapon whereas the other ones are
debatable." The prosecution argued that, although knife-use against the victim was not
alleged, possession of the knife was "relevant just to show what [defendant] had, sort of

8         an arsenal in his car." Although defendant did not clearly articulate an objection to the
knife evidence under Evidence Code section 352,[3/] the prosecution asked the court to

9         consider defendant's evidentiary objection to be both a relevance objection and an
objection under Evidence Code section 352. The court deferred any ruling on the matter.

10

11        At trial, Officer Del Moral testified that during the search of defendant's vehicle, he
recovered a folding knife (exhibit 11) from the right front passenger's seat. It was in the

12        same location as the wrist rocket slingshot and marbles. After the witness was excused,
defendant objected to introduction of the knife as an exhibit. The court overruled the

13        objection, concluding that "there [was] some relevance that would override any prejudice
and [the exhibit] will be admitted having considered [Evid.Code, § ] 352 objections also."

14

15   Exh. 10 at 7-8 (renumbered footnote in original).

16        Petitioner argued in state court that because the knife was not used in the attack on

17   Gonzalez, it was plainly irrelevant and inadmissible. He argued further that the error was prejudicial.

18   The state appellate court rejected petitioner's argument as follows:

19        In reviewing defendant's claim that the trial court erred because evidence of
defendant's possession of the knife was irrelevant and inadmissible, "[w]e apply the

20        deferential abuse of discretion standard." (*People v. Kipp* (2001) 26 Cal.4th 1100, 1123.)
"Evidence is relevant if it has *any* tendency in reason to prove or disprove a disputed fact

21        at issue." (*People v. Mayfield* (1997) 14 Cal.4th 668, 749; see also Evid.Code, § 210.)
Similarly, we apply an abuse of discretion standard to the trial court's exercise of

22        discretion under Evidence Code section 352; the court's decision will not be reversed
absent a showing that such discretion was exercised in an "'arbitrary, capricious or

23        patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]'
[Citation.]" (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125.)

24

25   _____

26        3.    "The court in its discretion may exclude evidence if its probative
value is substantially outweighed by the probability that its admission

27              will (a) necessitate undue consumption of time or (b) create
substantial danger of undue prejudice, of confusing the issues, or of

28              misleading the jury." (Evid.Code, § 352.)

1    Applying these standards, we find no abuse of discretion by the trial court in admitting the knife evidence. Evidence that defendant possessed a folding knife in his
2    vehicle was relevant. The knife was in close proximity to the site of the attempted robbery. Defendant used his vehicle to transport the items (i.e., slingshot, baseball bat, and air gun)
3    used to attack Gonzales. Indeed, it is apparent that, after his initial attack with a slingshot, defendant returned to his car to procure one or more of the other weapons to continue with
4    the assault.

5    And, perhaps most significantly, defendant ordered Gonzales to get into his vehicle, saying, "I'm going to get my money out of you one way or another." This was probative
6    evidence that defendant had the criminal intent to commit an armed robbery. Defendant admitted the assault on Gonzales but denied that he had the intent to rob him; indeed,
7    nearly his entire closing argument was devoted to this theme. Thus, the fact that defendant carried a knife in his vehicle-the location to which defendant ordered the victim-was
8    probative (1) on the issue of whether defendant intended to commit a robbery; and (2) on the question of whether defendant was attempting to take property from Gonzales "by
9    means of force or fear" (§ 211), with the knife being one of the weapons available to accomplish the crime had defendant been successful in getting Gonzales into his vehicle.
10    And while defendant claims on appeal that his statement ("I'm going to get my money out of you one way or another") was ambiguous and subject to alternative interpretations (i.e.,
11    either he intended to steal, or he was going to assault the victim in lieu of payment), the fact that defendant had a knife in his vehicle supported the conclusion more damaging to
12    defendant, i.e., that he intended to rob Gonzales and the knife was one of the weapons at defendant's disposal to accomplish that objective. We therefore reject defendant's claim
13    that the knife evidence had no conceivable relevance.

14    . . . .

15    It remains for us to decide whether, notwithstanding the evidence's relevance, the trial court should have excluded it because "its probative value [was] substantially outweighed
16    by the probability that its admission [would have] (a) necessitate[d] undue consumption of time or (b) create[d] substantial danger of undue prejudice, of confusing the issues, or
17    of misleading the jury." (Evid.Code, § 352.) While the degree of the probative value of the knife evidence may not have been extremely great, we cannot conclude that the court
18    abused its discretion by admitting the evidence after conducting an Evidence Code section 352 analysis. As the Supreme Court has explained: "The exercise of discretion [under
19    Evidence Code section 352] is not grounds for reversal unless "'the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest
20    miscarriage of justice.'' '[Citations.]" (*People v. Ochoa* (2001) 26 Cal.4th 398, 437-438.) Under that standard, the court did not abuse its discretion.

21

22    Exh. 10 at 9-12.

23    Significantly, a state prisoner may obtain federal habeas relief only on the ground that he

24    is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. §

25    2254(a); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991); *Engle v. Isaac*, 456 U.S. 107, 119 (1982).

26    Federal habeas review of state court evidentiary rulings is correspondingly narrow in scope. A

27    federal court has no power to re-examine state court rulings on the admissibility of evidence under

28    state law. *McGuire*, 502 U.S. at 67-68. To obtain federal habeas relief, the petitioner must show that

Memorandum of Points and Authorities in Support of Answer - C 07-04734 SBA (PR)

1 the admission of the evidence either infringed upon a specific federal constitutional or statutory

2 provision applicable to the state courts, or was so prejudicial that its admission denied him his right

3 to due process and a fair trial. *Id.*; *Windham v. Merkle*, 163 F.3d 1092, 1103 (9th Cir. 1998). The

4 admission of evidence violates a defendant's right to due process and a fair trial only if: (1) there are

5 no permissible inferences the jury may draw from the evidence, and (2) the evidence is of such a

6 quality as necessarily prevents a fair trial. *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir.

7 1991).

