IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BARTH CAPELA, ) No. C 07-4734 SBA (PR)
)
    Petitioner, ) **ORDER DENYING PETITION FOR**
) **WRIT OF HABEAS CORPUS**
v. )
)
ROBERT HOREL, Warden, )
)
    Respondent. )
)

## INTRODUCTION

This matter is now before the Court for consideration of Petitioner's pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging a conviction he received in Santa Clara County Superior Court. Respondent Robert Horel, Warden of the California State Prison – Solano, opposes the petition. Petitioner has filed a traverse. For the reasons discussed below, the petition is DENIED as to all claims.

## BACKGROUND

**I.     Case History**

On November 19, 2003, Petitioner was charged with the following four counts, all arising out of an alleged attack upon Rafael Gonzales on August 19, 2003: attempted robbery in the second degree (Cal. Pen. Code §§ 664, 211, 212.5(c)) (Count 1); assault with a deadly weapon or by means of force likely to produce great bodily injury, i.e., aggravated assault (Cal. Pen. Code § 245(a)(1)) (Count 2), by use of a wrist rocket and slingshot; aggravated assault (Cal. Pen. Code § 245(a)(1)) (Count 3), by use of a baseball bat; and aggravated assault (Cal. Pen. Code § 245(a)(1)) (Count 4), by use of an air gun. The information also alleged that Petitioner had three prior strike convictions (Cal. Pen. Code §§ 667/1170.12), three prior serious felony convictions (Cal. Pen. Code § 667(a)(1)), and two prior convictions that resulted in imposition of prison terms (Cal. Pen. Code § 667.5(b)).

A jury found Petitioner guilty on April 7, 2004, of the charge of attempted robbery in the second degree (Count 1). The jury found Petitioner not guilty on the second and fourth counts of aggravated assault, but found him guilty of the lesser-included offense of misdemeanor assault (Cal. Pen. Code § 240) as to each of those counts.  The jury acquitted Petitioner of the third count of aggravated assault by use of a baseball bat.  The trial court found true each of the enhancement allegations regarding his prior convictions and prison terms.  Petitioner's motion for new trial was denied on October 8, 2004, but his motion to dismiss the three prior strikes was granted.  The trial court sentenced Petitioner to a term of nineteen years in state prison, consisting of two years for the attempted robbery conviction, fifteen years for the three enhancements for prior serious felony convictions (Cal. Pen. Code § 667(a)), and two years for each of the enhancements related to the prior prison terms (Cal. Pen. Code § 667.5(b)).[1]

The California Court of Appeal affirmed the judgment in an unpublished opinion and denied Petitioner's habeas petition in a summary order, both dated April 4, 2006, and the California Supreme Court summarily denied a petition for review on July 17, 2006.  (Resp't Exs. 10, 12.) Petitioner filed a petition for a writ of habeas corpus in the California Supreme Court, which was summarily denied on August 15, 2007.  (Resp't Ex. 14.)

Petitioner filed the instant petition on September 14, 2007 setting forth six claims: (1) that the trial court violated his right to due process by admitting evidence that Petitioner had a knife; (2) that the trial court violated his right to due process by excluding evidence that Petitioner did not have a motive to steal; (3) the trial court violated his right to due process by failing to issue a jury instruction sua sponte concerning the use of circumstantial evidence to prove specific intent, pursuant to CALJIC No. 2.02; (4) that the cumulative prejudice of the foregoing errors violated his right to due process; (5) that the prosecutor committed misconduct by placing a document on the seats of the jurors during a recess; and (6) that he was deprived of his Sixth Amendment right to counsel because he was proceeding pro se and did not receive sufficient assistance to pursue a state-

---

[1]Two 30-day sentences for the two misdemeanor assault convictions were deemed served.

law claim that the charge of attempted robbery should not have been filed after the preliminary examination. On May 12, 2008, Respondent was ordered to show cause. Respondent filed an answer and memorandum of points and authorities on September 8, 2008, and lodged a number of exhibits. Petitioner filed a traverse on November 25, 2008.

## II.     Statement of Facts

The following facts are taken from the opinion of the California Court of Appeal:

I.     *Prosecution Witnesses*

    A.     *Rafael Gonzales*

Rafael Gonzales was on his way to work at about 7:15 a.m. on August 19, 2003. He was walking on Murray Avenue in Gilroy and was talking on his cell phone when he heard someone call out the name "Harvey" to him. Gonzales responded that his name wasn't "Harvey" and kept walking. The man who called out to Gonzales then got out of his car with a slingshot. Gonzales turned away so that he wouldn't get hit in the face and felt something strike his thigh.