8         Petitioner has failed to demonstrate that the admission of the knife evidence infringed on

9 a specific constitutional or statutory right or was so prejudicial that it denied him his right to a fair

10 trial. As explained by the state appellate court, there are numerous permissible inferences that can

11 be drawn from the knife found in petitioner's car. For example, the knife was relevant because it

12 was found in his car which was in close proximity to the site of the attempted robbery and petitioner

13 used his vehicle to transport the items (i.e., slingshot, baseball bat, and air gun) used to attack

14 Gonzales. Indeed, petitioner returned to his car to find other weapons to continue the assault on

15 Gonzales. And significantly, as noted by the state court, petitioner ordered Gonzales to get into his

16 vehicle, saying, "I'm going to get my money out of you one way or another." This was relevant to

17 petitioner's criminal intent to commit an armed robbery because the fact that petitioner carried a

18 knife in his car was probative on the issue of whether he intended to commit a robbery and whether

19 he was attempting to take property from Gonzales "by means of force or fear." The knife was one

20 of the weapons available to accomplish the robbery if petitioner was successful in forcing Gonzales

21 into his vehicle. There were numerous relevant inferences the jury could draw from the knife

22 evidence. *Jammal,* 926 F.2d at 920.

23         For there to be a due process violation, admission of the knife must have rendered the trial

24 fundamentally unfair. *Id.* at 919. Due process is violated when there is a reasonable probability of

25 a more favorable result. *See Kyles v. Whitley*, 514 U.S. 419, 435 (1995). The evidence presenting

26 the knife was very brief and limited. The weapon was mentioned only in the context of its being

27 found in proximity to the others. No prejudice flowed from the knife's admission given the presence

28 of petitioner's cache of other weapons. In other words, the knife alone did not create the prejudicial

1    inference that petitioner was the kind of person who surrounds himself with potentially lethal

2    weapons. The trial was not rendered fundamentally unfair by the admission of the knife. *Jammal,*

3    926 F.2d at 920.

4        The state court's rejection of this claim was not objectively unreasonable. *Woodford v.*

5    *Visciotti,* 537 U.S. at 25.    Accordingly, the claim should be denied.

6    **II.**

7    **THE STATE COURT'S DECISION THAT THE EVIDENCE OF**
    **PETITIONER'S LACK OF MOTIVE TO STEAL WAS PROPERLY**
8    **EXCLUDED IS REASONABLE**

9        Petitioner next claims that he was denied due process when the trial court excluded

10   relevant evidence that he lacked a motive to steal. Specifically, he urges that the state court erred

11   by not granting his request to have Selina Roberts, a prison inmate, transferred from prison and

12   called as a witness. The state appellate court rejected petitioner's argument and its reasoning was

13   not objectively unreasonable.

14       The state court set forth the procedural background underlying this claim as follows:

15       Approximately four months before the trial ultimately commenced, defendant filed
     a motion to have an inmate, Selina Roberts, transferred from Chowchilla Prison to a local
16   facility "so that the defendant can interview the witness." The matter was heard on
     December 11, 2003, before the Honorable Edward Lee, who was not the judge who
17   ultimately presided over the trial. Judge Lee initially indicated that he was inclined to deny
     the motion because "there [was] simply no reason given why [Roberts] should be
18   transferred from state prison to a local facility." Defendant responded that "[s]he's a direct
     witness in this case, Your Honor. She was present during the events that took place. I need
19   her for testimony." He later clarified that Roberts was not present at the time of the
     incident, but that her proposed testimony concerned "[defendant's] use of the slingshot and
20   a couple of events that took place afterwards." Judge Lee denied defendant's motion
     without prejudice, indicating that defendant was required to establish good cause that he
21   needed access to the witness before the court would order her to be transferred.

22       Defendant renewed the motion later in December 2003. He asserted in his written
     motion that it was essential that Roberts be ordered transferred to a local facility because
23   she was a witness "[1] to [defendant's] ability using a slingshot ... [2 who could describe]
     the reason [defendant] would have been upset at ... Harvey [and 3 who had] ... secured
24   [defendant's] personal properts [ *sic* ] putting his things in storage when he was arrested[
     ] and [could] testify [defendant] was not in any need to comit [ *sic* ] the crime of robbery
25   especially for a mere $100.00." The matter was heard by Judge Lee, who again denied the
     motion, concluding that there was no good cause for transferring Roberts.

26

27       Roberts's name appeared in defendant's witness list filed on March 29, 2004, shortly
     before the commencement of trial. The prosecution-acknowledging that defendant had
28   advised of his intention to call Roberts as a witness at trial concerning defendant's prowess
     in the use of a slingshot-noted that Roberts was scheduled for release from prison

1   sometime during the week that the trial would proceed.

2        During trial, the prosecution advised the court outside of the jury's presence that Roberts had been released from prison on April 1, 2004, and that it intended to impeach

3   the witness with two prior felony convictions. Defendant opposed the introduction of the prior felony convictions, arguing that they were not relevant to the subject matter of

4   Roberts's testimony. Defendant stated that Roberts "would be the last witness that [he] would call to testify," and that her anticipated testimony would be "very brief" on the issue

5   of "whether she's seen [defendant] use a slingshot and that's ... basically about it." The court ruled that the fact that Roberts had suffered two prior felony convictions would be

6   admissible by the prosecution to impeach the witness if she testified.

7        Defendant did not call Roberts to testify at trial and called only one witness, his brother, in his defense.[4] There is nothing in the record indicating that defendant took any

8   steps to secure Roberts's testimony, and defendant did not request the court's assistance in requiring her appearance.[5]

9

10       Defendant contends that the trial court erred when it denied defendant's pretrial request to transfer Roberts to a local facility. He argues that Roberts's anticipated

11  testimony was relevant and probative on the issue of whether defendant had a motive to steal. Defendant argues that this error constituted a denial of due process and that the error

12  was not harmless beyond a reasonable doubt.