After Gonzales was struck in the leg, the man approached him and "yell[ed] at" him, saying that Gonzales owed him some money. Gonzales again told him that he was not "Harvey" and tried to show him some identification. The man did not want to look at the identification and instead punched Gonzales in the mouth. Gonzales fell to the ground and covered up his head. As he was on the ground, he was punched or kicked in the head. He became somewhat groggy from the assault. Gonzales received a bloody split lip from the punch and a bump on the head from being struck while he was on the ground.

As Gonzales got to his feet, he saw the man return to his car and retrieve a stick or a bat. As Gonzales attempted to walk away, the man said "[s]omething to [the] effect" of "I'm going to get my money from you one way or the other." Gonzales kept walking away from the man. As he did so, Gonzales saw a woman who had come out of her house; he told her to go back inside because he was afraid for her. The man made a U-turn and drove away.

Shortly thereafter, Officer Morrow arrived and took Gonzales to a Chevron station. The officer asked Gonzales to identify the person who assaulted him; Gonzales identified defendant and also said that the vehicle appeared to be the one that defendant had been driving at the time of the assault.

    B.     *Michael Deleonardo*

Michael Deleonardo was driving his truck northbound on Murray in Gilroy on August 19, 2003, at around 7:30 a.m. He observed a conflict between a Caucasian man (whom he identified at trial as defendant) and a Hispanic man. Deleonardo saw defendant pull back on a slingshot and strike the Hispanic man on the leg with a shiny

object. He backed his truck up and told them to "knock it off."[2] Deleonardo then observed defendant pointing a gun at the Hispanic male about two or three feet away from him; defendant was "mouthing words to" the Hispanic male. At the time, the Hispanic male was on the ground covering his head. Deleonardo used his cell phone to call 911.[3]

Defendant returned to his car, made a U-turn, and left the scene. Deleonardo followed defendant, who turned into a parking lot for a Chevy's restaurant. Deleonardo passed the entrance to the parking lot, turned around, and waited for defendant at another driveway. As defendant passed Deleonardo, he said, "[M]ind your own fuckin' business." After the police arrived moments later, Deleonardo drove back to the scene to locate the victim. He found the victim and observed that "he was bleeding from the mouth pretty bad."

### C.    *Officer Hugo Del Moral*

Officer Hugo Del Moral arrived at a Chevron station that morning in response to a call. Other officers were already there and "were conducting a high risk car stop" (i.e., "taking the person out of the vehicle at gun point"). Defendant was ordered out of the car; he complied and was arrested. Officer Del Moral searched defendant's automobile-a blue Toyota. Its contents included a wrist rocket slingshot, a bag of marbles, binoculars, and a folding knife, all located on the front passenger seat. He also found a baseball bat in the vehicle as well as a Crossman air gun that was hidden between the folded-down backrest and rear passenger seat. The air gun did not have a trigger.

### D.    *Officer Steve Morrow*

Shortly after 7:00 a.m. on August 19, 2003, Officer Steve Morrow was dispatched to "a fight in progress ... possibly involving weapons." Upon his arrival at a gas station, Officer Morrow observed other officers already on the scene conducting a stop of defendant in his vehicle. Once matters were secure, Officer Morrow drove a few blocks and met with Gonzales and Deleonardo. Gonzales was bleeding from the mouth, and the officer felt bumps on Gonzales's head. Gonzales told Officer Morrow that defendant had said during the assault: "Get in the car. I'm going to get my money out of you one way or another." The officer took Gonzales back to the gas station, where he identified defendant as his assailant.

## II.    *Defense Witness*

### A.    *Wiley Capela*

Wiley Capela is defendant's brother. He and defendant had shot slingshots for "[a]s long as [the witness could] remember." Defendant was a very good marksman with a slingshot; the witness estimated that if one were to line up 10 cans and have defendant shoot at them from thirty yards, he would miss no more than one of them. The witness would have had no problem loaning defendant $200 to $300 if he needed

---

[2] Although the time sequence is unclear from the record, at some point, Deleonardo saw defendant punch the Hispanic male.

[3] The tape from Deleonardo's somewhat extended 911 call was played to the jury without objection.