13  Exh. 10 at 12-14 (renumbered footnotes in original).

14       The state court rejected petitioner's argument, holding that the trial court did not, in fact,

15  exclude Roberts's testimony.  In any event, according to the state court, petitioner failed to offer

16  proof concerning Roberts's proposed testimony.  The state court set forth its analysis as follows:

17       The threshold question is whether the court below, in fact, excluded any evidence. It is plain from the record-as recited above-that the court did not exclude Roberts's

18  testimony. In proceedings well before trial, Judge Lee- *not* the trial judge-denied defendant's two motions to transfer Roberts from Chowchilla prison to a local facility. Had

19  the trial proceeded shortly after these rulings before Judge Lee, defendant's claim that the court excluded evidence-putting aside the issue of the propriety of such ruling-might have

20  merit.

21       Here, however, the trial did not commence until more than three months after Judge Lee's denial of defendant's second motion to transfer Roberts. There is nothing in the

22

23  _____

24  4.    Defendant announced the calling of a second witness, Silverio Perez, who was apparently defendant's former landlord and may have had

25        information as to whether defendant needed money at the time of the attack on Gonzales. After learning that Perez had not appeared,

26        defendant decided to rest his case.

27  5.    After the jury was empaneled, defendant requested and obtained approval from the court to make four telephone calls to potential

28        witnesses; one of those witnesses was Roberts's mother.

1    record to suggest that the trial judge, Judge Kenneth Shapero, ordered the exclusion of any proffered testimony from Roberts. The trial court did nothing more than rule that if
2    defendant called Roberts as a witness, the prosecution would be permitted to offer her two prior felony convictions as impeachment. Rather than the court being responsible for
3    Roberts's exclusion, the record suggests that defendant made the tactical decision not to call her as a trial witness. We therefore reject defendant's claim of error founded upon the
4    alleged erroneous exclusion of evidence, because there was no such exclusionary order in this instance. (See *People v. Espinoza* (2002) 95 Cal.App.4th 1287, 1299-1304 [alleged
5    error in excluding testimony of uncle of sex-crimes victim that victim had made false molestation charge against him rejected, where record neither disclosed that defense
6    counsel proffered uncle's testimony nor that trial court excluded it]; *People v. Honig* (1996) 48 Cal.App.4th 289, 342-346 [theory of admissibility of testimony of private
7    donors to nonprofit organization founded by defendant and his spouse not advanced at trial and defendant did not attempt to call donors to testify; therefore, defendant could not
8    argue reversible error based on alleged exclusion of evidence].)

9        The absence of an order excluding evidence notwithstanding, defendant's contention also lacks merit because of the absence of a specific offer of proof concerning Roberts's
10    proposed testimony. "[A] judgment may not be reversed for the erroneous exclusion of evidence unless 'the substance, purpose, and relevance of the excluded evidence was made
11    known to the court by the questions asked, an offer of proof, or by any other means.' [Citations.]" (*People v. Anderson* (2001) 25 Cal.4th 543, 580, quoting Evid.Code, § 354,
12    subd. (a); see also *People v. Valdez* (2004) 32 Cal.4th 73, 108.) "This rule is necessary because, among other things, the reviewing court must know the substance of the excluded
13    evidence in order to assess prejudice. [Citations.]" (*People v. Anderson, supra*, at p. 580.)

14        Here, defendant advised the trial court that Roberts's anticipated testimony would be "very brief" on the issue of "whether she's seen [defendant] use a slingshot and that's ...
15    basically about it." This did not constitute a specific offer of proof. Defendant argues on appeal that he made an offer of proof that Roberts had knowledge regarding defendant's
16    property at the time of his arrest. This so-called offer of proof, however, was not made to the trial judge. But even if we were to consider defendant's motion before Judge Lee some
17    three months before trial to have been an offer of proof, it likewise lacked any specificity to permit a reviewing court to assess the significance of the evidence. (*People v. Anderson,*
18    *supra,* 25 Cal.4th at p. 580.)

19    Exh. 10 at 15-16.

20        As the state court noted, Ms. Roberts was not incarcerated at the time of trial, making the

21    claim that the trial court excluded her testimony groundless. Moreover, petitioner indicated that he

22    wanted Ms. Roberts to testify not to show the absence of a motive to rob, but about his prowess in

23    using a slingshot. RT 44. Petitioner conveniently ignores this disclaimer now to allege in support

24    of his argument here that Ms. Roberts could testify about seeing his personal property when he was

25    arrested, so that he had no need for $100 and no motive to rob the victim.

26        Petitioner would have to have made an offer of proof of the substance of the anticipated

27    testimony in order to show a violation of his constitutional rights. The exclusion of evidence does

28    not violate due process unless "it offends some principle of justice so rooted in the traditions and

1   conscience of our people as to be ranked as fundamental." *Montana v. Egelhoff,* 518 U.S. 37, 42-43

2   (1996) (quoting *Patterson v. New York,* 432 U.S. 197, 201-02 (1977)) (internal quotations omitted).

3   However, a defendant does not have an unfettered right to offer evidence that is incompetent,

4   privileged or otherwise inadmissible under standard rules of evidence. *Id.* Petitioner bears the

5   burden of demonstrating that a fundamental principle of procedure was violated when seeking

6   habeas relief. *Patterson,* 432 U.S. at 202.

7         One of the fundamental rules that may be violated by the erroneous exclusion of critical,

8   corroborative defense evidence is the Sixth Amendment's right to present a defense. *DePetris v.*

9   *Kuykendall,* 239 F.3d 1057, 1062 (9th Cir. 2001) (citing *Chambers v. Mississippi,* 410 U.S. 284, 294

10   (1973)). When deciding whether the exclusion of evidence violates this right, a court balances the

11   following factors: the probative value of the excluded evidence on the central issue; the reliability

12   of the evidence; the capability of evaluation by the trier of fact; the cumulativeness of the evidence;

13   and the importance of the evidence in defendant's attempted defense. *Cambra v. Chia,* 360 F.3d 997,

14   1003 (9th Cir. 2004). A defendant must also show that "his interest clearly outweighs the state's

15   before we will interfere with routine procedural matters." *Perry v. Rushen,* 713 F.2d 1447, 1453 (9th

16   Cir.1983).

17         There is no showing that Ms. Roberts would have testified as to any fact that would have

18   aided the defense. Petitioner had the opportunity to show what property he owned at the time he was

19   arrested. Indeed, the parties stipulated that he had $168 on him. This enabled him to argue to the

20   jury that he did not need Gonzales's money and had nothing to do with a robbery. RT 191.