4

>   the money.
>
>   B.   *Stipulation*
>
>   The prosecution and defense stipulated that at the time of defendant's arrest and booking, he had $168.00 in cash in his possession.

People v. Capela, No. H028273, slip op. at 2-5 (Cal. Ct. App. April 4, 2006) (Resp't Ex. 7) (footnotes in original).

## DISCUSSION

**I.   Legal Standard**

    **A.   Standard of Review for State Court Decisions**

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a district court may grant a petition challenging a state conviction or sentence on the basis of a claim that was "adjudicated on the merits" in state court only if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state court has "adjudicated" a petitioner's constitutional claim "on the merits" for purposes of § 2254(d) when it has decided the petitioner's right to post-conviction relief on the basis of the substance of the constitutional claim advanced, rather than denying the claim on the basis of a procedural or other rule precluding state court review on the merits.  Lambert v. Blodgett, 393 F.3d 943, 969 (9th Cir. 2004).  It is error for a federal court to review de novo a claim that was adjudicated on the merits in state court.  See Price v. Vincent, 538 U.S. 634, 638-43 (2003).

    **1.   Section 2254(d)(1)**

Challenges to purely legal questions resolved by a state court are reviewed under § 2254(d)(1), under which a state prisoner may obtain habeas relief with respect to a claim adjudicated on the merits in state court only if the state court adjudication resulted in a decision that was "contrary to" or "involved an unreasonable application of  clearly established Federal law, as determined by the Supreme Court of the United States."  Williams (Terry) v. Taylor, 529 U.S. 362,

402-04, 409 (2000).  While the "contrary to" and "unreasonable application" clauses have independent meaning, see id. at 404-05, they often overlap, which may necessitate examining a petitioner's allegations against both standards, see Van Tran v. Lindsey, 212 F.3d 1143, 1149-50 (9th Cir. 2000), overruled on other grounds, Lockyer v. Andrade, 538 U.S. 63, 70-73 (2003).

### a. **Clearly Established Federal Law**

"Clearly established federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  Williams, 529 U.S. at 412.  "Section 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence."  Id.  "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme] Court is, at best, ambiguous."  Mitchell v. Esparza, 540 U.S. 12, 17 (2003).  If there is no Supreme Court precedent that controls on the legal issue raised by a petitioner in state court, the state court's decision cannot be contrary to, or an unreasonable application of, clearly-established federal law.  See, e.g., Stevenson v. Lewis, 384 F.3d 1069, 1071 (9th Cir. 2004).

The fact that Supreme Court law sets forth a fact-intensive inquiry to determine whether constitutional rights were violated "obviates neither the clarity of the rule nor the extent to which the rule must be seen as 'established'" by the Supreme Court.  Williams, 529 U.S. at 391.  There are, however, areas in which the Supreme Court has not established a clear or consistent path for courts to follow in determining whether a particular event violates a constitutional right; in such an area, it may be that only the general principle can be regarded as "clearly established."  Andrade, 538 U.S. at 64-65.  When only the general principle is clearly established, it is the only law amenable to the "contrary to" or "unreasonable application of" framework.  See id. at 73.

Circuit decisions may still be relevant as persuasive authority to determine whether a particular state court holding is an "unreasonable application" of Supreme Court precedent or to assess what law is "clearly established."  Clark v. Murphy, 331 F.3d 1062, 1070-71 (9th Cir.), cert. denied, 540 U.S. 968 (2003); Duhaime v. Ducharme, 200 F.3d 597, 600 (9th Cir. 1999).

### b. **"Contrary to"**

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court

arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A "run-of-the-mill state-court decision" that correctly identifies the controlling Supreme Court framework and applies it to the facts of a prisoner's case "would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause." Williams, 529 U.S. at 406. Such a case should be analyzed under the "unreasonable application" prong of § 2254(d). See Weighall v. Middle, 215 F.3d 1058, 1062 (9th Cir. 2000).

### c. "Unreasonable Application"

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 412-13. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411; accord Middleton v. McNeil, 541 U.S. 433, 436 (2004) (per curiam) (challenge to state court's application of governing federal law must be not only erroneous, but objectively unreasonable); Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam) ("unreasonable" application of law is not equivalent to "incorrect" application of law).