21   Petitioner's vague reference to Ms. Roberts's testifying about seeing his personal property when he

22   was arrested was not sufficient to show that her testimony might be material or necessary to the

23   defense, in order to justify her production from state prison. In sum, the exclusion of Ms. Roberts's

24   testimony did not infringe upon petitioner's right to present a defense. *DePetris,* 239 F.3d at 1062.

25         The state court's rejection of this claim was not objectively unreasonable. Accordingly,

26   this claim should be denied.

27

28

**III.**

**THE STATE COURT REASONABLY REJECTED THE CLAIM THAT INSTRUCTIONAL ERROR OCCURRED WHEN CALJIC NO. 2.01 WAS GIVEN AND NO. 2.02 WAS NOT**

Petitioner next complains that the trial court erred by instructing the jury with CALJIC No. 2.01 and that it should have instead instructed sua sponte with CALJIC No. 2.02. We disagree and submit that the state court reasonably determined that the jury was properly instructed on the definition of circumstantial evidence.

The state court set forth the procedural background of this claim as follows:

The court instructed the jury as to the definition of circumstantial evidence (as stated in CALJIC No. 2.00).[6/] It further cautioned the jury (as provided in CALJIC No. 2.01)[7/] that "a finding of guilt as to any crime may not be based on circumstantial evidence unless the proved circumstances are not only [(1)] consistent with the theory that the defendant

---

6.    "Evidence is either direct or circumstantial. [¶] ... [¶] Circumstantial evidence is evidence that, if found to be true, proves a fact from which an inference of the existence of another fact may be drawn. [¶] ... [¶] It is not necessary that facts be proved by direct evidence. They also may be proved by circumstantial evidence or by a combination of direct and circumstantial evidence. Both direct and circumstantial evidence are acceptable as a means of proof. Neither is entitled to any greater weight than the other." (CALJIC No. 2.00 (Oct.2005 ed.).)

7.    The entire instruction reads as follows: "However, a finding of guilt as to any crime may not be based on circumstantial evidence unless the proved circumstances are not only (1) consistent with the theory that the defendant is guilty of the crime, but (2) cannot be reconciled with any other rational conclusion. [¶¶] Further, eac fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt must be proved beyond a reasonable doubt. In other words, before an inference essential to establish guilt may be found to have been proved beyond a reasonable doubt, each fact or circumstance on which the inference necessarily rests must be proved beyond a reasonable doubt. [¶] Also, if the circumstantial evidence as to any particular count permits two reasonable interpretations, one of which points to the defendant's guilt and the other to his innocence, you must adopt that interpretation that points to the defendant's innocence, and reject the interpretation that points to his guilt. [¶] If, on the other hand, one interpretation of this evidence appears to you to be reasonable and the other interpretation to be unreasonable, you must accept the reasonable interpretation and reject the unreasonable." (CALJIC No. 2.01 (Oct. 2005 ed.).)

1   is guilty of the crime[,] but [ (2) ] cannot be reconciled with any other rational conclusion." In advance of instructing the jury (and outside of the presence of the jury),

2   the court explained to the prosecution and defendant that CALJIC No. "2.01 discusses the sufficiency of circumstantial evidence which is relevant on the acts in this case and the

3   intent required on the robbery case charge."

4       Defendant contends that the court erred by giving CALJIC No. 2.01. He argues that the court instead should have given CALJIC No. 2.02[8/] sua sponte. Defendant urges that

5   CALJIC No. 2.02 was the appropriate jury instruction because the circumstantial evidence in the case was relevant only to the specific-intent-to-steal element of the robbery count.

6   (See Use Note to CALJIC No. 2.02 (Oct. 2005 ed.): "If the only circumstantial evidence relates to specific intent or mental state, CALJIC [No.] 2.02 [rather than CALJIC No.

7   2.01] should be given.") He argues that he "essentially admitted the actus reus of all of the crime." and that his sole contentions at trial were that he did not intend to steal from

8   Gonzales and the weapons used were not deadly weapons. Defendant asserts that because the statement relied on by the prosecution in support of the argument that he had the

9   requisite specific intent ("Get in the car[-]I'm going to get my money out of you one way or another") was susceptible to more than one interpretation, it was incumbent upon the

10   trial court to give CALJIC No. 2.02. Defendant claims that this error was prejudicial under either a federal constitutional error standard or under a *Watson*[9/] "reasonable probability"

11   standard.

12   Exh. 10 at 17-19 (renumbered footnotes in original).

13       The state appellate court rejected petitioner's claim, explaining that as between CALJIC

14   Nos. 2.01 and 2.02, CALJIC No. 2.01 is the more inclusive instruction. The court then reasoned as

15   follows:

16       We agree that there was circumstantial evidence presented for the jury to consider,

17

---

18      8.   "The [specific intent] [or][and] [mental state] with which an act is

19          done may be shown by the circumstances surrounding the commission of the act. However, you may not [find the defendant

20          guilty of the crime charged] ... unless the proved circumstances are not only (1) consistent with the theory that the defendant had the

21          required [specific intent] [or] [and] [mental state] but (2) cannot be

22          reconciled with any other rational conclusion. [¶] Also, if the evidence as to [any] [specific intent] [or] [mental state] permits two

23          reasonable interpretations, one of which points to the existence of the [specific intent] [or] [mental state] and the other to its absence, you

24          must adopt that interpretation which points to its absence. If, on the other hand, one interpretation of the evidence as to the [specific

25          intent] [or] [mental state] appears to you to be reasonable and the

26          other interpretation to be unreasonable, you must accept the reasonable interpretation and reject the unreasonable." (CALJIC No.

27          2.02 (Oct. 2005 ed.).)

28      9.   *People v. Watson* (1956) 46 Cal.2d 818, 836.