Evaluating whether a rule application was unreasonable requires considering the relevant rule's specificity; if a legal rule is specific, the range of reasonable judgment may be narrow; if it is more general, the state courts have more leeway. Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). Whether the state court's decision was unreasonable must be assessed in light of the record that court had before it. Holland v. Jackson, 542 U.S. 649, 651 (2004) (per curiam).

The objectively unreasonable standard is not a clear error standard. Andrade, 538 U.S. at 75-76 (rejecting Van Tran's use of "clear error" standard); Clark, 331 F.3d at 1067-69 (acknowledging the overruling of Van Tran on this point). After Andrade,

> [t]he writ may not issue simply because, in our determination, a state court's application of federal law was erroneous, clearly or otherwise. While the "objectively unreasonable" standard is not self-explanatory, at a minimum it denotes a greater degree of deference to the state courts than [the Ninth Circuit] ha[s]

previously afforded them.

Id. In examining whether the state court decision was unreasonable, the inquiry may require analysis of the state court's method as well as its result. Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003).

**2.     Sections 2254(d)(2), 2254(e)(1)**

A federal habeas court may grant a writ if it concludes a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). An unreasonable determination of the facts occurs where a state court fails to consider and weigh highly probative, relevant evidence, central to a petitioner's claim, that was properly presented and made part of the state court record. Taylor v. Maddox, 366 F.3d 992, 1005 (9th Cir. 2004). A district court must presume correct any determination of a factual issue made by a state court unless a petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Section 2254(d)(2) applies to an intrinsic review of a state court's fact-finding process, or situations in which the petitioner challenges a state court's fact-findings based entirely on the state court record, whereas § 2254(e)(1) applies to challenges based on extrinsic evidence, or evidence presented for the first time in federal court. See Taylor v. Maddox, 366 F.3d 992, 999-1000 (9th Cir. 2004). In Taylor, the Ninth Circuit established a two-part analysis under §§ 2254(d)(2) and 2254(e)(1). Id. First, federal courts must undertake an "intrinsic review" of a state court's fact-finding process under the "unreasonable determination" clause of § 2254(d)(2). Id. at 1000. The intrinsic review requires federal courts to examine the state court's fact-finding process, not its findings. Id. Once a state court's fact-finding process survives this intrinsic review, the second part of the analysis begins by dressing the state court finding in a presumption of correctness under § 2254(e)(1). Id. According to the AEDPA, this presumption means that the state court's fact-finding may be overturned based on new evidence presented by a petitioner for the first time in federal court only if such new evidence amounts to clear and convincing proof a state court finding is in error. See 28 U.S.C. § 2254(e)(1). "Significantly, the presumption of correctness and the clear-and-convincing standard of proof only come into play once the state court's fact-findings

8

survive any intrinsic challenge; they do not apply to a challenge that is governed by the deference implicit in the 'unreasonable determination' standard of section 2254(d)(2)." Taylor, 366 F.2d at 1000.

When there is no reasoned opinion from the highest state court to consider the Petitioner's claims, the Court looks to the last reasoned opinion. See Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991). Here, the California Court of Appeal was the highest state court to issue an explained opinion on Petitioner's first four claims. There is no explained state court opinion on Petitioner's remaining two claims, which were raised in his state habeas petitions that were summarily denied

## II.   **Exhaustion**

Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings either the fact or length of their confinement are required first to exhaust state judicial remedies, either on direct appeal or through state collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and every claim they seek to raise in federal court. See 28 U.S.C. § 2254(b),(c); Granberry v. Greer, 481 U.S. 129, 133-34 (1987). The parties do not dispute that Petitioner has exhausted his claims.

## III.   **Legal Claims**

Petitioner claims: (1) that the trial court violated his right to due process by admitting evidence that Petitioner had a knife; (2) that the trial court violated his right to due process by excluding evidence that Petitioner did not have a motive to steal; (3) the trial court violated his right to due process by failing to issue a jury instruction sua sponte concerning the use of circumstantial evidence to prove specific intent, pursuant to CALJIC No. 2.02; (4) that the cumulative prejudice of the foregoing errors violated his right to due process; (5) that the prosecutor committed misconduct by placing a document on the seats of the jurors during a recess; and (6) that he was deprived of his Sixth Amendment right to counsel because he was proceeding pro se and did not receive sufficient assistance to pursue a state-law claim that the charge of attempted robbery should not have been filed after the preliminary examination.