1   including defendant's statement to the victim and defendant's alleged flight.[10]/ Contrary
2   to defendant's position, however, this circumstantial evidence was not relevant solely on
    the issue of specific intent. For example, defendant's display and use of weapons upon the
3   victim were facts from which the jury could have inferred not only an intention to
    permanently deprive Gonzales of his property, but also an attempted taking by force or
    fear, another element of robbery.[11]/ Similarly, the jury could have inferred from
4   defendant's flight a consciousness of guilt with respect to the specific intent crime of
    attempted robbery, the other charged (general intent) crimes of aggravated assault, or both.
5   Therefore, since this was not a case in which "the only element of the offense that rest[ed]
    substantially or entirely on circumstantial evidence [was] that of specific intent or mental
6   state: (*People v. Cole* (2004) 33 Cal.4th 1158, 1222), the trial court properly gave the more
    inclusive circumstantial evidence instruction, CALJIC No. 2.01. (*People v. Hughes, supra,*
7   27 Cal.4th at p. 347.)[12]/

8   Exh. 10 at 20 (renumbered footnotes in original).

9       A claim of state instructional error can be the basis of federal habeas relief only if the error,

10  considered in light of all the instructions given in addition to the trial record, "'so infected the entire

11  _____

12   10.   The court gave CALJIC No. 2.52, under which the jury was apprised
           that it could consider defendant's flight from the crime scene with
13         other evidence in deciding whether defendant is guilty or not guilty
           but that flight alone was insufficient to establish guilt.
14

15   11.   "Robbery is the felonious taking of personal property in the
           possession of another, from his person or immediate presence, and
16         against his will, accomplished by means of force or fear." (§§ 211.)

17   12.   "Extrajudicial admissions, although hearsay, are not the type of
           indirect evidence as to which the instructions on circumstantial
18         evidence are applicable." (*People v. Wiley* (1976) 18 Cal.3d 162, 174,
           citing *People v. Gould* (1960) 54 Cal.2d 621, 629.) The Attorney
19         General argues that under *Wiley,* defendant's statement here was an
20         admission for which it would have been inappropriate to give
           CALJIC No. 2.02. While defendant's statement was significant
21         evidence of defendant's intent to deprive the victim of his property,
           it was also arguably an admission. Admissions of a defendant may
22         occur before, during or after the commission of a crime. (*People v.
23         Carpenter* (1997) 15 Cal.4th 312, 393 [statement to victim, "I'm
           going to rape you," was admission and part of crime itself].) But
24         *Wiley* concerned an admission by the defendant that she intended to
           kill her husband made the day prior to his beating death. It did not
25         involve the type of statement present here that was in essence part of
           the criminal act. Because the circumstantial evidence here was not
26         limited to this issue of specific intent, we need not resolve the
27         question of whether defendant's statement was an admission of the
           kind for which the circumstantial evidence instruction (CALJIC No.
28         2.02), of necessity, should not be given.

1    trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)

2    (citation omitted). The mere fact that an instruction was allegedly incorrect under state law is not

3    a basis for habeas relief. *Id.* at 71-72. A petitioner must show "not merely that the instruction is

4    undesirable, erroneous, or even 'universally condemned,' but that it violated some [constitutional]

5    right." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

6         The initial test for constitutional error is whether there is a "'reasonable likelihood'" the

7    jury applied the instructions in a way that prevented consideration of constitutionally relevant

8    evidence. *Calderon v. Coleman*, 525 U.S. 141, 146 (1998) (per curiam) (quoting *Boyde v.*

9    *California*, 494 U.S. 370, 380 (1990)). The challenged instruction must be evaluated in light of the

10   instructions as a whole and the evidence introduced at trial. *Estelle*, 502 U.S. at 72. In addition, the

11   arguments of counsel may clarify an ambiguous or internally inconsistent jury charge, particularly

12   "when it is the *prosecutor's* argument that resolves an ambiguity in favor of the *defendant*."

13   *Middleton v. McNeil*, 124 S.Ct. 1830, 1833 (2004) (per curiam) (emphasis in original); *Weeks v.*

14   *Angelone*, 528 U.S. 225, 236 (2000). Where the alleged error stems from the failure to give an

15   instruction, the petitioner's burden is "especially heavy," because "[a]n omission or incomplete

16   instruction is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431

17   U.S. 145, 155 (1977); *Jeffries v. Blodgett*, 5 F.3d 1180, 1195 (9th Cir. 1993).

18        If the habeas court finds constitutional error under the *Boyde* test, it must then assess

19   prejudice by determining whether the error "had substantial and injurious effect or influence in

20   determining the jury's verdict." *Coleman*, 525 U.S. at 147 (quoting *Brecht v. Abrahamson*, 507 U.S.

21   619, 637 (1993)).

22        As the state court noted, contrary to petitioner's argument, the circumstantial evidence,

23   including petitioner's statement to the victim and petitioner's alleged flight, was not relevant just on

24   the issue of specific intent. Petitioner's display and use of weapons were facts from which the jury

25   could have inferred the elements of intent to permanently deprive the victim of his property as well

26   as an attempted taking by force or fear. The jury could also have inferred from petitioner's flight a

27   consciousness of guilt with respect to the specific intent of robbery and also the other crimes of

28   aggravated assault. Moreover, the Ninth Circuit has held that the giving of CALJIC No. 2.01 in lieu

1  of CALJIC No. 2.02 does not rise to the level of constitutional error. *McMillan v. Gomez,* 19 F.3d

2  465, 468 (9th Cir. 1994) (characterizing the argument that CALJIC 2.02 should have been given

3  rather than 2.01 as "a quibble"). Thus, petitioner cannot demonstrate that the instructing with

4  CALJIC No. 2.01 rather than No. 2.02 "'so infected the entire trial that the resulting conviction

5  violates due process.'" *Estelle v. McGuire,* 502 U.S. at 72. Accordingly, there was no constitutional

6  error and this claim should be dismissed.

7                         **IV.**

8           **THERE WAS NO CUMULATIVE PREJUDICIAL ERROR**

9         Petitioner next claims that, even if no single error warrants reversal of the judgment, the

10  cumulative effect of all the errors necessitates reversal.