### 1.   **Admission of Knife Evidence**

Petitioner claims that the trial court violated his right to due process by admitting evidence

that the police found a folding knife in his car. He argued at trial and on appeal in the state courts, as he does here, that the evidence was not relevant because it was not used in the assault and that it was prejudicial because it is a deadly weapon and the other weapons in Petitioner's possession were not. (Resp't Ex. 10 at 7-8.)

The United States Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." Holley v. Yarborough, 568 F.3d 1091, 1101 (9th Cir. 2009). Absent such a ruling from the United States Supreme Court, a federal habeas court cannot find the state court's ruling was an "unreasonable application" of "clearly established federal law" under 28 U.S.C. § 2254(d)(1). Id. (citing Carey v. Musladin, 549 U.S. 70, 77 (2006)). Under Holley, therefore, this Court cannot grant habeas relief under § 2254(d)(1) on Petitioner's claim that the admission of irrelevant and overly prejudicial evidence violated his right to due process. See id. at 1101 n.2 (finding that although trial court's admission of irrelevant and prejudicial evidence violated due process under Ninth Circuit precedent, such admission was not contrary to, or an unreasonable application of, "clearly established Federal law" under § 2254(d)(1) and therefore not grounds for granting federal habeas relief).

Moreover, even if federal habeas relief were available on this claim, the admission of the knife evidence in this case did not violate due process. The due process inquiry is whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial fundamentally unfair. See Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir. 1995). Only if there are no permissible inferences that the jury may draw from the evidence can its admission violate due process. Jammal v. Van de Kamp, 926 F.2d 918, 919-20 (9th Cir. 1991). Petitioner's central defense was that he did not intend to rob the victim. (Resp't Ex. 10 at 10.) The knife evidence was relevant because it showed that Petitioner had an intent to rob the victim, in addition to assaulting him, by means of "force or fear," as is required under California Penal Code § 211. The knife was in Petitioner's car, close to Petitioner during the assault, and it was with the other weapons that Petitioner brought to the scene of the crime and used in assaulting Petitioner. (Resp't Ex. 10 at 9-10.) The jury could reasonably infer that Petitioner brought the knife also in order to have it "at his disposal" if needed

10

to force Petitioner to give him money.  (Id. at 10.)  As the jury could draw a permissible inference from the evidence, the state court could reasonably conclude that its admission did not violate Petitioner's right to due process.

Consequently, Petitioner is not entitled to habeas relief on this claim.

### 2. **Exclusion of Evidence Regarding Motive to Steal**

Petitioner claims that the trial court violated his right to due process by excluding the testimony of a witness named Selina Roberts who would have testified that Petitioner owned property at the time of the crime.  Petitioner argues that his owning property was relevant to show that he did not have the motive to attempt to rob the victim.

In December 2003, approximately four months prior to trial, Petitioner, who had opted to proceed pro se, twice moved to produce Roberts from the prison where she was incarcerated at the time. (Resp't Ex. 10 at 12-13.)  Petitioner argued that she could testify about his skill with a slingshot and his ownership of personal property.  (Id. at 13.)  The trial court denied the motions, finding that he had not established good cause for transporting Roberts from prison.  (Id.)  On March 29, 2004, the prosecutor indicated that Roberts was scheduled to be released from prison in the coming week, and the next day – the day trial started – the trial court allowed Petitioner to telephone Roberts.  (Reporter's Transcript ("RT") (Resp't Ex. 2) at 35-36.)  Petitioner had Roberts's mother's phone number, but he was not able to reach Roberts.  (Id. at 37.)  On April 2, 2004, the day the first witness was called, the prosecutor indicated that Roberts had been released the day before, and Petitioner stated that he would call her to testify only about seeing Petitioner use a slingshot.  (Id. at Resp't Ex. E at 14.)  On the prosecutor's motion, the trial court ruled that if Roberts testified, her two prior convictions would be admissible for impeachment.  (Resp't Ex. 10 at 14.)  Petitioner ultimately did not call Roberts as a witness at trial.  (Id.)