11         The Ninth Circuit has determined that it is clearly established United States Supreme Court

12  precedent that the combined effect of multiple trial errors may give rise to a due process violation

13  if it renders a trial fundamentally unfair, even where each error considered individually would not

14  require reversal. *Parle v. Runnels,* 505 F.3d 922, 927 (9th Cir. 2007) (citing *Donnelly v.*

15  *DeChristoforo,* 416 U.S. 637, 643 (1974) and *Chambers v. Mississippi,* 410 U.S. 284, 290 (1973)).

16         Here, as set forth above, no error of constitutional magnitude occurred. Thus, any alleged

17  errors, even considered together, did not render petitioner's defense "far less persuasive," nor did

18  they have a "substantial and injurious effect or influence on the jury's verdict." *See Parle,* 505 F.3d

19  at 928.

20         Therefore, the state appellate court's rejection of petitioner's cumulative error claim was

21  not objectively unreasonable. Accordingly, petitioner is not entitled to relief on this claim.

22

23                         **V.**

24       **THE PROSECUTORIAL MISCONDUCT CLAIM IS FACTUALLY**
           **MERITLESS**

25

26         Petitioner's next claim, which he raised in a habeas petition in the California Supreme

27  Court, is that the prosecutor committed misconduct during trial by placing a 5-page document on

28  each of the jurors' seats during a break in the trial.

1    This issue was raised at a motion for new trial filed by petitioner's retained counsel after

2    trial. The hearing was held on August 27, 2004 at which time petitioner's counsel informed the court

3    that petitioner was certain that the prosecutor had placed an outline of his closing argument on the

4    seat of each jurors' chair. The trial court responded to this claim as follows:

> 5    [TRIAL COURT]: And, [the prosecutor], before I give you a chance to clarify on the last point let me clarify. Putting – on the issue of the illustrative billboards as it were used by
> 6    [the prosecutor] in his argument, putting aside the issue as to whether there was any objection at the time or not, it is the Court's clear recollection that [the prosecutor] used
> 7    the blowups to illustrate his argument. A copy was provided to the Court. A copy was provided to [petitioner]. No copies were provide [*sic*] to the jury either for their following
> 8    along during argument or in the jury room or at any other time in the course [*sic*]. Copies were for the Court and [the petitioner] because of the proximity of the board to the jury
> 9    and the potential that he and I could not follow along at the time. No copies were given to the jury nor would the Court have permitted copies to have been give to the jury. And
> 10    it's significantly different than a transcript of a tape recording being given to the jury to follow along during the tape. And I guess he and I will agree to disagree on our
> 11    recollection of what happened.

12    RT 326-327.

13    After the hearing, petitioner hired a private investigator to interview the jurors to determine

14    if they had in fact received the document on their chair. Notably, the investigator was not able to

15    confirm with any of the jurors he contacted that they received the document in question. *See* Exhibit

16    "A" attached to Petition for Writ of Habeas Corpus. Clearly, there is no factual basis to petitioner's

17    claim that the jurors received an outline of the prosecutor's closing argument. As such, petitioner's

18    claim of misconduct must be denied.[13]

19    **VI.**

20    **PETITIONER'S ARGUMENTS THAT HIS DUE PROCESS RIGHTS WERE VIOLATED BY DENIAL OF ACCESS TO LEGAL MATERIALS**
21    **AND APPOINTMENT OF ADVISORY COUNSEL DO NOT STATE A FEDERAL CLAIM**

22    Petitioner's final claim is that the charge of attempted robbery was improperly filed after

23    the preliminary hearing. Petitioner, who represented himself at trial, elaborates that he would have

24    challenged the additional charge before trial, but he was prevented from doing so because he was

25

26    _____

27    13. To the extent that petitioner claims that he received ineffective assistance of trial and appellate counsel with regards to this issue, there is likewise no factual support for that claim either.
28    *See James v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994).

1    denied access to the law and the appointment of advisory counsel. The essence of petitioner's claim

2    is his alleged denial of due process because of restricted access to the law library and advisory

3    counsel. Not so. The state court's rejection of this claim was not objectively unreasonable.

4            The state court set forth the procedural background of this claim as follows:

5            At the time of the originally scheduled trial in November 2003, defendant asked to
       dismiss his court-appointed counsel and to represent himself. The court conducted a
6       *Faretta*[14] hearing; after defendant was voir dired and had signed a petition to proceed in
       propria persona, the court granted defendant's request to represent himself and continued
7       the trial date.

8            On January 8, 2004, the court vacated the trial date in order (among other reasons)
       to provide sufficient time to hear a motion to dismiss under section 995 brought by
9       defendant.[15]  At that time, defendant requested that an attorney be appointed to provide
       "some assistance." Defendant reiterated, however, that he wished to continue to represent
10      himself. He explained that his need for attorney assistance was due to the county jail not
       having a law library, which resulted in some delay (10 to 14 days) in the receipt of
11      requested legal materials. Defendant asked for an advisory attorney who could "come
       maybe one, two days out of the week, have 30, 40-minute conference[s] with
12      [defendant].... Maybe sit in during the trial ... just to go over and review the law because"
       defendant had difficulty getting information in the jail.

13
            The court denied defendant's request, concluding that there was no good cause for
14      such an appointment. The court reasoned that (1) defendant had demonstrated (through
       the filing of various motions) that he was competent to represent himself, (2) the issues
15      in the case were not complex, (3) the County's new system of providing jail inmates with
       legal materials upon their request was effective,[16] and (4) appointment of advisory counsel
16      would do little more than "turn the attorney into a runner" of requested legal materials.
       Finally, the court noted that defendant's complaint about it being more difficult to conduct
17      legal research in jail was a risk that he voluntarily assumed when he requested leave to act
       as his own attorney: "[D]efendant was advised that it would be difficult for him to
18      investigate, research and prepare his defense in this case. And after he was advised of that,
       along with the other admonitions that we did during his *Faretta* hearing, he decided to

19

20    _____

21    14.    *Faretta v. California* (1975) 422 U.S. 806 ( *Faretta* ).

22    15.    As an additional reason for the continuance, the court noted that,
             although it had previously appointed an investigator to assist in the
23           defense, the investigator had not yet contacted defendant.