The exclusion of defense evidence may violate a defendant's constitutional rights to due process and to present a defense, rights originating in the Sixth and Fourteenth Amendments. Holmes v. South Carolina, 547 U.S. 319, 324 (2006) (quotations and citations omitted).  The record in this case establishes that the trial court never excluded Roberts's testimony, however, or ruled that it would not be admitted.  When Petitioner announced his intention to call her as a witness at the

11

hearing on April 2, 2004, the trial court did not indicate in any way that Petitioner would not be allowed to do so. When the trial court denied Petitioner's earlier motions to transfer her from prison, it did not rule that her testimony would be excluded, only that Petitioner had not established good cause to have her transported from prison to the local jail. This ruling, moreover, did not ultimately have the effect of precluding Petitioner from obtaining her testimony, as she was released from prison when there was still time for him to call her as a witness. Indeed, the trial court allowed Petitioner to telephone Roberts on the first day of trial for that purpose. The fact that Petitioner could not reach Roberts was no fault of the trial court, and he took no further steps to secure her testimony, nor did he further seek the court's assistance either in locating her or requiring her appearance at trial via subpoena. (Resp't Ex. 10 at 14 & n.9.) Under these circumstances, the record does not support Petitioner's contention that the trial court violated his right to due process by excluding her testimony.

Furthermore, testimony by Roberts that Petitioner owned personal property would have been very weak evidence that he did not have a motive to steal. It is hardly a stretch for a jury to find that people who own personal property may nonetheless be motivated to steal so that they can get more money or property. To the extent it had any value, her testimony on this point would also have been largely cumulative of the evidence that Petitioner had $168 in cash at the time of the incident and could have borrowed money from his brother. The absence of Roberts's weak and largely cumulative proffered testimony did not render the trial "fundamentally unfair" so as to violate Petitioner's right to due process.

Accordingly, the state courts' decisions denying Petitioner's due process claim were not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor were they based on an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d)(1),(2).

### 3.     **CALJIC No. 2.02**

Petitioner claims that the trial court violated his right to due process by failing to issue sua sponte an instruction on circumstantial evidence pursuant to CALJIC No. 2.02. The trial court issued CALJIC No. 2.01, the standard instruction on circumstantial evidence. As explained by the

California Court of Appeal, CALJIC No. 2.01 is more general and more inclusive than CALJIC No. 2.02, which is focused only on circumstantial evidence necessary to show specific intent.  (See Resp't Ex. E at 19.)[4]

As an initial matter, Petitioner's claim does not adequately state a claim for federal habeas relief.  While the failure to issue an instruction may under certain circumstances violate a defendant's right to due process, see, generally, Duckett v. Godinez, 67 F.3d 734, 745 (9th Cir. 1995), he makes only a single, conclusory allegation that his right to due process was violated (Pet. at 9 & Attachment A).  Conclusory allegations in a habeas petition fail to state a claim and do not suffice to state a cognizable claim for federal habeas relief.  See Hendricks v. Vasquez, 908 F.2d 490, 491-92 (9th Cir. 1990); Allard v. Nelson, 423 F.2d 1216, 1217 (9th Cir. 1970).  The argument and discussion Petitioner presents in support of this claim asserts only a violation of state law, and neither mentions due process or any other federal law nor cites any federal authority.  (Pet.

---

[4]CALJIC No. 2.01 reads:
"However, a finding of guilt as to any crime may not be based on circumstantial evidence unless the proved circumstances are not only (1) consistent with the theory that the defendant is guilty of the crime, but (2) cannot be reconciled with any other rational conclusion. [¶] Further, each fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt must be proved beyond a reasonable doubt. In other words, before an inference essential to establish guilt may be found to have been proved beyond a reasonable doubt, each fact or circumstance on which the inference necessarily rests must be proved beyond a reasonable doubt. [¶] Also, if the circumstantial evidence as to any particular count permits two reasonable interpretations, one of which points to the defendant's guilt and the other to his innocence, you must adopt that interpretation that points to the defendant's innocence, and reject the interpretation that points to his guilt. [¶] If, on the other hand, one interpretation of this evidence appears to you to be reasonable and the other interpretation to be unreasonable, you must accept the reasonable interpretation and reject the unreasonable."

CALJIC No. 2.02 reads:
"The [specific intent] [or][and] [mental state] with which an act is done may be shown by the circumstances surrounding the commission of the act. However, you may not [find the defendant guilty of the crime charged] ... unless the proved circumstances are not only (1) consistent with the theory that the defendant had the required [specific intent] [or] [and] [mental state] but (2) cannot be reconciled with any other rational conclusion. [¶] Also, if the evidence as to [any] [specific intent] [or] [mental state] permits two reasonable interpretations, one of which points to the existence of the [specific intent] [or] [mental state] and the other to its absence, you must adopt that interpretation which points to its absence. If, on the other hand, one interpretation of the evidence as to the [specific intent] [or] [mental state] appears to you to be reasonable and the other interpretation to be unreasonable, you must accept the reasonable interpretation and reject the unreasonable."