24    16.    The court acknowledged that inherent in the County's system was the
             drawback of some delay in inmates' receipt of requested legal
25           materials. But the court stated that the current system-as compared
             with the prior system in which a separate law library was maintained
26           for inmates but materials were often damaged or missing-appeared to
             be more effective in providing to inmates "the most recent [legal]
27           materials [in an] unblemished format."

28

1    represent himself."[17]

2    At a hearing on March 4, 2004, defendant renewed his request for appointment of advisory counsel "to help assist [him] through trial as co-counsel." Defendant repeated his concern that there was a delay of five to 10 days in obtaining requested legal research.

3    While the court again advised defendant that he had the right to appointed counsel to represent him and urged defendant to consider that option,[18] it rejected defendant's request

4    for appointment of advisory counsel.

5    On March 29, 2004-which was the scheduled trial date (after continuances)-the court heard various pretrial matters, including defendant's renewed *Pitchess* motion.[19]   The

6    prosecution opposed the motion on the basis that it was not served on the City of Gilroy. In that context, defendant raised a concern that he was having difficulty obtaining

7    information needed for trial while he was in custody.[20]   The court denied the *Pitchess*

8

9

10

11    17.    The form petition that defendant signed when he sought to proceed

12    in propria persona contained a number of admonitions, labeled

**"DISADVANTAGES OF SELF-REPRESENTATION"** (original

13    bold), including the following three admonitions, each of which

14    defendant separately initialed: "1. I understand that if I am permitted

to represent myself, it will be necessary for me WITHOUT THE

15    ASSISTANCE OF COUNSEL, to follow all of the many technical

rules of criminal procedure, law, and evidence. [¶] ... [¶] 4.

16    understand that if I am in jail custody, my ability to investigate,

17    research, and prepare my defense, ... will be severely limited. I

understand that if I had an attorney, the attorney would not have those

18    limitations. [¶] 5. I understand that if I am permitted to represent

myself, it will be necessary for me, WITHOUT THE ASSISTANCE

19    OF COUNSEL, to conduct my own pretrial motions...."

20    18.    Defendant stated repeatedly during the hearing that he did not wish

to have an attorney appointed to represent him in the trial.

21    19.    *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

22

23    20.    "[Defendant]: I don't have the proper program as far as who I was

suppose[d] to serve this [motion] with. The law library-we don't have

24    a[law] library, it is basically a word processor that doesn't work part

of the time-and ... if we need information sometimes it takes six to

25    eight weeks [ *sic* ], ten days to get an answer. And I am trying to get

paper work on that. And had a law librarian write and then I was

26    transferred to the main jail. So like I am having-I am not an attorney.

27    [¶] [The Court]: know you are not. [¶] [Defendant]: I am having a

problem trying to find out all the information I need to find out with

28    process servers and things like that."

motion.[21/] Defendant did not seek a continuance or other relief concerning any claim that he was having difficulty obtaining legal materials to prepare his defense.

Also on the morning of March 29, 2004, the court entertained discussion as to whether defendant would retain private counsel and whether defendant still wanted to represent himself. The court gave defendant a final opportunity to have a deputy public defender assigned as his counsel and passed the matter to the afternoon to give defendant time to consider further the representation issue. On the afternoon of March 29, 2004, defendant again declined the court's suggestion that he be represented by a deputy public defender.

Defendant asserts on appeal that he was denied due process as a result of the court's denial of his requests for appointment of advisory counsel and its purported denial of access by defendant to legal materials. He claims that the denial of advisory counsel and access to legal materials deprived him of a fair trial. We address these contentions after a review of the applicable legal principles.

Exh. 10 at 30-33 (renumbered footnotes in original).

The state court rejected petitioner's claim that he his due process rights were violated by the denial of petitioner's request to have advisory counsel appointed. The state court explained:

Applying the above legal principles, we readily conclude that the trial court did not abuse its discretion by denying defendant's motions to appoint advisory counsel. The court's rationale included its findings as to the relative lack of complexity of the case and as to defendant's demonstrated competence (through various pretrial motions) in representing himself. These were more than adequate grounds for denying the motions.[22/] And-with the benefit of hindsight after a thorough review of the record, including both pretrial and trial proceedings-we concur with the trial court that defendant represented himself in a competent fashion. Thus, we find that the trial court did not abuse its discretion in its denial of defendant's motions, since there was """"a reasonable or even fairly debatable justification, under the law, for the action taken"""" by the trial court. (*People v. Crandell, supra,* 46 Cal.3d at p. 863.)

---

21.    Defendant had made a previous *Pitchess* motion, which was denied without prejudice on December 11, 2003, due to the failure to serve the City of Gilroy and the failure to specify the records being sought. Defendant does not challenge on appeal the court's rulings on either motion. In any event, since the motions concerned potential discovery concerning Officer Morrow, who did little more at trial than corroborate Gonzales's testimony, it is difficult to conceive of any prejudice to defendant from the denial of his *Pitchess* motions.

22.    Defendant advised the court at the time that he sought leave to represent himself that he had three years of college, including some coursework in the law. The court cited this disclosure in its denial of defendant's request to appoint advisory counsel.

1   Exh. 10 at 36-37 (renumbered footnote in original).

2       A claim of failure or refusal to appoint advisory counsel fails to state a constitutional claim

3   because there is no constitutional right to advisory counsel. *Locks v. Sumner*, 703 F.2d 403, 407-408

4   (9th Cir. 1083); *King v. White*, 839 F. Supp. 718, 727 (C.D. Cal. 1993). There is no right to hybrid

5   representation. *Perez v. Marshall*, 946 F. Supp. 1521, 1534 (S.D. Cal. 1996), *aff'd* 121 F.3d 716 (9th

6   Cir. 1997) (citing *United States v. Kienenberger*, 13 F.3d 1354, 1356 (9th Cir. 1994)). Therefore,

7   petitioner's claim of constitutional error for the trial court failure to appoint advisory counsel is not

8   cognizable on federal habeas.