Attachment B at ii & 29-32.)  A claim of instructional error based solely on state law does not state a claim cognizable in federal habeas corpus proceedings.  Estelle v. McGuire, 502 U.S. 62, 71-72 (1991).  Consequently, Petitioner's claim that CALJIC No. 2.02 does not state a sufficient basis for federal habeas relief.

In any event, even if Petitioner's claim were construed, or amended, to state a cognizable due process claim, it would fail.  A trial court's failure to issue an instruction violates due process only if the failure rendered the trial fundamentally unfair when considering the evidence and the overall instructions given to the jury.  See Duckett, 67 F.3d at 745; Dunckhurst v. Deeds, 859 F.2d 110, 114 (9th Cir. 1988).  The Ninth Circuit has found the difference between CALJIC No. 2.02 and 2.01 to be no more significant than "a quibble" such that the failure to issue CALJIC No. 2.02 instead of No. 2.01 does not rise to the level of a federal constitutional violation.  McMillan v. Gomez, 19 F.3d 465, 468-69 (9th Cir. 1994).  The court found CALJIC No. 2.01 to be "ample and exact" such that there is "no need to precisely tie [circumstantial evidence] to proof of specific intent" by issuing CALJIC No. 2.02.  Id.  Based on this authority, even if Petitioner stated a cognizable claim for federal habeas relief, his claim of instructional error does not rise to the level of a due process violation.

Accordingly, the state courts' decisions denying Petitioner's claim were not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor were they based on an unreasonable determination of the facts in light of the evidence presented.  See 28 U.S.C. § 2254(d)(1),(2).

**4.     Cumulative Error**

Petitioner claims that the cumulative effect of the foregoing asserted trial errors caused his trial to be fundamentally unfair, in violation of his right to due process.  Petitioner cites no Supreme Court precedent, and the Court is aware of none, providing that the cumulative effect of multiple alleged errors may violate a defendant's due process right to a fair trial.  As discussed above, AEDPA mandates that habeas relief may be granted only if the state courts have acted contrary to or have unreasonably applied federal law as determined by the United States Supreme Court.  Williams v. Taylor, 529 U.S. at 412 ("Section 2254(d)(1) restricts the source of clearly established law to [the

Supreme] Court's jurisprudence."). Consequently, in the absence of Supreme Court precedent recognizing a due process theory of "cumulative error," habeas relief cannot be granted on such a claim. In any event, there is no cumulative error in this case. For the reasons discussed above, the trial court did not commit the constitutional errors that Petitioner asserts. Consequently, there were no errors to accumulate.

Accordingly, the state courts' decisions denying Petitioner's claim were not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor were they based on an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d)(1),(2).

### 5.     **Prosecutorial Misconduct**

Petitioner claims that the prosecutor committed misconduct by placing a five-page outline of his closing argument on the seats of each juror during closing argument. Petitioner claims that this misconduct violated his right to due process. A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair." Darden v. Wainwright, 477 U.S. 168, 181 (1986).

Petitioner raised this claim in the trial court in his motion for a new trial, which was denied after a hearing.[5] After the hearing, Petitioner stated that the prosecutor had paced the document on the jurors' seats during closing argument, but the trial court found otherwise:

> [O]n the issue of the illustrative billboards as it were used by [the prosecutor] in his argument, putting aside the issue as to whether there was any objection at the time or not, it is the Court's clear recollection that [the prosecutor] used the blowups to illustrate his argument. A copy was provided to the Court. A copy was provided to [petitioner]. No copies were provide[d] to the jury either for their following along during argument or in the jury room or at any other time in the course [sic]. Copies were for the Court and [the petitioner] because of the proximity of the board to the jury and the potential that he and I could not follow along at the time. No copies were given to the jury nor would the Court have permitted copies to have been given to the jury. And it's significantly different than a transcript of a tape recording being given to the jury to follow along during the tape. And I guess he and I will agree to disagree on our recollection of what happened.