9       The state court also rejected petitioner's claim that he was denied due process because of

10   a purported deprivation of access to legal materials. Notably, the state court held initially that

11   petitioner had waived this claim for failure to seek relief in the trial court and, even if preserved,

12   there was error. The state appellate court reasoned as follows:

13       We likewise reject defendant's contention that he was denied due process because of
     a purported deprivation of access to legal materials. First of all, defendant did not

14   adequately preserve the claim. There is nothing in the record before us that defendant (1)
     demonstrated to the trial court that he was denied access to any particular legal materials

15   (as contrasted with such access being delayed); (2) sought any particular relief from the
     trial court (other than appointment of advisory counsel) concerning any claimed lack of

16   access to legal materials; or (3) showed that he was in any significant respect prejudiced
     by the claimed delay in receipt of legal materials. Defendant sought no particular relief

17   concerning claimed problems in obtaining legal materials. And there was no court order
     denying or limiting defendant's access to such materials. Defendant therefore forfeited any

18   challenge to any alleged deficiencies in access to legal materials by failing to address the
     matter to the trial court for resolution in the first instance. (See *People v. Welch* (1993) 5

19   Cal.4th 228, 236 [traditional principles of forfeiture of appellate challenges due to lack of
     objection at trial level "encourage development of the record and a proper exercise of

20   discretion in the trial court"].)

21       But even were we to conclude that defendant preserved his appellate challenge
     concerning access to legal materials, we would find no error. As noted, the fact that a pro

22   se defendant must not be deprived of "all means of presenting a defense" (*People v.
     Jenkins, supra*, 22 Cal.4th at p. 1040) does not connote that particular vehicles for

23   marshalling such a defense-such as providing advisory counsel or unlimited access to legal
     materials-are constitutionally mandated. (*Ibid.*) The critical inquiry ""is whether he had

24   reasonable access to the ancillary services that were reasonably necessary for his
     defense."" (*People v. Blair, supra*, 36 Cal.4th at p. 734.) Under that standard, defendant's

25   constitutional claim-founded on nothing more than unspecified prejudice in the delay of
     delivery of certain (unspecified) legal materials by as much as 14 days-must fail.

26

27       Defendant relies on *Milton v. Morris* (9th Cir.1985) 767 F.2d 1443 (*Milton*) in
     support of his claim that his due process rights were violated by an alleged denial of access

28   to legal materials. *Milton* is easily distinguishable. There, the pro se defendant had no
     counsel, was without access to an investigator, legal assistant or law library, and did not

1    even have effective use of a telephone. Under those circumstances, the court concluded
     that the defendant's right of self-representation was abridged due to essentially a complete
2    denial of the means to defend himself ( *id.* at pp. 1445-1446), concluding that "the
     defendant lacked all means of preparing and presenting a defense, and was unjustifiably
3    prevented from contacting a lawyer or others who could have assisted him." (*Id.* at p.
     1446.) Here, defendant had access to an investigator and was able to obtain legal
4    materials, albeit not directly through access to an in-facility library. The case before us
     does not even approach the circumstances in *Milton* where the defendant had *no access*
5    *whatsoever* to sources necessary to mount a defense.[23/]

6          Therefore, we conclude that defendant's claims of error concerning alleged delay in
     receipt of legal materials and the denial of appointment of advisory counsel-whether these
7    claims are considered separately or together-are without merit.

8    Exh. 10 at 37-39 (renumbered footnote in original).

9          As the state court noted, petitioner did not object and, thus, this claim is  procedurally

10   barred. As such, Hughes is precluded from seeking federal relief. *See, e.g., Coleman v. Thompson,*

11   501 U.S. 722, 750 (1991); *Wainwright v. Sykes,* 433 U.S. 72, 86-87 (1977); *Paulino v. Castro,* 371

12   F.3d 1083, 1092-1093 (9th Cir 2004) (California's contemporaneous-objection rule precludes

13   federal habeas review).

14         Even if preserved, the state appellate court correctly noted that *Faretta* does not establish

15   a self-representation right to law-library access or "to any specific legal aid." *Kane v. Garcia Espitia*

16   546 U.S. at 10.    Therefore, petitioner's claim that he was denied due process by the alleged

17   deprivation of access to legal materials does not state a federal claim. *Id.*

18

---

19   23.    Similarly, *Bribiesca v. Galaza* (9th Cir. 2000) 215 F.3d 1015-another
           case relied on by defendant-does not support defendant's claim that
20         he was denied due process because of any alleged delay in receiving
           legal materials. There, the Ninth Circuit affirmed the federal district
21         court's grant of habeas relief to a state inmate who was
           unconstitutionally deprived of the right to self-representation in
22         defending a murder charge. The case held in dictum that an
           incarcerated pro se defendant "has a constitutional right to access to
23         'law books ... or other tools to assist him in preparing a defense." (*Id.*
           at p. 1020.) But recently, the United States Supreme Court-although
24         declining to decide whether a pro se defendant is guaranteed under
           the Sixth Amendment a right of access to a law library-concluded that
25         "the *Bribiesca* court ... erred in holding, based on *Faretta,* that a
           violation of a law library access right is a basis for federal habeas
26         relief." (*Kane v. Garcia Espitia* (2005) 546 U.S. 9, 126 S.Ct. 407,
27         408.)

28

Memorandum of Points and Authorities in Support of Answer - C 07-04734 SBA (PR)

1

## CONCLUSION

2       For the reasons set forth above, respondent respectfully asks this Court to deny the petition

3   for writ of habeas corpus.

4           Dated:  September 8, 2008

5                       Respectfully submitted,

6                       EDMUND G. BROWN JR.
                        Attorney General of the State of California

7                       DANE R. GILLETTE
                        Chief Assistant Attorney General
8
                        GERALD A. ENGLER
9                       Senior Assistant Attorney General

                        GREGORY A. OTT
10                      Deputy Attorney General

11
                        /s/ Pamela K. Critchfield
12
                        PAMELA K. CRITCHFIELD
13                      Deputy Attorney General

                        Attorneys for Respondent
14

15  PKC:jw
    20140988.wpd

16

17

18

19

20

21

22

23

24

25

26

27

28