(RT at 326-27.) The trial court's factual finding that the prosecutor did not leave the document on the jury seats is a factual finding entitled to deference under 28 U.S.C. § 2254(d)(2). The relevant

---

[5]The California Court of Appeal and the California Supreme Court summarily denied this claim and the sixth claim, below, as they were raised in his state habeas petitions, not on direct appeal.

question under § 2254(d)(2) is whether the state appellate courts, applying the normal standards of appellate review, could reasonably conclude that the state court findings are supported by the record. See Lambert v. Blodgett, 393 F.3d 943, 978 (9th Cir. 2004).  There is evidence in the record – specifically the trial court's own recollection – to support the trial court's finding that the prosecutor did not place the document on the jurors' seats.  Indeed, the report of Petitioner's investigator who interviewed the jurors after the trial found that none of the jurors recalled receiving the five-page outline from the prosecutor.  (Resp't Ex. 13 at Exh. A.)  Some of the jurors did recall receiving some documents on their seats at trial, but none of them stated that the documents were from the prosecutor or were received following the break in the prosecutor's closing argument.  (See id.)  One juror stated the documents were "instructions," suggesting that what the jurors received on their seats were copies of the jury instructions from the trial court.  (Id.)  Under these circumstances, the state appellate courts could reasonably conclude that the trial court's factual finding that the prosecutor did not place documents on the jurors' seats was supported by the record.

Accordingly, the state courts' decisions denying Petitioner's claim were not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor were they based on an unreasonable determination of the facts in light of the evidence presented.  See 28 U.S.C. § 2254(d)(1),(2).

**6.    Right to Counsel**

Petitioner, who represented himself prior to and during trial, claims that he was deprived of his right to counsel because he was not granted advisory counsel and had limited access to legal materials while he was in jail.  According to Petitioner, this prevented him from challenging the prosecutor's filing the charge of attempted robbery after the preliminary hearing, which he claims was improper under California law.  Petitioner's motion to proceed pro se pursuant to Faretta v. California, 422 U.S. 806, 832 (1975), was granted after a hearing at which Petitioner was subjected to voir dire and signed a petition to proceed pro se that set forth the risks of such a strategy.  (Resp't Ex. 10 at 30-31 & n.28.)

Petitioner's allegations that he did not have sufficient access to legal materials in jail and was not appointed advisory counsel, even if true, are not grounds for federal habeas relief.  A criminal

defendant has a Sixth Amendment right to self-representation. Faretta v. California, 422 U.S. 806, 832 (1975). Faretta does not, however, "clearly establish" a right to law library access or any other specific legal aid that must be afforded to a criminal defendant who has chosen to represent himself. Kane v. Garcia Espitia, 546 U.S. 9, 408 (2005). Because § 2254(d)(1) provides that federal habeas relief may only be based upon "clearly established" precedent from the United States Supreme Court, Petitioner is not entitled to federal habeas relief based on limitations on his access to legal materials in jail. Similarly, although the Supreme Court has noted that it may be wise to appoint standby counsel for a defendant who wishes to waive representation by counsel, a defendant has no constitutional right "to represent himself and have access to 'advisory' or 'consultative' counsel at trial." United States v. Kienenberger, 13 F.3d 1354, 1356 (9th Cir. 1994). Consequently, Petitioner is also not entitled to federal habeas relief based on the trial court's failure to appoint advisory counsel to him.

Accordingly, the state courts' decisions denying Petitioner's claim were not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor were they based on an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d)(1),(2).

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED. The Clerk of the Court shall enter judgment and close the file.

No certificate of appealability is warranted in this case. See Rule 11(a) of the Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (requiring district court to rule on certificate of appealability in same order that denies petition). Petitioner has failed to make a substantial showing that any of his claims amounted to a denial of his constitutional rights or demonstrate that a reasonable jurist would find this Court's denial of his claims debatable or wrong. See Slack v. McDaniel, 529 U.S. 473, 484 (2000).

IT IS SO ORDERED.

DATED: 9/15/10

_Saundra B Armstrong_
SAUNDRA BROWN ARMSTRONG
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

BARTH DENNIS CAPELA,

       Plaintiff,

  v.

BOB HOREL et al,

       Defendant.

Case Number: CV07-04734 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on September 15, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Barth Dennis Capela V-58262
California State Prison - San Quentin
San Quentin, CA 94974

Dated: September 15, 2010

Richard W. Wieking, Clerk
By: LISA R CLARK, Deputy Clerk

P:\PRO-SE\SBA\HC.07\Capela4734.denyHC.wpd        18